UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACK MONTAGUE : | |
| : | |
| Plaintiff : | CIVIL ACTION NO.: |
| : | 3:16-CV-00885-AVC |
| vs. : | |
| : | |
| YALE UNIVERSITY, ET AL : | |
| : | |
| Defendants : | |

### PLAINTIFF'S LOCAL CIVIL RULE 26(f) REPORT OF PARTIES' PLANNING MEETING

The parties have conferred in good faith but have been unable to agree upon a discovery schedule, at least as it pertains to the disclosure of expert witnesses. Plaintiff therefore submits this proposed discovery schedule, in which expert discovery occurs in two phases and in which both parties have the right to designate and depose rebuttal witnesses. By contrast, Defendants' proposed schedule does not contemplate rebuttal witnesses and thus completely deprives Plaintiff of the right to respond to Defendants' experts (and, in turn, gives Defendants an unfair responsive advantage).[1] Plaintiff's proposed schedule is also more efficient; given that Plaintiff's education has been interrupted and his future prospects remain uncertain, moving this case along in a timely manner is of the utmost importance.

Pursuant to Fed. R. Civ. P. 16(b) and 26(f), and D. Conn. L. Civ. R. 16, the parties conferred. The participants were:

---

[1] Moreover, Defendants' concerns about "under-disclosure" are unfounded, since, as noted, Plaintiff's schedule specifically provides for rebuttal witnesses for both parties. And to the extent Defendants "over-disclose," if they later determine a particular expert is not needed, they can simply notify the Plaintiff and the parties may proceed accordingly

*For Plaintiff:*

Max D. Stern,
Alexandra H. Deal,
Hillary A. Lehmann,
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
adeal@toddweld.com; mdstern@toddweld.com; hlehmann@toddweld.com

*For Defendants:*

Patrick M. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168
pnoonan@ddnctlaw.com

I.   **CERTIFICATION**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

II.   **JURISDICTION**

    A.   **Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1332.

    B.   **Personal Jurisdiction**

Personal jurisdiction is not contested.

**III.   BRIEF DESCRIPTION OF CASE**

    **A.   Claims of Plaintiff**

Plaintiff, Jack Montague, brings claims against Yale University (the "University"), alleging that the University breached its contract with the plaintiff and discriminated against him based on his gender in violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) in connection with its enforcement of the University's policy on sexual misconduct.  Plaintiff asserts claims of defamation and invasion of privacy against the University and Angela Gleason.  He also brings claims of tortious interference with a contract against Ms. Gleason and Jason Killheffer.

    **B.   Defenses and Claims of Defendant**

Defendants deny all of the plaintiff's claims.  They maintain that they did not discriminate against the plaintiff and that they properly followed all of the University's procedures in addressing the complaints made against plaintiff and in disciplining plaintiff.

**IV.   PLAINTIFF'S PROPOSED STATEMENT OF UNDISPUTED FACTS**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute.  The parties state that the following material facts are undisputed:

    1.   In February, 2016, plaintiff was a senior at Yale University.

    2.   Defendant, Yale University, is an educational institution located in New Haven, Connecticut.

3. Defendant, Angela Gleason, is an employee of defendant, Yale University, and at the time of the incidents alleged in the complaint, was its Title IX Coordinator.

4. Defendant, Jason Killheffer, is an employee of defendant, Yale University, and at the time of the incidents alleged in the complaint, was its Senior Deputy Title IX Coordinator.

5. On August 25, 2013, a female who had graduated from Yale in the spring of 2013 filed a complaint against plaintiff.

6. Pursuant to the University Wide Committee on Sexual Misconduct ("UWC") Procedures, a fact-finder conducted an investigation into the August 2013 complaint.

7. The fact-finder submitted his report on September 25, 2013.

8. The complaint proceeded to a hearing before a UWC panel on October 9, 2013.

9. The UWC panel issued a report which concluded that plaintiff violated the University's policy on sexual misconduct by sexually harassing the complainant.

10. The UWC panel outlined the University's sexual harassment policy in its report, as follows: "Sexual harassment consists of nonconsensual . . . conduct of a sexual nature on or off campus, when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or creating an intimidating or hostile academic

work environment. Sexual harassment may be found in a singe episode, as well as in persistent behavior."

11. The panel recommended that plaintiff be placed on probation for four terms; that he not be permitted to hold a leadership position in any student activity, organization, or sport; that he be required to enroll in sexual harassment and gender sensitivity training through Yale's SHARE Center; that he be required to meet with a member of the SHARE Center once each semester for the remainder of his time at the University "to review and reflect on his interactions and relationships with female students at Yale"; and that he be required to receive training on the appropriate use of alcohol.

12. Dean Mary Miller accepted the panel's findings of fact, conclusions and recommendations.

13. Plaintiff complied with all of the disciplinary conditions imposed upon him as a result of this proceeding.

14. The University's UWC Procedures require that "[a]ll documents prepared by, prepared for, or received from the UWC in connection with a UWC proceeding . . . must be held in strict confidence."

15. The University's Office of the Provost Statement on Confidentiality of UWC Proceedings states: "The UWC's procedures impose strict and unequivocal obligations regarding documents prepared by, prepared for, or received from the UWC in connection with a UWC proceeding."

16. On November 18, 2015, a formal complaint was filed by defendant Killheffer alleging that plaintiff had nonconsensual sexual intercourse with a female University student on the night of October 18, 2014.

17. By letter dated November 30, 2015, plaintiff was notified that the above-referenced complaint had been filed.  He was provided with copies of the November 18, 2015 complaint, the UWC Procedures, the Yale Sexual Misconduct Policies and Related Definitions, and the Statement on Confidentiality of UWC Proceedings.

18. Plaintiff responded to the complaint on December 9, 2015, and asserted that all intimate interactions with the female University student had been consensual.

19. A fact-finding investigation was conducted.

20. The fact-finder submitted her report on January 15, 2016.

21. By letter dated January 15, 2016, plaintiff was provided with a copy of the fact-finder's report.  He was also informed of the date of the hearing and the members of the panel.

22. A hearing before the UWC panel was conducted on January 21, 2016.

23. In its February 1, 2016 report, the UWC Panel concluded that plaintiff had engaged in nonconsensual sexual intercourse with a female University student in violation of Yale's sexual misconduct policy and recommended expulsion.

24. By letter dated February 1, 2016, Plaintiff was provided a copy of the Panel's report, but not the recommended sanction, and was informed that he could submit a response to the report by February 4, 2016.

25. Plaintiff submitted an undated response to the Panel's report.

26. By letter dated February 10, 2016, the University notified the plaintiff that he was being expelled from the University because of his alleged violation of the University's sexual misconduct policy.

27. Plaintiff filed an appeal of the UWC Panel's ruling.

28. On February 24, 2016, plaintiff's appeal was denied.

## V. CASE MANAGEMENT PLAN

### A. Standing Order on Scheduling in Civil Cases

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases as set forth below.

### B. Scheduling Conference with the Court

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

### C. Early Settlement Conference

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2. The parties do not request an early settlement conference.

      3.     If and when a settlement conference is held, the parties prefer a settlement conference with a magistrate judge.

      4.     The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

**D.**    **Joinder of Parties and Amendment of Pleadings**

      1.     The plaintiff should be allowed until November 1, 2016 to file motions to join additional parties and until January 1, 2017, to file motions to amend the pleadings. Notwithstanding, Plaintiff reserves his right under Fed. R. Civ. P. 15 to amend the pleadings, including his right to amend the complaint up until the time of trial where justice so requires.

      2.     Yale University should be allowed until November 1, 2016 to file motions to join additional parties.

**E.**    **Plaintiff's Proposed Discovery Schedule**

      1.     The parties anticipate that discovery will be needed on all claims alleged in the complaint and the issue of Plaintiff's damages.

      2.     All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by September 1, 2016 and completed (not propounded) by December 1, 2017.

      3.     Discovery will be conducted in phases, with expert disclosures to follow depositions of fact witnesses.

      4.     Discovery will be completed by December 30, 2017.

5. The parties anticipate that Plaintiff will require a total of 10 depositions of fact witnesses and that Defendant will require a total of 8 depositions of fact witnesses. The depositions of fact witnesses will commence by October 3, 2016 and be completed by June 3, 2017.

6. The parties do not anticipate requesting permission to serve more than 25 interrogatories.

7. The parties will designate trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by July 3, 2017. Depositions of any such experts will be completed by September 15, 2017.

8. The parties will have one month to disclose rebuttal experts, and 30 days from the date of disclosure to depose rebuttal experts.

9. A damages analysis will be provided by the plaintiff at least 15 days prior to the plaintiff's deposition.

10. Undersigned counsel have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agree

   to the following procedures for the preservation, disclosure and management of electronically stored information:

  a. Plaintiff shall take reasonable steps to retain, until the conclusion of this lawsuit, all documents, as that term is defined in D. Conn. L. Civ. R. 26, concerning or relating to the allegations of the Complaint, that are in Plaintiff's possession, custody or control, for the time period commencing two years prior to the filing of the Complaint and continuing through and including the date of trial.

  b. Defendant shall take reasonable steps to retain, until the conclusion of this lawsuit, all documents, as that term is defined in D. Conn. L. Civ. R. 26, concerning or relating to the allegations of the Complaint, that are in Defendant's possession, custody or control, for the time period commencing two years prior to the filing of the Complaint and continuing through and including the date of trial.

11. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production:

    a. If electronically stored information is produced in discovery and is subject to a claim of privilege or of protection as trial preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly sequester the information and any copies it has and may not use or disclose the information until the claim is resolved.  If the receiving party does not dispute the producing party's claim of privilege or work product, the receiving party shall promptly return the information or destroy it. If the receiving party disputes the privilege or work product claim, it may promptly present the information to the Court under seal for a determination of the claim, or the receiving party may inform the producing party in writing that it disputes the claim.  The producing party may then promptly move the Court for an Order to return the electronically stored information. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

**F.** **<u>Dispositive Motions</u>**

Dispositive motions will be filed on or before January 31, 2018.

### G. Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within 45 days of the ruling on dispositive motions, should such motions be filed, or within 45 days after the parties notify one another that dispositive motions will not be filed.

## VI. TRIAL READINESS

The case will be ready for trial within 30 days of the filing of a joint trial memorandum.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

THE PLAINTIFF

BY: _____
Max D. Stern,
Alexandra H. Deal,
Hillary A. Lehmann,
(all appearing *pro hac vice*)
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Jonathan Katz
Jacobs & Dow, LLC
350 Orange Street
New Haven, CT   06511
(203) 772-3100

**CERTIFICATION**

    I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                                  Alexandra H. Deal