## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACK MONTAGUE, | Case No.: 3:16-cv-00885 (AVC) |
| Plaintiff, | |
| v. | |
| YALE UNIVERSITY, ANGELA GLEASON and JASON KILLHEFFER, | |
| Defendants. | November 21, 2016 |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The defendants, Yale University, Angela Gleason and Jason Killheffer, respectfully

submit this memorandum of law in opposition to Plaintiff's Motion for Preliminary Injunction

dated October 31, 2016.  (Doc. No. 31.)

As set forth in Defendants' Motion to Bifurcate Consideration of Plaintiff's Motion for

Preliminary Injunction and accompanying memorandum of law, filed concurrently herewith, the

defendants seek to afford the Court an opportunity to rule on the question of whether the

plaintiff, Jack Montague, has set forth a prima facie showing of irreparable harm on the papers,

before unnecessarily expending further resources of the Court and the parties on a lengthy

hearing regarding the remaining elements of his motion.  Accordingly, this memorandum

addresses the legal inadequacy of the plaintiff's claimed irreparable harm.  In the event the Court

denies their Motion to Bifurcate, the defendants respectfully reserve the right to supplement this

memorandum in order to address the remaining requirements for the issuance of a preliminary

injunction.  For the reasons articulated below, this Court need not reach those issues because the

plaintiff has failed to proffer sufficient facts to support a showing of irreparable harm, which the

Second Circuit has held is the <u>sine qua non</u> for the issuance of a preliminary injunction.  <u>JBR, Inc. v. Keurig Green Mt., Inc.</u>, 618 Fed. App'x 31, 33 (2d Cir. 2015).  Consequently, this Court should deny the plaintiff's motion on the papers without an evidentiary hearing.

## I.  <u>PRELIMINARY STATEMENT</u>

"A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'"  <u>JBR, Inc.</u>, 618 Fed. App'x at 33 (quoting <u>Sussman v. Crawford</u>, 488 F.3d 136, 139 (2d Cir. 2007)).  The Second Circuit has repeatedly held that "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  <u>Rodriguez v. DeBuono</u>, 175 F.3d 227, 234-35 (2d Cir. 1999) (citations and quotation omitted).  Indeed, irreparable harm "is the '<u>sine qua non</u> for preliminary injunctive relief.'"  <u>JBR, Inc.</u>, 618 Fed. App'x at 33 (quoting <u>USA Recycling, Inc. v. Town of Babylon</u>, 66 F.3d 1272, 1295 (2d Cir. 1995)).  "As such, the moving party *must first demonstrate that irreparable harm would be 'likely'* in the absence of a preliminary injunction '*before the other requirements for the issuance of [a preliminary] injunction will be considered*.'"  <u>Id.</u> (quoting <u>Rodriguez</u>, 175 F.3d at 234) (emphasis added).  "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied."  <u>Rodriguez</u>, 175 F.3d at 234.

The plaintiff has failed to put forth sufficient facts to make an adequate showing of irreparable harm for two reasons.  First, under established Second Circuit precedent, his nearly nine-month delay in filing his motion itself vitiates any claim of irreparable harm.  Second, as a matter of law, none of the consequences identified by the plaintiff as irreparable harm meet the exacting standard for that prerequisite to preliminary injunctive relief.  Accordingly, the Court should deny the plaintiff's motion on the papers without an evidentiary hearing.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the expulsion of the plaintiff during the spring semester of his senior year after Yale's University-Wide Committee on Sexual Misconduct (the "UWC") concluded that he had violated Yale's Sexual Misconduct Policy.  The essence of the complaint, filed with the UWC on November 18, 2015, was that the plaintiff had engaged in sexual intercourse with another student, Jane Roe, without her consent.  (See Pl.'s Mem. Ex. 10.)  Ms. Roe stated that she had agreed to some sexual contact on the evening in question, but that she had specifically told the plaintiff twice that she did not want to engage in intercourse.  She further stated that, despite her protests, he forced himself on her and then later apologized, and acknowledged that he was aware that she did not want to engage in intercourse but that he was unable to stop.  It is undeniable that, if the events occurred as reported by Ms. Roe, and ultimately found by the UWC, then the plaintiff violated Yale's Sexual Misconduct Policy and expulsion was the only appropriate remedy.  There can be no claim that Ms. Roe's agreement to engage in some sexual contact meant that she had also consented to intercourse; nor can it be claimed that a prior consent to sexual intercourse can be used in place of actual consent to a future interaction.  The Sexual Misconduct Policy specifically precludes any such argument: "Consent to some sexual acts does not constitute consent to others, nor does past consent to a given act constitute present or future consent."  (Pl.'s Mem. Ex. 9 at 3.)

The allegations were adjudicated pursuant to Yale's Procedures Governing the University-Wide Committee on Sexual Misconduct.  (See Pl.'s Mem. Ex. 3.)  The disciplinary process began with an investigation conducted by an impartial fact-finder who interviewed both the plaintiff and Ms. Roe, as well as five other witnesses.  The next step in the process was to convene a hearing on January 21, 2016 before a UWC panel consisting of five members.  At the

conclusion of the hearing, the panel unanimously determined that Ms. Roe had provided a full, detailed, and consistent account of the events of the night in question, which was supported by the testimony of several witnesses. The panel further unanimously found that the plaintiff's selective and shifting recollection of the events of that night, and his conflicting statements as to how he obtained Ms. Roe's consent, rendered his account not credible. Specifically, the panel noted that the plaintiff told the fact-finder that Ms. Roe had verbally agreed to intercourse, but that he later contradicted that statement when he told the panel that the consent was non-verbal. The panel also noted that the plaintiff himself admitted to being intoxicated on the night in question, and that neither he nor Ms. Roe suggested that Ms. Roe was intoxicated.[1] The panel specifically found that Ms. Roe's account of the interaction was more credible, both because she had provided consistent statements as to the events at issue and also because she was not intoxicated or otherwise impaired in any way that would have affected her recollection of those events. The panel also noted that Ms. Roe's account was supported by five witnesses and contemporaneous text messages. Having determined that Ms. Roe was credible and that the plaintiff was not, the panel unanimously concluded that the plaintiff had engaged in non-consensual sexual intercourse, which is a clear violation of Yale's Sexual Misconduct Policy. The panel therefore unanimously recommended to Dean Jonathan Holloway that he be expelled. On February 10, 2016, Dean Holloway accepted the panel's findings, conclusions, and recommended penalty. (See Pl.'s Mem. Ex. 13.)

---

[1] The Yale College Undergraduate Regulations, of which the Sexual Misconduct Policy is a part, provides that intoxication is not a defense to a charge of misconduct: "[S]tudents will be held fully responsible for their own behavior, even when acting under the influence of alcoholic beverages. Infractions of the alcohol regulations as well as any alcohol-related behavior that violates the *Undergraduate Regulations* will be subject to disciplinary action by the appropriate University officials. In such cases, the association of alcoholic beverages with problem behavior will not be seen as a mitigating factor and may be seen as an exacerbating factor." (Pl.'s Mem. Ex. 14 at 7 and 13.)

The plaintiff's expulsion was the third time he had received discipline at Yale for misconduct.  In May 2013, while standing outside a New Haven pizza parlor with several other students, including Sally Smith, he rolled up a greasy, used paper pizza plate and shoved it down the front of Ms. Smith's tank top between her breasts.  (See Pl.'s Mem. Ex. 8.)  A complaint was filed and an investigation and a hearing were conducted.  (See Pl.'s Mem. Ex. 7.)  In his written response to the complaint, the plaintiff admitted that he was "probably drunk" at the time of the incident and stated, "I am completely ashamed of myself, and I take full responsibility for my actions that night."[2]  (Ex. A.)  A UWC panel concluded that the plaintiff had violated Yale's Sexual Misconduct Policy and recommended that he be placed on probation for four semesters. He was also required to meet with a staff member at Yale's Sexual Harassment and Assault Response and Education Center ("SHARE") to reflect on his interactions and relationships with female students.  The plaintiff did not appeal the Dean's decision to accept the UWC panel's findings, conclusions, and recommended penalty.  The second disciplinary matter involving the plaintiff occurred in September 2015, when he received a reprimand from the Yale College Executive Committee based on a complaint filed by Yale Chief of Police Ronnell Higgins alleging that the plaintiff had interfered with a police investigation, where again the plaintiff was intoxicated.[3]  (See Pl.'s Mem. Ex. 15; see also Ex. B.)

On June 9, 2016—some four months after his expulsion—the plaintiff commenced this action, in which he alleges, in pertinent part, that Yale violated its policies and procedures in connection with his expulsion.  (See Doc. Nos. 1 and 30.)  On October 31, 2016—nearly nine

---

[2]  An incomplete copy of the UWC fact-finder's report dated September 25, 2013 is annexed to the plaintiff's motion as Exhibit 7.  Exhibit A to that report is Ms. Smith's complaint, which is annexed to the plaintiff's motion as Exhibit 8.  Exhibit B to that report is the written statement submitted by the plaintiff in response to Ms. Smith's complaint, which the plaintiff omitted entirely from his motion.  A true and correct redacted copy of that written statement is annexed hereto as Exhibit A.

[3]  A true and correct redacted copy of an email from the plaintiff to the members of the Executive Committee Coordinating Group dated September 21, 2015 is annexed hereto as Exhibit B.

months after his expulsion—the plaintiff filed his emergency motion asking this Court to order

his immediate reinstatement at Yale.  (See Doc. No. 31.)  It is important to note that nowhere in

his motion does the plaintiff challenge Ms. Roe's, Ms. Smith's, or Chief Higgins' accounts of the

events giving rise to the discipline imposed upon him.  Rather, the plaintiff argues only that

"procedural and contractual failures" justify the immediate reversal of his expulsion before a trial

on the merits of his claims can be held.  (Pl.'s Mem. at 23-24.)

       The plaintiff devotes some 15 pages of his brief to a recitation of the factual background

(see Pl.'s Mem. at 1-15); 17 pages to his argument on the merits (see Pl.'s Mem. at 18-34); and

an additional five pages to his argument on the balance of hardships and the public interest (see

Pl.'s Mem. at 34-38).  In contrast, he devotes less than two pages of his brief to the issue of

irreparable harm, which the Second Circuit has held is the "single most important prerequisite"

for preliminary injunctive relief.  (See Pl.'s Mem. at 16-17; Rodriguez, 175 F.3d at 234.)  The

plaintiff contends:

> Without injunctive relief . . . Montague will not graduate from college and he will
> not enter a post-graduate degree program, nor will he be able to secure the same
> types of employment opportunities he would have been able to secure with a
> degree from Yale and/or a post-graduate degree.  Indeed, he has not even been
> able to obtain employment as a basketball player, despite diligent efforts, because
> his expulsion is a deterrent to scouts and agents.

(Pl.'s Mem. at 16 (citations omitted).)  The plaintiff asserts, without offering any evidentiary

support, that "money damages cannot make him whole" for these losses.  (Pl.'s Mem. at 17.)

The plaintiff also submitted an affidavit listing these same consequences.  (Pl.'s Mem. Ex. 2.)

This conclusory and self-serving affidavit is the sole source of the "facts" from which the

plaintiff argues that he will suffer irreparable harm unless this Court immediately reverses his

expulsion.  (See Pl.'s Mem. at 16-17 and Ex. 2.)  As will be discussed below, by failing to act

promptly in seeking preliminary relief, the plaintiff deprived himself of the opportunity to

complete his degree requirements during three separate academic periods—the spring semester of 2016, the summer session of 2016, and the fall semester of 2016.  The plaintiff's failure to promptly seek preliminary relief is, in and of itself, a sufficient reason to deny his motion.

## III.   LEGAL STANDARDS

### a.   The "Extraordinary and Drastic Remedy" of Preliminary Injunctive Relief

Preliminary injunctive relief "is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'"  JBR, Inc., 618 Fed. App'x at 33 (quoting Sussman, 488 F.3d at 139); Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (same).  The Supreme Court has held that a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Winter v. Nat'l Res. Defense Council, Inc., 555 U.S. 7, 20 (2008).  The Second Circuit's modified test provides that a movant "must demonstrate:  (1)[a] a likelihood of success on the merits or . . . [b] sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) *a likelihood of irreparable injury in the absence of an injunction*; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction."  Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (quoting Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010)) (quotation marks omitted; emphasis added).  The plaintiff bears the burden of persuasion on each element.  Blum v. Schlegel, 830 F. Supp. 712, 723 (W.D.N.Y. 1993).

A prohibitory injunction seeks to "maintain the status quo pending a trial on the merits," while a mandatory injunction seeks to "alter the status quo by commanding some positive act."  Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995).  "Status quo" is

simply defined as "[t]he situation that currently exists." Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc., 454 F. Supp. 2d 62, 68 (E.D.N.Y. 2006). "The standard of proof to be applied in determining whether the moving party has satisfied the elements for a preliminary injunction depends on whether the party is seeking a mandatory or prohibitory injunction." Vantico Holdings S.A. v. Apollo Mgmt., 247 F. Supp. 2d 437, 450 (S.D.N.Y. 2003). "*[I]f a party seeks a mandatory injunction, the party must satisfy a higher standard and the preliminary injunction should be granted only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.*" Id. at 451 (emphasis added). "A mandatory injunction imposes significant burdens on the defendant and requires careful consideration of the intrusiveness of the ordered act, as well as the difficulties that may be encountered in supervising the enjoined party's compliance with the court's order." Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 892 (7th Cir. 2011).

There can be no question that the injunctive relief that the plaintiff seeks here is mandatory. See, e.g., Barsoumian v. Williams, 29 F. Supp. 3d 303, 319 (W.D.N.Y. 2014) (plaintiff surgical resident's motion for preliminary injunction seeking "reinstatement as an active surgical resident for the purpose of continued training during the pendency of this action" sought mandatory relief); Holmes v. Poskanzer, 2007 U.S. Dist. LEXIS 3216, at *8-9 (N.D.N.Y. Jan. 3, 2007) ("because Plaintiffs seek an injunction that would command SUNY-New Paltz to reinstate them and alter the status quo, they are moving for a mandatory injunction, and must meet a higher showing for the issuance of an injunction in this matter"); Cartagena v. Crew, 1996 U.S. Dist. LEXIS 20178, at *17 (E.D.N.Y. Sept. 5, 1996) (reinstatement of suspended school board members would constitute mandatory relief); accord Schrier v. Univ. of Colo., 427 F.3d

1253, 1261 (10th Cir. Colo. 2005) (observing that mandatory injunctions do not always alter

status quo, and holding that plaintiff-professor's motion for preliminary injunction seeking

reinstatement, "[w]hile merely seeking restoration of the status quo," nonetheless would require

an affirmative act and therefore requested mandatory relief); Preston v. Bd. of Trs. of Chi. State

Univ., 120 F. Supp. 3d 801, 804-05 (N.D. Ill. 2015) (reinstatement of expelled university student

would constitute mandatory relief); Isler v. N.M. Activities Ass'n, 2010 U.S. Dist. LEXIS

144454, at *23 (D.N.M. Feb. 19, 2010) (terminated employee's motion for preliminary

injunction seeking reinstatement, though not technically altering status quo, still constitutes

"disfavored mandatory injunction" as it would compel affirmative action and ongoing court

supervision); Bailey v. Clovis Unified Sch. Dist., 2008 U.S. Dist. LEXIS 10347, at *8-9 (E.D.

Cal. Feb. 11, 2008) (plaintiff student's motion for preliminary injunction seeking reinstatement

on varsity basketball team "reflects the essential characteristics of a mandatory injunction" and is

thus subject to higher degree of scrutiny).  The plaintiff was expelled from Yale nearly nine

months ago and only now seeks reinstatement.  As of the present date, he has not been a Yale

student for almost ten months.  Granting an injunction at the present time clearly would alter the

"situation as it currently exists."  Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir.

2006) (mandatory injunction "is said to alter the status quo by commanding some positive act").

### b.    The "Single Most Important Prerequisite" for Preliminary Injunctive Relief

The Second Circuit has repeatedly held that "the *single most important prerequisite* for

the issuance of a preliminary injunction" is a showing that, if the injunction is not granted, the

movant will suffer *irreparable harm* before a decision on the merits can be rendered.  Rodriguez,

175 F.3d at 234-35 (citations and quotation marks omitted; emphasis added); Citibank, N.A. v.

Citytrust, 756 F.2d 273, 275 (2d Cir. 1985) (quoting Bell & Howell:  Mamiya Co. v. Masel

Supply Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983)).  A failure to demonstrate irreparable harm is,

*in and of itself*, fatal to an application for preliminary injunctive relief.  See, e.g., Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 62-63 (2d Cir. 2007) (district court did not abuse discretion in finding plaintiff "failed to demonstrate sufficient likelihood of irreparable harm and, therefore, *on that basis alone*, affirm[ing] its denial") (emphasis added); Am. Postal Workers Union v. United States Postal Serv., 766 F.2d 715, 723 (2d Cir. 1985), cert. denied, 475 U.S. 1046 (1986) (irreparable harm "constitutes an *absolute requirement* for an award of injunctive relief") (emphasis added); accord Sampson v. Murray, 415 U.S. 61, 88 (1974) ("the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies") (quotation omitted).  Indeed, irreparable harm "is the 'sine qua non for preliminary injunctive relief.'"  JBR, Inc., 618 Fed. App'x at 33 (quoting USA Recycling, Inc., 66 F.3d at 1295).  "The 'burden of proof and persuasion rest[s] squarely' on the party moving for a preliminary injunction to show that irreparable harm is *likely*."  Id. at 34 (quoting Grand River, 481 F.3d at 67-68) (emphasis added).

"As such, the moving party must *first demonstrate that irreparable harm would be 'likely'* in the absence of a preliminary injunction '*before the other requirements for the issuance of [a preliminary] injunction will be considered*.'"  Id. (quoting Rodriguez, 175 F.3d at 234) (emphasis added); Grand River, 481 F.3d at 66 (2d Cir. 2007) (same) (quotation omitted); Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (same) (quotation omitted); Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (same) (quotation omitted).  Thus, courts within this Circuit considering an application for a preliminary injunction must first determine whether the plaintiff has made a legally adequate showing of irreparable harm before proceeding to the remaining elements of the application.  See, e.g., Rodriguez, 175 F.3d at 234. This ordering of the proof is consistent with Federal Rule 1 and principles of judicial economy.

To satisfy the irreparable harm prerequisite, the movant "must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Grand River, 481 F.3d at 66 (quotation omitted); see Clonus Assocs. v. Dreamworks, LLC, 417 F. Supp. 2d 248, 254 (S.D.N.Y. 2005) (rejecting claim of irreparable harm as "unsupported by concrete evidence" and collecting cases in this Circuit that have "rejected such speculative arguments in deciding whether to issue a preliminary injunction"). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.). Irreparable harm means injury that is not just possible, but *likely* in the absence of an injunction." Winter, 555 U.S. at 20 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy . . . .") (citations omitted). This requires more than "mere speculation that there is a possibility that the party seeking the injunction may in some unproved way suffer loss or damage." The Media Grp., Inc. v. Ontel Prods. Corp., 2001 U.S. Dist. LEXIS 1993, at *6 (JCH) (D. Conn. Feb. 14, 2001) (quoting Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604 F.2d 755, 759 (2d Cir. 1979)).

Where a plaintiff invokes the Second Circuit's modified "serious questions going to the merits" test, *an even stronger showing of irreparable harm is required.* See, e.g., Triebwasser & Katz v. Am. Tel. & Tel. Co., 535 F.2d 1356, 1359 (2d Cir. 1976) ("If the element of irreparable damage is prerequisite for relief where the plaintiff must show probable success on the merits, then a fortiori where the plaintiff establishes something less than probable success as to the merits, need for proof of the threat of irreparable damage is even more pronounced."); see also

Jack Kahn Music Co., 604 F.2d at 759 (same); Local 676, UA of Sprinkler Fitters & Apprentices of Conn. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the United States, 2010 U.S. Dist. LEXIS 96025, at *21-22 (VLB) (D. Conn. Sept. 15, 2010) ("Need for proof of irreparable harm is more pronounced when the plaintiff establishes something less than probable success on the merits.") (quotation omitted); Int'l Bus. Machs. Corp. v. Johnson, 629 F. Supp. 2d 321, 334 (S.D.N.Y. 2009) (quoting Triebwasser, 535 F.2d at 1359); Ortho Diagnos. Sys. v. Abbott Lab., Inc., 822 F. Supp. 145, 152 (S.D.N.Y. 1993) (same).

## IV.   ARGUMENT

### a.   Plaintiff's Unexplained and Unreasonable Delay, Standing Alone, Invalidates His Claim that Absent Injunctive Relief He Will Suffer Irreparable Harm.

"'Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect Plaintiffs' rights.'" The Media Grp., Inc., 2001 U.S. Dist. LEXIS 1993, at *6 (JCH) (D. Conn. Feb. 14, 2001) (quoting Citibank, 756 F.2d at 276). For this reason, it is well settled in the Second Circuit that a delay in seeking injunctive relief "*standing alone*" is sufficient to deny an application for a preliminary injunction. Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (quoting Citibank, N.A., 756 F.2d at 277) (emphasis added); Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 35 (2d Cir. 1991) (delay belies claim of irreparable harm); Majorica, S.A. v. R.H. Macy & Co., 762 F.2d 7, 8 (2d Cir. 1985) (per curiam) (delay of seven months precluded a preliminary injunction); Richard A. Leslie Co., Inc. v. Birdie, LLC, 2007 U.S. Dist. LEXIS 88437, at *5 (S.D.N.Y. Nov. 26, 2007) (three-month delay was "sufficiently long, *in and of itself*, to warrant denial of preliminary relief") (emphasis added).

In Citibank, the seminal Second Circuit decision on the issue of delay in the context of a request for preliminary injunctive relief, the plaintiffs moved in September 1984 to preliminarily

enjoin Citytrust, a Connecticut-based bank, from using the "City" prefix on any office in New York State.  Citibank, 756 F.2d at 273-75.  The proof adduced for the motion indicated that Citibank had actual notice of Citytrust's planned expansion into Long Island ten weeks prior to seeking an injunction, as well as nine months after constructive notice by publication.  Id. Reversing the district court's award of a preliminary injunction, the Second Circuit determined that "Citibank's failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'"  Id. at 277 (quoting Le Sportsac, Inc., 478 F. Supp. at 609).  Shortly after its decision in Citibank, the Second Circuit held that a lengthy delay "standing alone" warrants the denial of a preliminary injunction.  Majorica, 762 F.2d at 8 (finding plaintiff failed to show irreparable harm because it waited seven months to seek an injunction).  Similarly, in Richard A. Leslie Co., Inc., 2007 U.S. Dist. LEXIS 88437, the plaintiff first learned of defendants' use of an allegedly infringing trademark on April 10, 2007, and engaged in settlement discussions with defendant until June 8, 2007, but did not seek a preliminary injunction until September 18, 2007.  Id. at *2.  The Court held that the period from April 10 through June 8 could be excused on the basis that the parties had been engaged in settlement discussions.  Id. at *4-5.  However, the three-month period from June 8 through September 18 could not.  "It is sufficiently long, *in and of itself*, to warrant denial of preliminary relief."  Id. at *5 (emphasis added).

"[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."  Life Techs. Corp. v. AB Sciex Pte. Ltd., 2011 U.S. Dist. LEXIS 40586, at *19 (S.D.N.Y. Apr. 11, 2011) (quoting Gidatex, S.r.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 417, 419-20 (S.D.N.Y. 1998) (delay of over four months "clearly belied" any claim of irreparable injury)); see, e.g., Silber v. Barbara's Bakery, Inc., 950 F. Supp. 432,

439 (E.D.N.Y. 2013) (collecting cases and noting that "months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief."); see also Fisher Price, Inc. v. Well-Made Toy Mfg., 25 F.3d 119, 124-25 n.1 (2d Cir. 1994) (three-month delay unreasonable); Landers v. Samuelson, 2012 U.S. Dist. LEXIS 30922, at *6 (E.D.N.Y. Mar. 8, 2012) (four-month delay was sufficient to warrant denial of motion for preliminary injunction); Magnet Commc'ns, LLC v. Magnet Commc'ns, Inc., 2001 U.S. Dist. LEXIS 14460, at *5-6 (S.D.N.Y. Sept. 19, 2001) (twelve-week delay vitiated claim of irreparable harm); Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc., 909 F. Supp. 896, 910 (S.D.N.Y. 1995) (three-month delay warranted denial of preliminary injunction); Andersen Consulting LLP v. Am. Mgmt. Sys., Inc., 1995 U.S. Dist. LEXIS 12417, at *4 (S.D.N.Y. Aug. 28, 1995) (one-year delay unreasonable); Ethicon, Inc. v. United States Surgical Corp., 762 F. Supp. 480, 505 (D. Conn. 1991) (one-year delay unreasonable); Lanvin, Inc. v. Colonia, Inc., 739 F. Supp. 182, 192 (S.D.N.Y. 1990) (seven-month delay unreasonable); The Comic Strip, Inc. v. Fox Television Stations, Inc., 710 F. Supp. 976, 980 (S.D.N.Y. 1989) (three-month delay between conclusion of settlement discussions and filing for preliminary injunction demonstrated absence of irreparable harm); Birnbaum v. Blum, 546 F. Supp. 1363, 1367-68 (S.D.N.Y. 1982) (four-month delay "tantamount to laches and grounds for denial of the [preliminary injunctive] relief sought").

Courts have considered a plaintiff's delay in denying applications for preliminary relief specifically in cases arising out of university disciplinary proceedings and other academic contexts. For example, Knoch v. Univ. of Pittsburgh, 2016 U.S. Dist. LEXIS 117081 (W.D. Pa. Aug. 31, 2016), involved discipline imposed on an undergraduate arising out of a domestic dispute with a female university student. On May 17, 2016, after the conclusion of a lengthy

14

internal administrative process, the plaintiff was suspended for two academic terms.  At the time,

the plaintiff had only one semester left to graduate.  In late June 2016, the plaintiff filed suit

against the university.  On July 11, 2016, he filed a motion for a preliminary injunction seeking

reinstatement.  In denying the motion, the court observed that

> Plaintiff filed his Motion for Preliminary Injunction . . . thirteen days after he filed
> his complaint and two months after [the provost] accepted the [university panel's]
> recommendation . . . and the adjudication process ended. . . .  Plaintiff provides
> no excuse for failing to file his motion for preliminary injunction until two
> months after he was put on final notice of his suspension, and approximately a
> month and a half before the commencement of the Fall 2016 semester.  . . .
> Accordingly, Plaintiff has not shown that he will suffer irreparable injury if the
> injunction does not issue.

Id. at *28-29.  The court also found in the alternative that the plaintiff's claimed irreparable

harms—loss of income, loss of career experience and professional reputation, and loss of

continuity of education—were legally insufficient to constitute irreparable harm.  Id. at *26-29.

It bears noting that those harms are the precise harms claimed by the present plaintiff, whose

delay was seven months longer than the delay found to be dispositive in Knoch.

Similarly, in Anyadike v. Vernon Coll., 2016 U.S. Dist. LEXIS 3161 (N.D. Tex. Jan. 11,

2016), the plaintiff delayed six months in filing his application for preliminary relief.  In denying

the motion, the court observed:

> Anyadike's several-month delay in filing until weeks before he would have
> otherwise graduated from the [nursing] Program not only limits the Court's ability
> to analyze Plaintiff's claims, it militates against a finding of irreparable harm. . . .
> Anyadyke did not provide a reasonable rationale as to why he waited six months
> to file this lawsuit.

Id. at *29-30.  The court also found in the alternative that the plaintiff's claimed irreparable

harms—emotional distress and lost earning potential—were legally insufficient to warrant "the

extraordinary remedy of a preliminary injunction."  Id. at *30-31. Once again the factual

background is indistinguishable from the present case, both as to the length of the delay and the types of harm alleged to be irreparable.

Yet another example is LaFreniere v. Regents of the Univ. of Cal., 2006 U.S. Dist. LEXIS 47252 (N.D. Cal. July 6, 2006), in which the plaintiff filed suit in December 2004 against the defendant university claiming that his expulsion was a result of race discrimination.  In April 2005, the trial court granted the defendants' motion to dismiss.  The plaintiff appealed the ruling and, in March 2006, the appellate court overturned the trial court's decision and reinstated the action.  In June 2006, the plaintiff filed a motion for a preliminary injunction seeking immediate reinstatement.  Without conducting a hearing, the court denied the plaintiff's motion, based in part on the lengthy delay between his expulsion and the filing of his application for preliminary injunctive relief.  Id. at *11 ("Perhaps most telling in this regard is [the plaintiff's] lengthy delay in seeking injunctive relief.  An unreasonable delay in seeking such relief is relevant in deciding whether such relief is truly necessary.") (citation omitted); accord Raghavendra v. Trs. of Columbia Univ., 2008 U.S. Dist. LEXIS 51995, at *37-38 (S.D.N.Y. July 7, 2008) (denying plaintiff university employee's motion for preliminary injunction due to nearly one-year delay between commencement of action and filing of motion; "It is one of the most fundamental propositions in the law—traceable to the very earliest common law—that an injured party must 'show that he immediately raised the hue and cry' in order to obtain relief.") (citation omitted); Shady v. Tyson, 5 F. Supp. 2d 102, 109 (E.D.N.Y. 1998) (denying plaintiff professor's motion for preliminary relief seeking to enjoin his termination because of one-year delay in filing the motion); Traster v. Ohio N. Univ., 2012 U.S. Dist. LEXIS 192801, at *5-6 (N.D. Ohio Dec. 14, 2012) (denying plaintiff tenured law professor's motion for preliminary injunction challenging

indefinite suspension arising out of two sexual harassment complaints based in part on plaintiff's eight-month delay in filing motion).

The present plaintiff has not even attempted to explain why he waited almost nine months to file his motion. He was expelled from Yale on February 10, 2016. (See Pl.'s Mem. at 12 and Ex. 13.) It cannot reasonably be disputed that, as of that date, all of the materials he needed to prepare his complaint—including the UWC fact-finder and panel reports, the publicly available policies and procedures he claims the defendants violated, and of course his own materials and recollection of events—had already been provided or were readily available to him. He could have and should have immediately filed his complaint accompanied by a motion seeking a temporary restraining order permitting him to complete his coursework. Instead, he waited some four months—until June 9, 2016—to initiate this action. (See Doc. No. 1.) Of course, by then the spring 2016 semester had already ended. By failing to act promptly, the plaintiff deprived himself of the opportunity to obtain preliminary relief during the semester in which he was expelled. Had he been successful in an emergency motion at that point, he would have graduated on time with his class.

When the plaintiff finally did initiate this action in June 2016, he still did not seek preliminary injunctive relief. Had he chosen to file his present motion then, he would have been able to use the summer session to complete some or all of his remaining requirements for graduation. If he indeed was suffering irreparable harm, he should have filed his motion on the same date that he filed his complaint. Instead, the plaintiff waited nearly five additional months—until October 31, 2016—to file his motion, in which he now urgently asks this Court to undo his expulsion and to affirmatively order Yale to reinstate him as a student effective

immediately.  (See Doc. No. 31.)  Of course, this further delay precluded any possibility of the plaintiff being reinstated for the fall 2016 semester.

It is particularly telling that, at least as early as December 2015—prior even to the commencement of the UWC panel hearing regarding his behavior with Ms. Roe—the plaintiff had already consulted a lawyer, who continues to represent him in this action.[4]  (Ex. C.) Moreover, by no later than March 2016, the plaintiff had retained a second lawyer, who also represents him in this action.  On March 14, 2016—barely one month after the plaintiff's expulsion—that lawyer issued a press release in which he provided in great detail the plaintiff's version of the events surrounding the expulsion, claimed that Yale had imposed a "drastic . . . punishment on the basis of . . . flimsy evidence," and stated that "Mr. Montague intends to sue Yale University to vindicate his rights."[5]  (Ex. D.)  The plaintiff has offered no explanation for why an application for preliminary relief was not sought at the time press release was issued.

The plaintiff could have filed his motion at any point over the past nine months, and he has made no effort to explain why he did not seek emergency relief immediately following his expulsion.  Under these circumstances, the standards set forth in Citibank and its progeny, and the principles articulated in the cases discussed above, the plaintiff—who has let two semesters and a summer session slip by since his February 10, 2016 expulsion—cannot now claim that he will suffer irreparable harm unless he is immediately reinstated.  Therefore, the plaintiff is not entitled to the "extraordinary and drastic remedy" of preliminary injunctive relief, and this Court should "decline to manufacture a sense of urgency that is not supported by [his] own conduct." Krueger Int'l, Inc. v. Nightingale, Inc., 915 F. Supp. 595, 613 (S.D.N.Y. 1996) (Sotomayor, J.).

---

[4]  True and correct redacted copies of emails from the plaintiff to several individuals at Yale dated December 2016, in which he identifies Attorney William Dow III as his attorney, are annexed hereto as Exhibit C.

[5]  A true and correct copy of the Press Release issued by Attorney Max Stern dated March 14, 2016, in which Attorney Stern identifies himself as counsel for the plaintiff, is annexed hereto as Exhibit D.

**b.      The Injuries Plaintiff Alleges Do Not Constitute Irreparable Harm as a <u>Matter of Law.</u>**

Even if the plaintiff had offered some valid excuse for his unexplained and unreasonable nine-month-long delay in seeking emergency injunctive relief, the Court should still deny his application.  In both his motion and his affidavit, the plaintiff contends that, without a preliminary injunction, he (1) "will not graduate from college," (2) "will not enter a post-graduate degree program," and (3) "will not be able to secure the same types of employment opportunities he would have been able to secure with a degree from Yale and/or a post-graduate degree."  (Pl.'s Mem. at 16 and Ex. 2.)  He claims that "money damages cannot make him whole" for these losses.  (Pl.'s Mem. at 17.)  Although his affidavit does not suggest any reputational injury, the plaintiff claims in his brief that that he has been "publicly vilified" and that his "name and reputation will now forever be associated with the words 'sexual assault.'" (Pl.'s Mem. at 15.)

**1.      The Overwhelming Weight of Authority Makes Clear that Plaintiff Has Not Made a <u>Prima</u> <u>Facie</u> Showing of Irreparable Harm**.

The overwhelming weight of authority in this Circuit and elsewhere makes clear that the injuries the plaintiff has identified do not constitute irreparable harm sufficient to warrant the issuance of preliminary injunctive relief.  As an initial matter, it must be recognized that, in the event that the plaintiff prevails at trial, the Court can order his immediate reinstatement and none of these claimed harms will come to pass.  In that event, assuming he is able to complete his degree requirements satisfactorily, he will in fact secure a Yale degree, after which he can pursue a post-graduate degree and pursue whatever employment he desires.  Most civil trials in this District are scheduled within 18 months of the filing of suit.  If this schedule were expedited slightly, and assuming the plaintiff is able to prevail on the merits, he would be reinstated in time for the January 2018 term.  This would mean that his education would be deferred for two

additional semesters and a summer session, the same amount of time his own delay has already occasioned.  Even if trial cannot be expedited, the fact remains that the plaintiff has not alleged any harm that courts in this Circuit recognize as irreparable for the purpose of obtaining a preliminary injunction.

Phillips v. Marsh, 687 F.2d 620 (2d Cir. 1982), illustrates this point.  The plaintiff was a cadet at the United States Military Academy at West Point.  On January 18, 1982, she was expelled from the Academy in her final semester following repeated violations of the Cadet Disciplinary System.  Less than one month after her dismissal, she filed a complaint in federal court accompanied by a motion for a preliminary injunction seeking reinstatement, which the trial court granted.  On appeal, the Second Circuit reversed the trial court's decision on the basis that the plaintiff had failed to make a showing of irreparable harm.  "We can conceive of no irreparable harm," the court held, "that would accrue to her in allowing her graduation to await the outcome of the trial on the merits; any damages to her from deferring her career as a military officer in that period of time would surely be compensable by monetary damages."  Phillips, 687 F.2d at 622 (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70 (2d Cir. 1979)).  Nothing distinguishes the harm claimed and rejected by the Second Circuit in Phillips from the harm claimed by Mr. Montague.  The outcome here should therefore be the same as in Phillips.

In Caiola v. Saddlemire, 2013 U.S. Dist. LEXIS 43208 (VLB) (D. Conn. Mar. 27, 2013), the plaintiff filed suit and a motion for a preliminary injunction just one month after his expulsion from the University of Connecticut for violations of the Student Code.  Judge Bryant denied the motion on the basis of the plaintiff's failure to establish irreparable harm:

> While an expulsion is a severe penalty, particularly since [the plaintiff] was on the verge of graduation and had been admitted into a masters in education program, he is not entitled to the relief sought because he has failed to establish irreparable

harm.  In order to demonstrate that he will suffer irreparable injury, plaintiff must
show that a monetary award will not adequately compensate him for his injuries.

Id. at *4 (citations omitted).  The court summarily dismissed as "speculative" the plaintiff's

generalized claim that "the stigma from his expulsion will interfere with his academic and

teaching career."  Id. at *4-5.  The court further rejected the plaintiff's argument that "he was

admitted into a masters program contingent on his graduation" because he "failed to offer any

evidence that his expulsion did in fact or even was likely to result in a rescission of his

admission."  Id. at *5 (citations omitted).  The same is true here.  The present plaintiff has

offered a conclusory and self-serving affidavit to the effect that he will not be able to obtain a

college degree or gain entrance to a graduate program, but he has offered no evidence to support

those allegations.  For example, his affidavit is notably silent on any efforts he has made to

complete his degree requirements at another institution.[6]  (See Ex. E at 1-2.)  It bears repeating

that the expulsion in this case will only delay the plaintiff's education, not permanently prevent

him from obtaining a degree, if he ultimately prevails at trial.

In Salau v. Denton, 139 F. Supp. 3d 988 (W.D. Mo. 2015), the plaintiff was expelled

from the University of Missouri for, among other things, nonconsensual sexual behavior.  Id. at

996.  In denying the motion for a preliminary injunction, the court concluded that the plaintiff

had failed to show irreparable harm because he failed to prove "that he could not enroll in a

different university to complete his degree program, or that he could not be employed

elsewhere."  Id. at 1013.  The court also found persuasive the fact that the plaintiff had waited

months after he was expelled to seek a preliminary injunction.  Id.  The same rationale applies to

---

[6] An attempt to gain admission after expulsion from Yale would not be futile; indeed, just last year, a student was
successful in continuing his education despite his expulsion from Yale.  A true and correct copy of an order entered
in a case captioned Doe v. Yale Univ., No. 2:15-cv-07263, ECF No. 15 (C.D. Cal. Nov. 5, 2015), is annexed hereto
as Exhibit E.  In that order, the court noted that the plaintiff, who had been expelled for violating Yale's Sexual
Misconduct Policy, was "currently a student in New York" and expected to graduate in December 2016.  Id. at 1-2.

the case at bar; the present plaintiff has not even alleged that he made efforts to gain admission to another program.  To the contrary, the plaintiff's own public relations spokesperson recently stated that "he has not attempted to enroll at another university."[7]  (Ex. F at 2.)

Cases finding an absence of irreparable harm in circumstances virtually identical to those presented here are legion.  See, e.g., Silman v. Utica Coll., 2015 U.S. Dist. LEXIS 8829, at *5 n.2 (N.D.N.Y. Jan. 27, 2015) (plaintiff cannot show irreparable harm because classes can be taken at other accredited universities); Yu v. Vassar Coll., No. 13-cv-4373, ECF No. 29, at 1 (S.D.N.Y. Feb. 25, 2014) (denying motion for preliminary injunction because "[o]rdinarily a one-year delay in obtaining admission to a graduate school . . . is insufficient to warrant an injunction in the absence of other circumstances militating in favor of such relief") (quotation omitted); Mostaghim v. Fashion Inst. of Tech., 2001 U.S. Dist. LEXIS 19789, at *8-9 (S.D.N.Y. Nov. 30, 2001) (even if plaintiff had been expelled, he would not  suffer irreparable harm, "since the irreparable harm would flow from the permanent deprivation of his degree, which was not the inevitable consequence of either suspension or expulsion"); accord Knoch, 2016 U.S. Dist. LEXIS 117081, at *27-28 (plaintiff's speculative contention that he would be unable to enter the workforce due to his suspension did not constitute irreparable harm, and any interruption of his education and delay in entering the workforce could be adequately compensated by monetary damages); Pham v. Univ. of La. at Monroe, 2016 U.S. Dist. LEXIS 91663, at *24-25 (W.D. La. July 13, 2016) (plaintiff's expulsion did not amount to irreparable harm because university had already expelled plaintiff by the time he brought suit and "[t]herefore, there is no threat of irreparable injury or reason to preserve the status quo because the status quo is not what is desired"); Howe v. Pa. State Univ. Harrisburg, 2016 U.S. Dist. LEXIS 11981, at *20-21 (M.D.

---

[7]  A true and correct copy of a Yale Daily News article dated November 2, 2016, which quotes "Karen Schwartzman of Polaris Public Relations, who represents Montague and his lawyer Max Stern," is annexed hereto as Exhibit F.

Pa. Feb. 2, 2016) ("even if the plaintiff would experience a delay [in his education] as a result of his suspension, this would not constitute irreparable harm which would not be compensated with monetary damages in the future, if warranted"); <u>Doe v. Ohio State Univ.</u>, 136 F. Supp. 3d 854, 870-71 (S.D. Ohio 2016) ("humiliation, extreme anxiety, mental distress and damage to his reputation" produced by the investigative and disciplinary process associated with a complaint against the plaintiff for sexual harassment was not sufficient to establish irreparable harm, nor was the fact that the proceedings may become memorialized in documents that could be publicly available); <u>Preston</u>, 120 F. Supp. 3d at 805-06 ("a student's ambitions in a particular future employment path" do not warrant the entry of a mandatory interlocutory injunction); <u>B.P.C. v. Temple Univ.</u>, 2014 U.S. Dist. LEXIS 130410, at *12-15 (E.D. Pa. Aug. 27, 2014) (plaintiff failed to establish irreparable harm because he did not put forth evidence showing that he was "potentially barred" from employment, but merely impaired from obtaining employment; and plaintiff's loss of education can be remedied since  reinstatement is a possible remedy if he prevails at trial); <u>LaFreniere v. Regents of the Univ. of Cal.</u>, 2006 U.S. Dist. LEXIS 47252, at *11-12 (N.D. Cal. July 6, 2006) (plaintiff's unsupported claim that he will suffer "irreparable psychological injury" if injunction is denied held insufficient to establish irreparable harm); <u>Marsh v. Del. State Univ.</u>, 2006 U.S. Dist. LEXIS 1658, at *18 (D. Del. Jan. 19, 2006) (delay in education does not constitute irreparable harm where university has policy that would permit plaintiff to reapply three years following expulsion); <u>Baer v. Nat'l Bd. of Medical Examiners</u>, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) (in the context of a medical student's ADA claim, "[the plaintiff's] inability to continue as a medical student without interruption at Drexel, while [un]desirable, is not a harm that is irreparable to [plaintiff's] potential medical career"); <u>Ben-Yonatan v. Concordia Coll. Corp.</u>, 863 F. Supp. 983, 986 (D. Minn. 1994) (plaintiff's argument

that she may never be admitted to medical school because of her one year break in her academic record is purely speculative and not sufficient to show the irreparable harm necessary to justify injunctive relief); Sohmer v. Kinnard, 535 F. Supp. 50, 52 (D. Md. 1982) ("a mere delay in plaintiff's entry into the profession does not constitute irreparable harm"); Law v. William Marsh Rice Univ., 123 S.W.3d 786, 794-95 (Tex. App. Houston 14th Dist. 2003) ("[The plaintiff] will not be able to return to Rice for two semesters and, therefore, will not have the opportunity to pursue any job with his degree qualifications for at least a year. . . . Such harm, however, can be compensated by monetary damages"); Boehm v. Univ. of Pa. Sch. of Veterinary Med., 392 Pa. Super. 502, 524 (Pa. Super. Ct. 1990) (trial court abused discretion by issuing a preliminary injunction because suspended students could be compensated by monetary damages).

As the foregoing case law makes clear, none of the harms the plaintiff has alleged are sufficient to warrant preliminary injunctive relief.  If he ultimately prevails in this action, he will be reinstated and most likely will graduate from Yale.  He will then be eligible for post-graduate degree programs and more qualified to secure the unidentified employment opportunities he claims he intends to seek.  All temporary harms proximately flowing from his expulsion can be addressed with monetary damages, including any period of unemployment and any reputational or emotional injuries.  See, e.g., Bagley v. Yale Univ., 2014 U.S. Dist. LEXIS 177611, at *26-27 (CSH) (D. Conn. Dec. 29, 2014) ("damage to a plaintiff's reputation in his or her chosen field does not constitute irreparable harm . . . .").

The plaintiff has not alleged in his motion that he has applied to other colleges, that he has a job offer contingent upon his graduation, or that he has taken any steps to apply to post-graduate degree programs.  As to employment, the plaintiff has not claimed that he has even applied for a job, much less been rejected.  He merely states that "basketball scouts and agents

lose interest . . . when they learn that [he] was expelled."  (Pl.'s Mem. Ex. 2 ¶ 10.)  He has

provided no details as to any efforts he made to become employed by a basketball team.

Furthermore, he has offered no evidence to support a conclusion that, but for his expulsion, the

plaintiff would now be a professional basketball player.  Indeed, entering a preliminary

injunction at this time will do nothing to remove the public stain which the plaintiff claims is

causing him harm; the media reports detailing his expulsion due to sexual misconduct will still

exist, as will the press releases issued by his own attorneys.  In short, the plaintiff has provided

the Court with nothing more than "mere speculation that there is a possibility" that he "may in

some unproved way suffer loss or damage" between now and the conclusion of this litigation.

The Media Grp., Inc., 2001 U.S. Dist. LEXIS 1993, at *6 (JCH) (D. Conn. Feb. 14, 2001)

(quotation omitted).  And he has failed entirely to provide the Court with "concrete evidence" of

any injury that is "actual and imminent, not remote or speculative."  Kamerling, 295 F.3d at 214.

Simply put, the plaintiff has not put forth a prima facie showing of irreparable harm.  Even if the

plaintiff had proffered "concrete evidence" to suggest that it is "likely" that he will suffer the

harms suggested in his affidavit, those harms simply do not, as a matter of law, constitute

irreparable harm sufficient to warrant the "extraordinary and drastic remedy" of preliminary

injunctive relief.  The Court therefore should, on that basis alone, deny his motion on the papers

without a hearing.

> **2.      The Case Law upon which Plaintiff Relies Is Inapposite.**

The plaintiff devotes less than two pages of text, and string cites just seven cases, to

support his allegation that he will suffer irreparable harm if his request for injunctive relief is

denied.  (See Pl.'s Mem. at 16-17.)  Each of these cases is readily distinguishable on its facts.

In <u>Doe v. New York Univ.</u>, 666 F.2d 761 (2d Cir. 1981), the plaintiff student falsely stated on her application for admission to the defendant university's medical school that she did not suffer from any medical disorders.  The university later learned that the plaintiff had a history of severe psychiatric problems and, after several incidents, asked her to withdraw.  The plaintiff filed suit under Section 504 of the Rehabilitation Act of 1973 and sought a preliminary injunction ordering the medical school to readmit her.  The district court granted the motion without a hearing and the university appealed.  Noting both that the plaintiff's alleged harms were not irreparable and that she had waited "at least a year" before seeking injunctive relief, the Second Circuit stated that it "would ordinarily reverse the grant of preliminary relief solely on the ground that [the plaintiff] failed to make a sufficient showing of irreparable injury." However, because the plaintiff had already left a job in Washington and had been readmitted to medical school in reliance on the district court's "mandatory injunction," the Court of Appeals considered the merits of her claim before reversing the district court's decision.  <u>Id.</u> at 780. Contrary to the present plaintiff's argument, the <u>Doe</u> case supports the defendants' position that he is not entitled to preliminary injunctive relief because he has failed to allege any legally recognizable irreparable harm.

In <u>Maczaczyj v. New York</u>, 956 F. Supp. 403 (W.D.N.Y. 1997), the plaintiff, who suffered from severe mental illness, was accepted into a masters degree program at Empire State College.  When school administrators demanded that he attend a one-day orientation program in Buffalo, New York as a condition of admission, the plaintiff asked to be able to participate via a satellite uplink as a reasonable accommodation.  Before he received a response, the plaintiff commenced an action under the Americans with Disabilities Act and immediately sought a preliminary injunction preventing the College from rejecting his proposed accommodation.  <u>Id.</u>

at *2-3.  The College then denied the plaintiff's request, proposed alternative accommodations,

and informed the plaintiff that if he failed to attend the program he would be denied admission.

The court found that the plaintiff had proven irreparable harm:

> [i]n the absence of an injunction, plaintiff will not be able to participate in this or
> any other masters program at Empire State College.  This exclusion will most
> likely affect plaintiff's ability to engage in the future employment of his choice.
> Perhaps more important is the unquantifiable effect this exclusion will have on
> plaintiff's mental illness.  Both [plaintiff's mental health therapist] and plaintiff
> have indicated that this experience has already had a significant negative impact
> on plaintiff's mental health and his progress towards overcoming his illness.  If
> the court denies injunctive relief and plaintiff is released from the masters
> program, plaintiff is likely to suffer additional psychic [sic] harm.

Id. at *18.  The present plaintiff has not alleged that he suffers from any conditions similar to the

severe mental illness suffered by the plaintiff in Maczaczyj that would warrant preliminary relief.

The Maczaczyj case is further distinguishable in light of the fact that the plaintiff there

demonstrated the urgency of his need by promptly seeking a preliminary injunction.

Coleman v. Newburgh Enlarged City Sch. Dist., 319 F. Supp. 2d 446 (S.D.N.Y. 2004),

rev'd, 503 F.3d 198 (2d Cir. 2007), is clearly inapposite.  As an initial matter, Mr. Montague

failed to disclose in his brief that, on appeal, the Second Circuit reversed the district court's

decision granting the plaintiff's motion for a preliminary injunction on the grounds that the court

had erred by improperly focusing its decision on the detriment to the plaintiff and should have

dismissed the complaint in its entirety because the plaintiff had failed to exhaust his

administrative remedies.  See Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198,

205, 207 (2d Cir. 2007).  In Coleman, the plaintiff high school student, who suffered from a

severe learning disability, was involved in a physical altercation in April with another student

that resulted in his suspension for the balance of the school year.  Just nine days after his

suspension, the plaintiff filed suit and requested a temporary restraining order allowing him to

return to school.  The court found for several reasons that the plaintiff would suffer irreparable

harm if he were not reinstated.  First, he had a severe learning disability and required the continuous attention of special education teachers.  <u>Coleman</u>, 319 F. Supp. 2d at 452-53. Second, the court determined that he would not be able to receive this assistance during his suspension.  <u>See</u> <u>id.</u>  Third, the plaintiff had already been offered full athletic scholarships to several universities, which was likely his only opportunity to obtain a college degree given his significant disabilities.  <u>Id.</u> at 453.  His preclusion from school and his extracurricular activities would jeopardize his scholarships and his ability to obtain a college education.  <u>Id.</u>

The present plaintiff has offered no suggestion that he suffers from any condition similar to the learning disabilities of the plaintiff in <u>Coleman</u> and that he would suffer harm during the time prior to trial because of special services being provided to him at Yale.  Furthermore, although he claims that he will not be able to complete his college degree, he has made no effort to apply to another institution.  Similarly, while he claims that he would like to pursue either an MBA or a law degree, Mr. Montague had applied to neither type of program at the time of his February 2016 expulsion, so it cannot have been his intention to enter a business or a law program until the fall of 2017 at the very earliest.  In fact, the only career Mr. Montague claims to have even considered since leaving Yale is professional basketball, and he has offered no evidence to show that his inability to find work as a basketball player is related to his failure to obtain a Yale degree.

In <u>Phillip v. NCAA</u>, 960 F. Supp. 552 (TPS) (D. Conn. 1996), the plaintiff student had been admitted to Fairfield University with a full athletic scholarship, but late in his senior year of high school the NCAA Clearinghouse declared him ineligible to compete in college basketball. The plaintiff still enrolled at Fairfield University, but at his parents' expense.  After a series of administrative appeals, the NCAA maintained its position that the plaintiff was ineligible.

Unlike Mr. Montague, the plaintiff immediately filed suit and sought a temporary restraining order and a preliminary injunction.  Magistrate Judge Smith held that the plaintiff would suffer irreparable harm if he were not considered eligible to play college basketball because, without a full athletic scholarship, it would be "financially impossible for [him] to remain at Fairfield University."  Id. at 20.  The present plaintiff, by contrast, did not receive an athletic scholarship from Yale, and he has not alleged that he would be financially unable to complete his degree at a different university or, if his suit succeeded, at Yale.

In Doe v. Middlebury Coll., No. 1:15-cv-00192, ECF No. 27 (D. Vt. Sept. 16, 2015), the plaintiff student was expelled after a finding that he had violated the college's sexual misconduct policies while spending a semester abroad at another institution.  In the summer of 2015, prior to his expulsion, he completed an internship that resulted in an employment offer that was contingent upon his graduation.  The plaintiff filed suit and, in contrast to Mr. Montague, sought a preliminary injunction just two days after the denial of his final internal appeal.  The court concluded, without conducting an evidentiary hearing, that the plaintiff would suffer irreparable harm in the absence of an injunction because, if he could not graduate in time, he would lose an existing job offer.  Id. at 2 n.4 and 5.[8]

The present plaintiff, on the other hand, has made no claim that his expulsion has deprived him of a concrete employment offer contingent upon his graduation from Yale.  He simply asserts that, "[s]ince [his] expulsion, [he has] tried to obtain employment as a basketball player," and that "he will not be able to secure the same types of employment opportunities he would have been able to secure with a degree from Yale."  (Pl.'s Mem. at 16.)  Not only is this

---

[8]  The court also noted that the case presented a unique situation insofar as the institution at which he was studying abroad had exonerated him of the sexual misconduct charges, and that the college permitted him to return and continue his studies during the next semester, but then decided to conduct its own investigation and ultimately reached the opposite conclusion.  Id. at 6.

claim speculative, the plaintiff has provided no evidence that he has attempted to find work as anything other than a professional basketball player or that his inability to find a basketball position is related to his failure to obtain a Yale degree.  (See Pl.'s Mem. at 16 and Ex. 2 ¶ 10.) Nor has he provided the Court with any detail as to what, if anything, he has done to seek employment as a professional basketball player.  As such, the plaintiff's self-serving claim that he cannot obtain employment constitutes nothing more than "mere speculation."  See, e.g., Caiola, 2013 U.S. Dist. LEXIS 43208, at *4-5 (VLB) (D. Conn. Mar. 27, 2013); The Media Grp., Inc., 2001 U.S. Dist. LEXIS 1993, at *6 (JCH) (D. Conn. Feb. 14, 2001).  He also has provided no basis for the court to believe that he would have been successful in finding employment as a professional basketball player but for his expulsion.  As such, he has failed entirely to demonstrate that "absent an injunction [he] will suffer an injury that is neither remote nor speculative, but actual an imminent, and one that cannot be remedied if [this Court] waits until the end of trial to resolve the harm."  Grand River, 481 F.3d at 66.  More importantly, the plaintiff will suffer none of the harms he claims in his motion if he ultimately prevails at trial.

In Doe v. Brown Univ., 2016 U.S. Dist. LEXIS 132824 (D.R.I. Sept. 28, 2016), the plaintiff was suspended for violating the university's sexual misconduct policies.  The court, pursuant to an agreement between the parties, held a consolidated bench trial on both the merits of the plaintiff's case and his request for a preliminary injunction.  In its decision, the court made no mention of the irreparable harm requirement for a preliminary injunction.  Rather, the court simply noted that a preliminary injunction had been issued approximately one month earlier.  Id. at *1-2.  Since the court provided no rationale for its decision to grant the plaintiff's motion, the case is of no value to this Court's irreparable harm analysis.

In King v. DePauw Univ., 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014), the court held that the plaintiff would suffer irreparable harm if he were not permitted to complete the upcoming semester because he would have a gap or senior-year transfer on his record that he would have to explain.  Id. at *39-40.  Unlike Mr. Montague, the plaintiff in King demonstrated the urgency of his request for relief by filing a motion for a preliminary injunction along with his complaint a mere three days after the university issued its final decision.  See id.

## V.   CONCLUSION

The dispositive Supreme Court, Second Circuit, and District Court case law cited above demonstrates that it is impossible for the plaintiff to establish the irreparable harm required to prevail on his motion.  First, his nearly nine-month delay in filing his motion vitiates any claim of irreparable harm.  Second, as a matter of law, none of the consequences he has identified as irreparable harm meets the exacting standard for that prerequisite to preliminary injunctive relief. In fact, as a direct result of his own delay, the plaintiff has failed to take advantage of multiple opportunities to seek an injunction that would have permitted him to complete his course requirements during the spring 2016, summer 2016, and fall 2016 academic terms.  Accordingly, the defendants respectfully submit that the Court should deny the plaintiff's motion.  For the Court to rule otherwise would be contrary to the well-established principle that preliminary injunctive relief is an "extraordinary and drastic remedy never awarded as of right."  Winter, 555 U.S. at 24.  For the reasons set forth in their Motion to Bifurcate Consideration of Plaintiff's Motion for Preliminary Injunction, the defendants respectfully submit that the Court should deny the plaintiff's motion on the papers without an evidentiary hearing.

THE DEFENDANTS,
YALE UNIVERSITY, ANGELA GLEASON and
JASON KILLHEFFER

By:   /s/  Patrick M. Noonan
      Patrick M. Noonan (ct00189)
      James D. Flynn (ct29778)
      DONAHUE, DURHAM & NOONAN, P.C.
      741 Boston Post Road
      Guilford, Connecticut 06437
      Tel:  (203) 458-9168
      Fax:  (203) 458-4424
      Email: pnoonan@ddnctlaw.com
             jflynn@ddnctlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 21, 2016, a copy of foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

   /s/  James D. Flynn
James D. Flynn (ct29778)
DONAHUE, DURHAM & NOONAN, P.C.
741 Boston Post Road
Guilford, Connecticut 06437
Tel:  (203) 458-9168
Fax:  (203) 458-4424
Email:  jflynn@ddnctlaw.com