UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

JACK MONTAGUE,
    Plaintiff,

v.

YALE UNIVERSTIY, ANGELA GLEASON,
and JASON KILLHEFFER,
    Defendants.

CIVIL ACTION
No. 3:16-cv-00885

## AFFIDAVIT OF DUSTIN SIMCOX IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Dustin Simcox, having been duly sworn, do hereby state as follows:

1. I am over eighteen (18) years of age and believe in the obligations of an oath.

2. I am Chief Executive Officer, President, and lead Agent at Whitecox & Lyons Sports Management, and am certified to represent players in the NBA, the WNBA, and FIBA International. I have been recognized as a top five agent internationally. Since October of 2015, I have also served as Director of Eurobasket Summer League ("ESL"), one of the most prestigious summer basketball camps in the country.

3. I became acquainted with the plaintiff, Jack Montague, in or around April of 2016 when he was accepted to the ESL. Under Eurobasket rules, Division I players who average ten points per game can go to ESL for free because of their status as high-value players. Mr. Montague qualified on this basis.

4. I researched Mr. Montague before he came to the camp and discovered, through various online news outlets, that he had been expelled from Yale for alleged sexual misconduct. When I met Mr. Montague, I advised him that this issue would likely be a problem for many of the

professional basketball teams that would otherwise look at him seriously as a recruit. This was especially true because Mr. Montague is a point guard; point guards are plentiful, so when faced with the choice of a point guard who has no issues off the court and one who does, a team will choose the player with no issues off the court, so long as he is of equal skill.

5. I watched Mr. Montague during the course of the camp and determined he was a good player. I advised him that it would be a good idea for him to do a German tour in which 14 players go to Germany and play 10 games against professional "pro-B" teams. The pro-B teams are third division teams, and they are the teams that normally pick up rookies from the United States. My feeling was that if he showed the coaches of these teams how well he could play, they would be willing to take a chance on him, even with his school expulsion.

6. Mr. Montague played very well during the course of the tournament. In one game, he scored the final eight points, leading the team to a narrow two-point victory over the German league team.

7. A pro-A coach (the next level up from pro-B) subsequently reached out to me and asked if Mr. Montague was available, because he was definitely interested in having Mr. Montague on his team.

8. I arranged a Skype call with the coach that evening. After speaking with him at length, it became obvious that he had discovered Mr. Montague's expulsion, and the reason for it. We discussed the fact that Mr. Montague had a pending lawsuit. The coach was concerned about the lawsuit, whether there would be a criminal case against Mr. Montague, and whether his reputation would negatively affect the reputation of the team as a whole. I did my best to reassure him that Mr. Montague would be a dedicated player and that he was an upstanding person as well. The coach never questioned Mr. Montague's ability to play.

9. The coach told me that he would need ten days to evaluate things. When I did not hear anything from him after ten days, I again contacted him, and he told me he needed a few more days. I never heard from him again.

10. As a professional who deals with hundreds of coaches per year, I can confidently say that it is extremely rare to get no response after there have been initial discussions about recruiting a player for a team. When a team contacts an agent about a player and seeks that player out, it is almost always a done deal. In this case, however, Mr. Montague's expulsion from Yale, and the reason for the expulsion, caused the deal to disintegrate.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Dustin Simcox

Dated: December 5, 2016

Before me personally appeared Dustin Simcox, signer of the foregoing instrument, and he acknowledged the same to be his free act and deed, for the purposes contained herein.

OFFICIAL SEAL
ANDREA L ROESEL
Notary Public - State of Illinois
My Commission Expires May 30, 2017

Andrea L. Roesel
Notary Public
My commission expires: 05/30/2017

3