UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JACK MONTAGUE | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:16-CV-00885-AVC |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | |
| Defendants | : | DECEMBER 12, 2016 |

## DEFENDANTS' OBJECTIONS TO THE REQUEST FOR PRODUCTION ATTACHED TO THE SUBPOENA DIRECTED AT ANGELA GLEASON

On December 9, 2016, plaintiff's counsel served a subpoena on defendant Angela Gleason requesting the production of certain documents.[1] The defendants hereby object to the instructions, definitions, and document requests attached to the subpoena as Schedule A.

## GENERAL OBJECTIONS

Defendant incorporates the following General Objections into each and every objection set forth herein in addition to the specific objections stated in response to each specific production request.

1.      Defendant objects to each instruction, definition, and production request to the extent it purports to define words beyond their common meaning and understanding and/or impose any requirement or discovery obligation broader or different than those set forth in the Federal Rules of Civil Procedure and the Local Civil Rules for the District of Connecticut.

---

[1] A copy of the subpoena is attached hereto as Exhibit A.

2.     Defendant objects to each instruction, definition, and production request to the extent it is overly broad, unduly burdensome, vague, ambiguous, duplicative, unlimited as to time or scope, or seeks information or documents more efficiently, cost-effectively, and accurately obtained through alternative discovery mechanisms.

3.     Defendant objects to each instruction, definition, and production request to the extent it seeks information or documents that are at least equally available to Plaintiff, including through public sources or records, or that are already within Plaintiff's possession, custody, or control.

4.     Defendant objects to each instruction, definition, and production request to the extent it calls for information or documents protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege, doctrine, or immunity recognized by statute, the Federal Rules of Civil Procedure, or applicable case law.  The disclosure of any such protected information, unless specifically stated otherwise, is inadvertent and not intended to constitute a waiver of such privilege, doctrine or immunity.

5.     Defendant objects to each instruction, definition, and production request to the extent it calls for disclosure of sensitive, confidential, or private information of its current and former students and/or employees.

## OBJECTIONS TO INSTRUCTIONS

1.     Defendant specifically objects to the Instructions on the grounds that they are overly broad and seek to impose requirements or discovery obligations broader or different than those set forth in the Federal Rules of Civil Procedure and the Local Civil Rules in that

they purport to require Defendant to respond with information in the possession, custody, or control of the defendant's "attorneys," "agents," "companies," "trusts," "representatives," "servants," "consultants," "accountants," "trustees," "advisors," and/or "investigators." A party is defined to mean "the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." D. Conn. L. Civ. R. 26(a), 26(c)(5). Defendant further specifically objects to the Instructions on the grounds that Defendant is not required to produce a document "regardless of the location of such document." A party is not obligated to produce documents not within its possession, custody or control. See, e.g., Fed. R. Civ. P. 26(b).

2.      Defendant specifically objects to the Instructions on the grounds that they are unduly burdensome insofar as Plaintiff has requested that "[a]ll documents should be produced in multi-page tiff format, with corresponding document level text files containing the OCR or extracted text. The filename of both the text and image files should correspond to the Bates number of the document. In addition, a Concordance Delimited File and an Opticon Image Cross Reference File should be provided. The delimiters should be Tilde (~) as the field separator and Caret (^) as the field qualifier." Notwithstanding the foregoing specific objection, Defendant will produce documents in the requested format.

3.      Defendant specifically objects to the Instructions on the grounds that they are unduly burdensome insofar as Plaintiff has requested that, "[f]or documents maintained electronically, the following fields should be included, at a minimum: Bates Begin, Bates End; Bates Begin Attach; Bates End Attach; Custodian/Source; To; From; CC; BCC;

Subject/Title; Author; Date Created; Date Last Modified; Date Sent; Time Sent; Original Filename; Original File Path; Hash Value; Link to Text File; Link to Native File." Notwithstanding the foregoing specific objection, Defendant will include these fields to the extent any particular document contains such fields.

    4.    Defendant specifically objects to the "Rules of Construction" contained in the Instructions on the grounds that they seek to impose requirements or discovery obligations broader or different than those set forth in the Federal Rules of Civil Procedure and the Local Civil Rules. See D. Conn. L. Civ. R. 26(d). Defendant also objects to the "Rules of Construction" to the extent that they would render any otherwise intelligible production request to become vague, ambiguous, overly broad, and/or unduly burdensome.

    5.    Defendant specifically objects to the "Rules of Construction" contained in the Instructions on the grounds that the time period of "March 1, 2011, through the date of your response" is overly broad, unduly burdensome, and falls outside the scope of permissible discovery contained in Rule 26(b). The Complaint alleges that the first disciplinary action involving Plaintiff commenced in the fall of 2013 and that Plaintiff was dismissed from Yale on February 10, 2016. In addition, the parties have agreed to limit the search of Defendant's documents to the time period from October 1, 2014 through September 30, 2016.

    6.    Defendant specifically objects to the Instructions on the grounds that they are unduly burdensome and seek to impose requirements or discovery obligations broader or different than those set forth in the Federal Rules of Civil Procedure and the Local Civil Rules in that they seek to require Defendant to produce a log not just of responsive documents

4

withheld on the basis of an applicable privilege, doctrine, or immunity, but also of documents that are "not subject to production." Defendant also objects to the Instructions on the grounds that they purport to require Defendant to produce a privilege log the contents of which are broader or different that the requirements of the Local Civil Rules. See D. Conn. L. Civ. R. 26(e). Defendant will produce a privilege log in the form required by the Local Civil Rules.

### OBJECTIONS TO DEFINITIONS

1.     Defendant specifically objects to Definition No. 1 on the grounds that it seeks to define the terms "document" or "documents" more broadly or differently than the definitions set forth in the Local Civil Rules. See D. Conn. L. Civ. R. 26(a) and (c)(2).

2.     Defendant specifically objects to Definition No. 2 on the grounds that it is vague, ambiguous, overly broad and unduly burdensome insofar as it seeks to define the term "personal emails" to mean "all email communications sent or received through an account not affiliated with Yale University." Definition No. 2 is not tied to an account or accounts maintained by Defendant, but rather by its plain language applies to all email accounts not affiliated with Yale.

3.     Defendant specifically objects to Definition No. 3 on the grounds that it seeks to define the terms "you," "your," "Gleason," or the "Defendant" to mean Ms. Gleason and "any and all employees, agents, representatives or others working on her behalf." A party is defined to mean "the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." D. Conn. L. Civ. R. 26(a), 26(c)(5).

4.      Defendant specifically objects to Definition No. 4 on the grounds that it seeks to define the terms "University" or "Yale" to mean "any and all employees, agents, representatives or others working on its behalf, including, without limitation, members of Yale's administration, members of officially appointed Yale committees, and the Individual Defendants in this action." A party is defined to mean "the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." D. Conn. L. Civ. R. 26(a), 26(c)(5).

5.      Defendant specifically objects to Definition No. 6 on the grounds that it is vague, overly broad, unduly burdensome, and seeks to impose requirements and discovery obligations broader or different than those set forth in the Federal Rules of Civil Procedure and the Local Civil Rules in that it seeks to define the term "Student Handbook" to include "all versions of the Yale Student Handbook in effect during the 2012/2013, 2013/2014, 2014/2015, and 2015/2016 academic years and shall include all Yale policies and procedures, including but not limited to, the Procedures Governing the University Wide Committee on Sexual Misconduct, Yale Sexual Misconduct Policies and Related Definitions, and Office of the Provost Statement on Confidentiality of UWC Proceedings." Definition No. 6 is vague insofar as there is no document known as the Yale Student Handbook. Defendant assumes Plaintiff means the Yale College Undergraduate Regulations, which contain cross references to various other Yale policies. Definition No. 6 is overly broad, unduly burdensome, and outside the scope of permissible discovery insofar as it attempts to include "all Yale policies and procedures," as well as certain specific policies and procedures (which Plaintiff defines

elsewhere) into a document that does not contain those policies and procedures.  As an

employer of approximately 15,000 individuals with 5,500 undergraduates and 7,000 graduate

and professional students, Yale has many policies and procedures, most of which have no

bearing on this action and are therefore outside the scope of permissible discovery.  In addition

to Yale College, which has 75 academic departments, there are 14 professional schools and a

graduate school.  All of these have policies and procedures; and the vast majority has no

bearing on any issue relevant or material to the present case.  Yale has no objection to

producing the procedures governing the University Wide Committee on Sexual Misconduct,

Yale's Sexual Misconduct Policy, and the Office of the Provost Statement on Confidentiality

of UWC Proceedings during the time period when Plaintiff was enrolled as a student at Yale

College.

## OBJECTIONS TO PRODUCTION REQUESTS

1.      All documents and communications (including personal emails and text
messages) concerning or referring to the UWC I Disciplinary Process, including the UWC I
Investigation and the UWC I Fact-Finder's Report.

**OBJECTION:  See General Objections.  Defendant specifically objects to Request No. 1
on the grounds that it is overly broad and unduly burdensome insofar as it seeks "[a]ll
documents and communications" as opposed to specific documents and communications
or specific types of documents and communications.  Defendant further specifically
objects to Request No. 1 on the grounds that it calls for production of documents
protected from disclosure by the attorney-client privilege, the work product doctrine,
and the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g et seq.,
and 34 C.F.R. Part 99.  Defendant further specifically objects to Request No. 1 on the
grounds that disclosure would violate the privacy interests of persons not parties to this
action, and on the grounds that production of counseling records would violate the
patient/therapist privilege of persons not parties to this action.  Defendant further
specifically objects to Request No. 1 on the grounds that it is duplicative of Request No. 1
set forth in Plaintiff's First Request for Production of Documents to Yale University**

dated September 13, 2016.  In light of the foregoing objections, it is anticipated that documents will be withheld from disclosure.


2.     All documents and communications (including personal emails and text messages) concerning Montague's sanction resulting from the UWC I Disciplinary Process, including those documents and communications concerning the Sexual Harassment and Assault Response Education ("SHARE") training Montague was ordered to complete in connection with his UWC I sanction.

**OBJECTION:  See General Objections and Objection to Request No. 1.  Defendant further specifically objects to Request No. 2 on the grounds that it is duplicative of Request No. 2 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**


3.     Any and all communications (including personal emails and text messages) between you and Sally Smith concerning any of the following:

    a.     Montague;
    b.     the UWC I Disciplinary Process;
    c.     the UWC II Disciplinary Process;
    d.     UWC Procedures and/or Sexual Misconduct Policies; and
    e.     Sexual misconduct, including sexual harassment.

**OBJECTION:  See General Objections and Objection to Request No. 1.  Defendant further specifically objects to Request Nos. 3(c)-(e) on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case.  Communications between Defendant and Sally Smith not concerning Plaintiff have no bearing on the issues in this case.  Defendant further specifically objects to Request No. 3 on the grounds that it is duplicative of Request No. 4 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**


4.     All documents and communications (including personal emails and text messages) exchanged between you and any member(s) of the UWC I Hearing Panel concerning the UWC I Disciplinary Process, Sally Smith, the Student Handbook, the UWC Procedures, the Sexual Misconduct Policies, and/or any of the witnesses or evidence presented at the UWC I Hearing.

**OBJECTION:  See General Objections and Objection to Request No. 3.  Defendant further specifically objects to the extent that this request would include documents which relate to any investigation or procedure concerning a student other than Plaintiff, since any such documents would not lead to the discovery of evidence relevant to any party's claims or defenses in this matter, and therefore discovery regarding such matters would not be proportional to the needs of the case.  Defendant further specifically objects to Request No. 4 on the grounds that it is duplicative of Request No. 5 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

     5.     All communications (including personal emails and text messages) between you and Jason Killheffer, Yale University, and/or anyone else concerning Jane Roe.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 5 on the grounds that it is duplicative of Request No. 6 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

     6.     All documents and communications (including personal emails and text messages) concerning or referring to the UWC II Disciplinary Process, including the UWC II Investigation and the UWC II Fact-Finder's Report.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 6 on the grounds that it is duplicative of Request No. 7 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

     7.     Any and all communications (including personal emails and text messages) between you and Jane Roe concerning any of the following:

          a.     Montague;
          b.     the UWC I Disciplinary Process;
          c.     the UWC II Disciplinary Process;
          d.     UWC Procedures and/or Sexual Misconduct Policies; and
          e.     Sexual misconduct.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request Nos. 7(d)-(e) on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case.  Communications between Defendant and Jane Roe not concerning**

Plaintiff have no bearing on the issues in this case.  Defendant further specifically objects to Request No. 7 on the grounds that it is duplicative of Request No. 8 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.


8.      All documents and communications (including personal emails and text messages) concerning Montague.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 8 on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case.  Communications in which Defendant participated, at any time, concerning Plaintiff but not concerning the allegations of the Complaint, have no bearing on the issues in this case.  Defendant further specifically objects to Request No. 8 on the grounds that it is duplicative of Request No. 9 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**


9.      All documents and communications (including personal emails and text messages) exchanged between you and any member(s) of the UWC II Hearing Panel concerning the UWC I Disciplinary Process, Sally Smith, the UWC II Disciplinary Process, Jane Roe, the Student Handbook, the UWC Procedures, the Sexual Misconduct Policies, and/or any of the witnesses or evidence presented at the UWC II Hearing.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 9 on the grounds that it is duplicative of Request No. 11 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**


10.     Any notes of any kind prepared by you concerning Montague, Jane Roe, Sally Smith, the UWC I Disciplinary Process, or the UWC II Disciplinary Process.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 10 on the grounds that it is duplicative of Request No. 12 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

11.     All documents and communications (including personal emails and text messages) concerning the operation, interpretation, or application of and/or training on UWC disciplinary proceedings from July 1, 2011, to the present.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 11 on the grounds that it is duplicative of Request No. 13 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.  Defendant further specifically objects to Request No. 11 on the grounds that the parties have agreed to limit the search of Defendant's documents to the time period from October 1, 2014 through September 30, 2016.**

12.     All communications between you and the United States Department of Education concerning Yale's Title IX compliance and/or incidents of alleged sexual misconduct at Yale.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 12 on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case.  Documents concerning "communications between you and the United States Department of Education concerning Yale's Title IX compliance and/or incidents of alleged sexual misconduct at Yale" have no bearing on the issues in this case. Defendant further specifically objects to Request No. 12 on the grounds that it is duplicative of Request No. 17 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

13.     All communications between you (including personal emails and text messages) and Timothy Pothin relating to the UWC I Disciplinary Process and/or Pothin's role as a fact-finder generally or with respect to the UWC I Disciplinary Process.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 13 on the grounds that it is duplicative of Request No. 25 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

14.     All communications between you (including personal emails and text messages) and Miriam Berkman relating to the UWC II Disciplinary Process, the UWC I Disciplinary Process, and/or Berkman's role as a fact-finder generally or with respect to the UWC II Disciplinary Process.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 14 on the grounds that it is duplicative of Request No. 26 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

15.    All documents and communications (including personal emails and text messages) concerning Yale's September 9, 2013 Sexual Misconduct Scenarios, attached to the Complaint at Exhibit 1.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 15 on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case.  "[D]ocuments and communications . . . concerning Yale's September 9, 2013 Sexual Misconduct Scenarios" have no bearing on the issues in this case. Defendant further specifically objects to Request No. 15 on the grounds that it is duplicative of Request No. 29 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

16.    All documents and communications (including personal emails and text messages) concerning media/press coverage of sexual misconduct at the University or Title IX compliance at the University from March 1, 2011 to the present.

**OBJECTION:  See General Objections and Objection to Request No. 4.  Defendant further specifically objects to Request No. 16 on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case.  "[D]ocuments and communications . . . concerning media/press coverage of sexual misconduct at the University or Title IX compliance at the University from March 1, 2011 to the present" have no bearing on the issues in this case.  Defendant further specifically objects to Request No. 16 on the grounds that it is duplicative of Request No. 31 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.  Defendant further specifically objects to Request No. 16 on the grounds that the parties have agreed to limit the search of Defendant's documents to the time period from October 1, 2014 through September 30, 2016.**

17.    All documents and communications (including personal emails and text messages) created after March 1, 2011, concerning the issue of sexual misconduct and allegations of sexual misconduct at Yale, or Yale's compliance with Title IX, that were directed to any of the following:

a.     Anyone performing Title IX responsibilities at Yale;

b.     Anyone with responsibilities under Yale's student disciplinary process;

c.     Anyone acting as a sexual assault counselor;

d.     Any member of the University Wide Committee on Sexual Misconduct;

e.     United States Department of Education, the Office of Civil Rights, or any other federal agency, department or authority;

f.     Any of the Individual Defendants;

g.     Any internal or external public relations professional or public relations firm;

h.     Anyone employed in the Dean of Students Office; or

i.     Student or alumni groups which advocate on issues related to sexual misconduct, including Students Against Sexual Violence at Yale ("SASVY").

**OBJECTION: See General Objections and Objection to Request No. 4. Defendant further specifically objects to Request No. 17 on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case. "[D]ocuments or communications . . . created after March 1, 2011, concerning the issue of sexual misconduct and allegations of sexual misconduct at Yale, or Yale's compliance with Title IX," to whomever directed and other than the Yale policies Plaintiff alleges to have been violated, have no bearing on the issues in this case. Defendant further specifically objects to Request No. 17 on the grounds that it is duplicative of Request No. 32 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016. Defendant further specifically objects to Request No. 17 on the grounds that the parties have agreed to limit the search of Defendant's documents to the time period from October 1, 2014 through September 30, 2016.**

18.     All documents and communications (including personal emails and text messages) concerning the September 2015 survey conducted by the Association of American Universities ("AAU") concerning the issue of sexual assault on college campuses.

**OBJECTION: See General Objections and Objection to Request No. 4. Defendant further specifically objects to Request No. 18 on the grounds that the requested documents are not relevant to any party's claims or defenses and not proportional to the needs of the case. "[D]ocuments and communications . . . concerning the September 2015 survey conducted by the Association of American Universities ("AAU") concerning the issue of sexual assault on college campuses" have no bearing on the issues in this case. Defendant further specifically objects to Request No. 18 on the grounds that it is**

**duplicative of Request No. 34 set forth in Plaintiff's First Request for Production of Documents to Yale University dated September 13, 2016.**

THE DEFENDANTS

BY:   /s/ Patrick M. Noonan
           Patrick M. Noonan (#ct00189
           Donahue, Durham & Noonan, P.C.
           741 Boston Post Road
           Guilford, CT 06437
           (203) 458-9168

## CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/
Patrick M. Noonan

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Connecticut

| | | |
|---|---|---|
| Jack Montague | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   3:16-cv-00885-AVC |
| Yale University, Angela Gleason, and Jason Killheffer | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                          Angela Gleason

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:See Schedule A attached.

| Place: Jacobs & Dow, LLC<br>350 Orange Street<br>New Haven, CT 06511 | Date and Time:<br>12/19/2016 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/09/2016

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Jack Montague
                                                                  , who issues or requests this subpoena, are:

Hillary Lehmann, Todd & Weld, LLP, One Federal Street, Boston, MA 02110; (617) 720-2626

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:16-cv-00885-AVC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____      _____
                                                                        *Server's signature*

                                                     _____
                                                                      *Printed name and title*

                                                     _____
                                                                       *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS AND DEFINITIONS

### Instructions

You are requested to state separately for each of the following numbered requests for production which documents will be produced for inspection and copying.

The following instructions and definitions apply to each document request and are incorporated by reference into each request. The document requests must be read in light of these instructions and definitions, and your answers must be responsive to the requests as so defined.

You shall produce all documents within your custody, possession or control, including documents in the possession of your attorneys, agents, employees, companies, trusts, representatives, servants, consultants, accountants, partners, trustees, advisors or investigators, regardless of the location of such document.

All documents should be produced in multi-page tiff format, with corresponding document level text files containing the OCR or extracted text. The filename of both the text and image files should correspond to the Bates number of the document. In addition, a Concordance Delimited File and an Opticon Image Cross Reference File should be provided. The delimiters should be Tilde (~) as the field separator and Caret (^) as the field qualifier.

For documents maintained electronically, the following fields should be included, at a minimum: Bates Begin, Bates End; Bates Begin Attach; Bates End Attach; Custodian/Source; To; From; CC; BCC; Subject/Title; Author; Date Created; Date Last Modified; Date Sent; Time Sent; Original Filename; Original File Path; Hash Value; Link to Text File; Link to Native File.

For any electronically stored comment that cannot be interpreted in TIFF format (including, but not limited to, spreadsheets, presentations, databases, logs, video and audio files), you should produce a Bates numbered TIFF placeholder and a native version of that file, with the native version named by its Bates numbers.

If you object to any document request, you shall so state, including your basis for the objection, in answer to the specific question you found objectionable. If only part of any document request is objectionable, you will answer the document request as fully as possible in addition to stating the objection, and its basis, to any remaining part.

Rules of Construction:

a.  The singular shall include the plural and the plural shall include the singular;

b.  A masculine, feminine, or neutral pronoun shall be construed to refer to all other gender pronouns;

c.  "And" and "or" shall be construed conjunctively and disjunctively so as to bring within the scope of these document requests any documents that might otherwise be construed to be outside their scope;

d.  "Any" shall be understood to include and encompass one or more and "all";

e.  The present tense shall include the past tense, for example "are" shall include "were"; and

f.  Unless otherwise stated, the relevant time period for these document requests is March 1, 2011, through the date of your response.

With respect to any document responsive to any of these requests that is withheld from production on the grounds that the document or any of its contents is privileged or otherwise not subject to production, Plaintiff requests that you produce within thirty (30) days of service of these document requests a list:

    a.      Identifying each particular document request to which you object and each specific ground upon which such objection is based; and

    b.      Specifying each withheld document or thing or portion thereof as follows:

        (i)      its date;

        (ii)      the general nature of the document or thing (e.g., whether it is a letter, chart, pamphlet, memorandum, etc.);

        (iii)      a summary of the contents or the general subject matter of the document or thing;

        (iv)      the identity of each other document or other thing transmitted with or attached to that allegedly privileged or discovery-immune document or thing;

        (v)      its present location and the identity of its current custodian;

        (vi)      the identity of each person who authored, prepared, or signed the document or thing;

        (vii)      a list identifying each person, including, but not limited to, addressees and designated copy recipients, to whom either the original or a copy of the document or thing has been disclosed, including the date and means of such disclosure;

        (viii)      the nature of the privilege, immunity, or other rule of law relied upon to withhold the information, document, or thing and the facts supporting your asserted reliance; and

        (ix)      any purportedly privileged or discovery-immune information or document that contains matter that is not privileged or immune from discovery must be produced with the purportedly privileged or discovery-immune portion excised.

Qualification of Answers: If your answer is in any way qualified, please state the exact nature and extent of the qualification.

Plaintiff specifically requests that you supplement your responses to these Requests as required under Fed. R. Civ. P. 26(e).

Unavailability of Document:  To the extent that any documents falling within the requests below have been destroyed, lost, or misplaced, please identify those documents by type, author, date, number of pages and the date and manner in which the document was destroyed, lost, or misplaced.

If no documents exist which are responsive to a request, please state that no documents exist.

### Definitions

Plaintiff expressly incorporates herein the provisions of Fed. R. Civ. P. 26(b)(5) and Local Rules 26(b). In addition, the words and phrases set out below shall have the following meanings:

1.    The words "document" or "documents" shall have the same meaning as in Fed. R. Civ. P. 34 and Local Rule 26(b) and shall include all documents, "tangible things," and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34, and includes, without limitation, any written or graphic matter or other tangible thing of every kind or description, however produced or reproduced, whether draft, revision, or final, original or reproduction, including, but not limited to correspondence, letters, memoranda, notes, transcripts, minutes of meetings, intra-office and interoffice communications, reports, reports of consultants, forecasts, estimates, requests, claims, summaries, instructions, descriptions, analyses, inspections, schedules, specifications, statements, recommendations, inventories, studies, certificates, samples, permits, notices, return receipts, contracts, agreements, certifications, approvals, authorizations, records, charts, plans, lists, diagrams, diaries, desk calendar notations, messages, microfilm, microfiche, e-mails, photographs, magnetic disk or tape recordings, teletype messages, films, computer printouts, telegrams, news releases,

4

newspapers, periodicals, books, bulletins, circulars, pamphlets, manuals, brochures, advertisements, directions, affidavits, waivers, accounting worksheets, bills, invoices, vouchers, credit memoranda, financial statements, statements of account, ledger sheets, statistical statements, appraisals, credit files, evidence of indebtedness, checks, promissory notes, receipts, instruments, or material similar to any of the foregoing, however denominated, which are in your possession, custody or control or to which you can obtain access.

2.    The term "personal emails" means all email communications sent or received through an account not affiliated with Yale University.

3.    The term "you", "your", "Gleason", or the "Defendant" means Angela Gleason and any and all employees, agents, representatives, or others working on her behalf.

4.    The term the "University" or "Yale" means Yale University and any and all employees, agents, representatives or others working on its behalf, including without limitation, members of Yale's administration, members of officially appointed Yale committees, and the Individual Defendants in this action.

5.    "Complaint" shall mean the Complaint filed in this matter on June 9, 2016.

6.    "Student Handbook" shall refer to all versions of the Yale Student Handbook in effect during the 2012/2013, 2013/2014, 2014/2015, and 2015/2016 academic years and shall include all Yale policies and procedures, including but not limited to, the Procedures Governing the University Wide Committee on Sexual Misconduct, Yale Sexual Misconduct Policies and Related Definitions, and Office of the Provost Statement on Confidentiality of UWC Proceedings.

7.    "UWC Procedures" shall mean the Procedures Governing the University Wide Committee on Sexual Misconduct.

8.   "Sexual Misconduct Polices" shall mean the Yale Sexual Misconduct Policies and Related Definitions.

9.   "UWC I Complaint" shall mean the complaint filed by a female student against Jack Montague on or about August 25, 2013.

10.   "Sally Smith" shall mean the female student who filed the UWC I Complaint against Jack Montague.

11.   "UWC I Disciplinary Process" shall refer to any and all actions taken by any person or entity under the Student Handbook with regards to the UWC I Complaint against Jack Montague, including, but not limited to, review of the complaint, the investigation, the report of the investigation, the hearing, the deliberations and conclusions of the hearing panel, determination of sanction, and all evidence presented and/or received as part of the investigation, hearing and/or appeal.

12.   "UWC I Investigation" shall mean the investigation conducted in response to the UWC I Complaint.

13.   "UWC I Hearing" shall mean the UWC hearing conducted on October 9, 2013, as part of the UWC I Disciplinary Process.

14.   "UWC I Hearing Panel" shall refer to the panel of individuals that was charged under the UWC Procedures with hearing the evidence presented at the UWC I Hearing and deciding the outcome and sanctions against Montague.

15.   "UWC I Fact-Finder's Report" shall mean the investigative report drafted by Timothy Pothin concerning the UWC I Investigation.

16.   "UWC II Complaint" shall mean the complaint filed by Defendant Jason Killheffer against Jack Montague on or about November 18, 2015.

6

17.    "Jane Roe" shall mean the female student whose interactions with Jack Montague are the subject of the UWC II Complaint.

18.    "UWC II Disciplinary Process" shall refer to any and all actions taken by any person or entity under the Student Handbook with regards to the UWC II Complaint against Jack Montague, including, but not limited to, review of the complaint, the investigation, the report of the investigation, the hearing, the deliberations and conclusions of the hearing panel, determination of sanction, and all evidence presented and/or received as part of the investigation, hearing and/or appeal.

19.    "UWC II Investigation" shall mean the investigation conducted in response to the UWC II Complaint.

20.    "UWC II Hearing" shall mean the UWC Hearing conducted on January 21, 2016, as part of the UWC II Disciplinary Process.

21.    "UWC II Hearing Panel" shall refer to the panel of individuals that was charged under the UWC Procedures with hearing the evidence presented at the UWC II Hearing and deciding the outcome and sanctions against Montague.

22.    "UWC II Fact-Finder's Report" shall mean the investigative report drafted by Miriam Berkman concerning the UWC II Investigation.

23.    "Individual Defendant" shall mean Angela Gleason or Jason Killheffer, and "Individual Defendants" shall mean both of them, collectively.

24.    "Education Record" means those records, files, documents, and other materials which contain information directly related to a student and are maintained by an educational institution, including by a law enforcement unit of the institution, or by a person acting for such agency or institution.

7

25.    References to the singular include the plural and vice versa, references to the past tense include the present tense and vice versa, disjunctive terms or phrases should be read to include the conjunctive and vice versa, references to "each" or "any" shall include "all" and vice versa, and the word "including" should be construed without limitation, so as not to exclude any document within the scope of or responsive to these requests.

## DOCUMENT REQUESTS

1.    All documents and communications (including personal emails and text messages) concerning or referring to the UWC I Disciplinary Process, including the UWC I Investigation and the UWC I Fact-Finder's Report.

2.    All documents and communications (including personal emails and text messages) concerning Montague's sanction resulting from the UWC I Disciplinary Process, including those documents and communications concerning the Sexual Harassment and Assault Response Education ("SHARE") training Montague was ordered to complete in connection with his UWC I sanction.

3.    Any and all communications (including personal emails and text messages) between you and Sally Smith concerning any of the following:

       a.    Montague;

       b.    the UWC I Disciplinary Process;

       c.    the UWC II Disciplinary Process;

       d.    UWC Procedures and/or Sexual Misconduct Policies; and

       e.    Sexual misconduct, including sexual harassment.

4.    All documents and communications (including personal emails and text messages) exchanged between you and any member(s) of the UWC I Hearing Panel concerning

8

the UWC I Disciplinary Process, Sally Smith, the Student Handbook, the UWC Procedures, the

Sexual Misconduct Policies, and/or any of the witnesses or evidence presented at the UWC I

Hearing.

5.      All communications (including personal emails and text messages) between you

and Jason Killheffer, Yale University, and/or anyone else concerning Jane Roe.

6.      All documents and communications (including personal emails and text

messages) concerning or referring to the UWC II Disciplinary Process, including the UWC II

Investigation and the UWC II Fact-Finder's Report.

7.      Any and all communications (including personal emails and text messages)

between you and Jane Roe concerning any of the following:

        a.   Montague;

        b.   the UWC I Disciplinary Process;

        c.   the UWC II Disciplinary Process;

        d.   UWC Procedures and/or Sexual Misconduct Policies; and

        e.   Sexual misconduct.

8.      All documents and communications (including personal emails and text

messages) concerning Montague.

9.      All documents and communications (including personal emails and text

messages) exchanged between you and any member(s) of the UWC II Hearing Panel concerning

the UWC I Disciplinary Process, Sally Smith, the UWC II Disciplinary Process, Jane Roe, the

Student Handbook, the UWC Procedures, the Sexual Misconduct Policies, and/or any of the

witnesses or evidence presented at the UWC II Hearing.

10.     Any notes of any kind prepared by you concerning Montague, Jane Roe, Sally Smith, the UWC I Disciplinary Process, or the UWC II Disciplinary Process.

11.     All documents and communications (including personal emails and text messages) concerning the operation, interpretation, or application of and/or training on UWC disciplinary proceedings from July 1, 2011, to the present.

12.     All communications between you and the United States Department of Education concerning Yale's Title IX compliance and/or incidents of alleged sexual misconduct at Yale.

13.     All communications between you (including personal emails and text messages) and Timothy Pothin relating to the UWC I Disciplinary Process and/or Pothin's role as a fact-finder generally or with respect to the UWC I Disciplinary Process.

14.     All communications between you (including personal emails and text messages) and Miriam Berkman relating to the UWC II Disciplinary Process, the UWC I Disciplinary Process, and/or Berkman's role as a fact-finder generally or with respect to the UWC II Disciplinary Process.

15.     All documents and communications (including personal emails and text messages) concerning Yale's September 9, 2013 Sexual Misconduct Scenarios, attached to the Complaint at Exhibit 1.

16.     All documents and communications (including personal emails and text messages) concerning media/press coverage of sexual misconduct at the University or Title IX compliance at the University from March 1, 2011 to the present.

17.     All documents and communications (including personal emails and text messages) created after March 1, 2011, concerning the issue of sexual misconduct and

allegations of sexual misconduct at Yale, or Yale's compliance with Title IX, that were directed to any of the following:

    a.    Anyone performing Title IX responsibilities at Yale;

    b.    Anyone with responsibilities under Yale's student disciplinary process;

    c.    Anyone acting as a sexual assault counselor at Yale;

    d.    Any member of the University Wide Committee on Sexual Misconduct;

    e.    United States Department of Education, the Office of Civil Rights, or any other federal agency, department or authority;

    f.    Jason Killheffer;

    g.    Any internal or external public relations professional or public relations firm;

    h.    Anyone employed in the Yale Dean of Students Office; or

    i.    Student or alumni groups which advocate on issues related to sexual misconduct, including Students Against Sexual Violence at Yale ("SASVY").

18.    All documents and communications (including personal emails and text messages) concerning the September 2015 survey conducted by the Association of American Universities ("AAU") concerning the issue of sexual assault on college campuses.