# EXHIBIT Q

**Todd & Weld** LLP

| Contact: | Karen Schwartzman |
|---|---|
| | Polaris Public Relations |
| | 617-437-9990 |
| | KSchwartzman@PolarisPR.net |

### STATEMENT RE: *JACK MONTAGUE V. YALE UNIVERSITY, ET AL.*

**Boston, MA – June 9, 2016 –**

On May 23, 2016, Jack Montague would have graduated from Yale University with a degree in American Studies and started his post-college life with excitement, promise, and vigor. Instead, he has today filed a civil suit against Yale in the United States District Court for the District of Connecticut for wrongfully expelling him just three months shy of his graduation date for alleged "sexual misconduct."

Yale expelled Mr. Montague on February 10, 2016, after a panel of the University Wide Committee on Sexual Misconduct ("UWC") found that he had engaged in nonconsensual sex with a female undergraduate, "Jane Roe" ("Roe"), in the fall of 2014. As alleged in the complaint, that finding is itself troubling; not only did Roe – with whom Montague had had three previous sexual encounters, at least one of which involved consensual sexual intercourse – voluntarily lead Mr. Montague to his bedroom, voluntarily take off all of her clothing, and voluntarily engage in passionate foreplay with him, she explicitly told Yale that she did not think Mr. Montague heard her when she purportedly said "no" to the ensuing sexual intercourse. Yet Mr. Montague – who reasonably believed he had consent to engage in sexual activity, and who never heard Roe revoke her consent – was promptly found responsible and deemed a sexual assailant.

Equally troubling, says the complaint, is the genesis of the UWC proceedings against Mr. Montague. Roe did not want to file a formal complaint against him. She did not want to punish him. She simply wanted someone from Yale's Title IX office to talk to him about the incident and provide training for him so he would not repeat his behavior in the future. But when Yale learned Mr. Montague was the alleged perpetrator, it saw an opportunity: in September of 2015, a survey released by the Association of American Universities ("AAU") showed that the rates of undergraduate sexual assaults at Yale were the third-highest among the 27 schools surveyed, and Yale had long faced criticism from students and alumni for being soft on male sexual assailants. Mr. Montague – captain of Yale's basketball team and one of the most prominent male students on campus – was Yale's ticket to restoring its tarnished image.

Not wanting to ruin Yale's opportunity for public redemption, Title IX Coordinator Angela Gleason, whom Roe sought out for support and advice, falsely informed Roe that she



could not remain anonymous or keep the process informal (the two things Roe explicitly requested). The reason Gleason gave to Roe was also patently false: Montague, said Gleason, had already been the subject of a complaint of sexual assault and had already received related training, so repeat training was not an option for him.

But, as set forth in the complaint, there was no truth to any of this. Montague had never before been accused of sexual assault, nor had he received training on issues related to sexual relationships or consent. He had, at the end of his freshman year, been accused by a graduating female senior of immature and offensive conduct – he took a rolled up paper plate and shoved it down the front of the student's shirt, and for that conduct he received training in "gender sensitivity." Even revealing that Montague was the subject of a former complaint was a blatant violation of Yale's confidentiality policy, but Gleason took it a step further by grossly distorting that information in order to ensure Roe would pursue the matter in a way that would allow Yale to take advantage of the situation for its own benefit.

Roe – now convinced Montague was a repeat offender and convinced she needed to protect other women from him – was manipulated and misled by Yale into participating in a formal complaint process against him. What's more, Roe herself did not even file the complaint – Yale's Senior Deputy Title IX Coordinator, Jason Killheffer, filed it himself to make sure the process stayed on track, and he did so despite Yale's clear policy that Title IX Coordinators only file complaints in "unusual circumstances . . . such as those involving risks to the safety of individuals and/or the community." No such circumstances existed here, of course, but Yale could not afford to let the opportunity to make an example of Mr. Montague slip through the cracks, so it forged ahead.

Mr. Montague is only the fourth male student in five years to be expelled by Yale for nonconsensual sexual conduct. The complaint details instances in which fourteen other men found responsible for the same conduct received less severe sanctions: six were reprimanded, four were placed on probation, and four were suspended. But expelling Mr. Montague – as rare a sanction as that was for Yale – served the desired end: dramatic proof that the University is able and willing to severely punish male students, even the captain of Yale's basketball team, when they "victimize" female students on Yale's campus.

The result of Yale's wrongful conduct has been devastating for Mr. Montague. He was deprived of the Ivy League degree he came so close to obtaining. He was deprived of the ability to join the Yale men's basketball team in the NCAA playoffs (a feat the team had achieved, with Mr. Montague's skill and leadership, for the first time in 54 years), and he was unfairly branded a sexual assailant, a label he may never be able to shed. The lawsuit may never make Mr. Montague whole, but it may repair some of the damage done by Yale and its employees to Mr. Montague's reputation and to his promising future.