# EXHIBIT AA

**Transcript of Deposition of Jason Killheffer dated January 10, 2017 at 107:25 to 112:18.**

**(See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction dated January 11, 2017 (Doc. No. 53) at 34 n.15.)**

Page 1

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT
CIVIL ACTION No: 3:16 cv-00885-AVC
----------------------------------x
JACK MONTAGUE,                    :
  Plaintiff,                      :
    -v-                           :
YALE UNIVERSITY, ANGELA GLEASON,  :
And JASON KILLHEFFER,             :
  Defendants.                     :
----------------------------------x

Depositon of JASON KILLHEFFER, taken pursuant to Notice, held at the Law Offices of Jacobs & Dow, LLC, 350 Orange Street, New Haven, Connecticut, before James A. Martone, LSR #248, and Notary Public, in and for the State of Connecticut, on January 10, 2017, at 10:05 a.m.

Page 2

1  APPEARANCES:
2
3     For the Plaintiff:
4     TODD & WELD, LLP
5     One Federal Street-27th Floor
6     Boston, MA  01880
7     BY: MAX D. STERN, ESQ.
8     AND: HILLARY A. LEHMANN, ESQ.
9     mstern@toddweld.com
10
11    For the Defendants:
12    DONAHUE, DURHAM & NOONAN, PC
13    741 Boston Post Road
14    Guilford, Connecticut  06347
15    BY: PATRICK NOONAN, ESQ.
16
17
18
19
20
21
22
23
24
25

Page 3

1              STIPULATIONS
2
3     IT IS HEREBY STIPULATED AND
4  AGREED by and between counsel for the
5  respective parties hereto that all
6  technicalities as to proof of the official
7  character before whom the deposition is to
8  be taken are waived.
9
10    IT IS FURTHER STIPULATED AND
11 AGREED by and between counsel for the
12 respective parties hereto that the
13 deposition may be signed before any Notary Public.
14
15    IT IS FURTHER STIPULATED AND
16 AGREED by and between counsel for the
17 respective parties hereto that all
18 objections, except as to form, are reserved
19 to the time of trial.
20
21
22              * * * * * *
23
24
25

Page 4

1              WITNESS INDEX
2
3                                             PAGE
4  Direct Examination by Mr. Stern              5
5
6              EXHIBIT INDEX
7  PLAINTIFF    DESCRIPTION                   PAGE
8   20  Confidential Yale University Title IX
9       Incident Summary Form                  22
10  21  August 19, 2013 letter                 76
11  22  Sexual Misconduct Scenerios document   80
12  23  E-mail chain                          159
13  24  3/12/16 E-mail                        162
14  25  February 23, 2016 E-mail exchange     163
15  26  February 23, 2016 E-mail              166
16  27  February 24, 2016 E-mail              167
17  28  3/17/2016 E-mail chain                168
18  29  June 9, 2016 e-mail                   173
19  30  Document entitled Introduction to the
20      WESTAT-Yale report                    175
21  31  Document entitled Results of AAU Survey
22      On Sexual Assault and Misconduct      175
23  32  Document entitled confidential draft  184
24
25

Page 105

1  Q. Now this was despite the fact that as
2  you've previously testified, Angie already knew that
3  Jack had a prior UWC finding against him, right?
4  A. Okay. I believe so. I believe that's what
5  I said. I did, I spoke with Angie the first time we
6  talked.
7  Q. So it's fair to say that you had not told
8  Angie at least as of this point, that an informal
9  resolution would be inappropriate for Jack Montague?
10  A. Would you read that back to me please.
11         (Question read)
12  A. I don't think I can draw that conclusion
13  from this. I know you're going date by date, step by
14  step, but the conversations that Angie and I have and
15  that conversation that she had with the complainant,
16  are not necessarily sort of in a linear fashion.
17  Meaning in this case, Angie, clearly Angie and ▓
18  discussed her speaking to Jack Montague, and at the
19  time that's what ▓ was comfortable with.
20         There may have been conversations
21  also going simultaneously between me and Angie, and as
22  I mentioned to you, I suggested to Angie that we have
23  a meeting with Stephanie Spangler, to discuss the
24  allegations. So if you're asking me to pinpoint
25  exactly at which point I told Angie that may not be

Page 106

1  appropriate, I can answer that question.
2  Q. Well, let's look a little further. Let's
3  go, continue with Exhibit 10. And look at the top of
4  Exhibit 10. That's a -- if you look where it says on
5  Wednesday, October 28th.
6  A. Uh-huh.
7  Q. Angie Gleason wrote "Hi ▓ : I wanted to
8  let you know that I haven't contacted Jack yet. As I
9  have a very busy week and I don't believe we will be
10  able to schedule a meeting until next week. With that
11  in mind, I'll contact him on Monday."
12  A. I see that.
13  Q. So this was on Wednesday, October 28th.
14  A. Okay.
15  Q. All right. And will you take my
16  representation that Monday was going to be November
17  the 2nd?
18  A. Are you asking me to verify that?
19  Q. I'm just asking will you accept that?
20         MR. NOONAN: How can he accept that?
21  Q. Then I'll show you a calendar.
22         MR. NOONAN: I'm not suggesting you
23  aren't correct, but he can't affirm something if he
24  doesn't know.
25  Q. I'm going to show you a calendar, showing

Page 107

1  the year 2015.
2  A. Okay.
3  Q. And if you'll look down, you can look at
4  the 28th, you agree with me the 28th --
5  A. The 28th is a Wednesday.
6  Q. A Wednesday?
7  A. And Monday is November 2nd, the next
8  Monday, I see that.
9  Q. All right. So as far as this Exhibit 10
10  states, Angie is planning to contact Jack Montague on
11  Monday, November 2nd?
12  A. That's what she says.
13  Q. All right. Now turn to Exhibit 1.
14  A. I don't have that.
15  Q. I think you had that earlier.
16  A. Okay.
17  Q. Now this is one of Angie's handwritten
18  notes.
19  A. Okay.
20  Q. And it indicates a conversation with Jason.
21  A. Which page am I on?
22  Q. It's page -- the fourth page, Bates number
23  844, look at the bottom right. Yale 844.
24  A. I see. Okay.
25  Q. Conversation with Jason, November 2, 2015?

Page 108

1  A. I see that.
2  Q. And in the unredacted portion, it says
3  "Wait to contact JM until after meeting of JK, SS,
4  SS."
5  A. Okay.
6  Q. Now you told us that you told Angie you
7  wanted to have a meeting with Stephanie Spangler?
8  A. Right.
9  Q. And Susan Sawyer?
10  A. Susan Sawyer was also at that meeting,
11  that's correct.
12  Q. So would you agree that this is when you
13  told Angie about this meeting?
14  A. I can agree that her notes say
15  November 2nd.
16  Q. All right. Is November 2nd consistent with
17  your memory of when this meeting was held?
18  A. The meeting with Susan Sawyer and Stephanie
19  Spangler?
20  Q. Yes.
21         MR. NOONAN: I think he said
22  previously he has no knowledge.
23  A. I don't know the dates. Yeah.
24  Q. I'm sorry, take that back. Did you tell
25  Angie that she should hold off on contacting Jack

Page 109

1  Montague until you could have a meeting with you,
2  Stephanie Spangler and Susan Sawyer?
3       A. We discussed that so that we could discuss
4  what the appropriate action would be in a case such as
5  this.
6       Q. All right. So prior --
7       A. Prior to what, this date?
8       Q. Prior to -- at some point you had a meeting
9  with these various people, correct?
10      A. Absolutely.
11      Q. And prior to that time, you told Angie that
12 you wanted to schedule that meeting; is that correct?
13      A. Yes, I did.
14      Q. And you told Angie why you wanted to
15 schedule that meeting?
16      A. I told Angie we should review the
17 allegations with Stephanie and with Susan.
18      Q. All right. And you knew at that time that
19 Angie was proceeding along a path of effectuating an
20 informal resolution, correct?
21      A. I knew that she was in conversation with
22 ███████, but not minute by minute, where
23 exactly they were in that process.
24      Q. Well, you knew that they were planning
25 to --

Page 110

1       A. Let me -- an informal resolution does not
2  forego a formal complaint. So she could continue to
3  work with ███, and talk with ███ about what her
4  wishes are, which could change, okay. Knowing that we
5  were also going to have a meeting with Stephanie and
6  Susan.
7       Q. All right.
8       A. So if you're trying to draw -- I'm not sure
9  what conclusion you're trying to draw from that.
10      Q. Did you tell Angie hold off on meeting with
11 Jack Montague until after we can have this meeting?
12      A. We discussed her intention to contact Jack
13 Montague. I believe at that point we must have
14 already had a meeting on the books, on our calendar
15 with Stephanie and Susan.
16           In fact, it looks like it's two days
17 later, on the 4th. According to this exhibit. So at
18 that point, if she's talking on Monday, I say we're
19 meeting on Wednesday, before you do anything, why
20 don't we talk about what the right approach to this
21 is.
22      Q. All right.
23      A. So that's it.
24      Q. So now did this meeting take place?
25      A. The meeting with Stephanie, Susan and

Page 111

1  Angie?
2       Q. Yes.
3       A. Yes, it did.
4       Q. Okay. And as a result of that meeting, was
5  some decision made?
6       A. At that meeting, we reviewed the
7  allegations and the information that Angie had
8  gathered. We reviewed the fact that Angie had
9  discussed with ███ that ███ was interested in
10 pursuing an informal resolution.
11           We reviewed the fact that the
12 seriousness of the allegations in this matter and the
13 fact that Jack Montague had previously been through
14 the UWC complaint process, had previously been found
15 to have violated our sexual misconduct policies, and
16 most importantly, the seriousness of these allegations
17 made a formal complaint a more appropriate solution
18 than an informal complaint. One of the reasons we
19 look as to why someone -- whether someone has been
20 through our process before is because should they go
21 through that process and be found in violation and
22 subsequent for that process, an allegation that they
23 violated it again, indicates that they may not have
24 learned from that earlier process, okay. And so
25 that's an indicator.

Page 112

1           So the nature of the allegations and
2  the fact that he had previously been through this
3  policy, or this process, and had previously been found
4  to have violated our policy.
5       Q. All right.
6       A. So we discussed, Angie -- going back to
7  ███, discussed going back to ███ and discussing
8  with ███ whether she would be willing to participate
9  in a formal complaint. This gets back to what we
10 talked about earlier which is would she be a witness
11 and speak to a fact finder in a formal complaint.
12      Q. What did you understand that Angie --
13 strike that. You say you discussed the seriousness of
14 the allegation, the previous finding?
15      A. The fact that he had had a previous finding
16 of a violation.
17      Q. Right. Anything else?
18      A. Those are the two primary factors.
19      Q. All right. What about the fact that you
20 had been told by Angie that she had been told by ███
21 ███ that ███████ had heard about, that there had
22 been another complaint of rape?
23      A. The other complaint, that was knowledge,
24 but it wasn't -- we didn't have any details on it and
25 it wasn't anything, as far as we understood Angie did

```
                                        Page 193                                              Page 195
 1      A.  So yes, so now it lives on in infamy on     1                    CERTIFICATE
 2   line.                                              2      I hereby certify that I am a Notary Public in
 3          MR. STERN: That's it.                       3   and for the State of Connecticut, duly commissioned
 4          MR. NOONAN: Thank you.                      4   and qualified to administer oaths.
 5                                                      5      I further certify that the deponent named in the
 6                                                      6   foregoing deposition was by me duly sworn and
 7          (Time noted: 4:21 p.m.)                     7   thereupon testified as appears in the foregoing
 8                                                      8   deposition; that said deposition was taken by me
 9                                                      9   stenographically in the presence of counsel and
10                                                     10   reduced to print under my direction, and the foregoing
11                                                     11   is a true and accurate transcript of the testimony.
12                                                     12      I further certify that I am neither of counsel,
13                                                     13   nor related to either of the parties to said suit, nor
14                                                     14   am I interested in the outcome of said cause.
15                                                     15      Witness my hand and seal as Notary Public this
16                                                     16   14th day of January, 2017.
17                                                     17
18                                                     18   _____
19                                                     19         NOTARY PUBLIC
20                                                          JAMES A. MARTONE, L.S.R. 248
                                                       20
21                                                          My Commission Expires:
22                                                     21      MARCH/2018
23                                                     22
24                                                     23
25                                                     24
                                                       25
```

```
                                        Page 194
 1      I,_____,have read the foregoing
 2   transcript of the testimony given at my deposition
 3   on,_____, and it is true and accurate to
 4   the best of my knowledge and belief as originally
 5   transcribed and/or with the changes as noted on the
 6   attached errata sheet.
 7
 8
 9   _____
10   JASON KILLHEFFER
11
12        SUBSCRIBED AND SWORN TO BEFORE ME, the
13   undersigned authority, on this
14   the_____ day of_____, 2016.
15
16
17   _____
18   NOTARY PUBLIC
19
20   My commission expires:
21
22
23
24
25
```