# Exhibit 18

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 1

UNITED STATES DISTRICT COURT FOR THE

     DISTRICT OF CONNECTICUT

CIVIL ACTION No: 3:16 cv-00885-AVC

---------------------------------x

JACK MONTAGUE,                        :

    Plaintiff,                        :

        -v-                      :

YALE UNIVERSITY, ANGELA GLEASON,  :

And JASON KILLHEFFER,                 :

    Defendants.                       :

---------------------------------x


       Depositon of ANGELA GLEASON, taken

pursuant to Notice, held at the Law Offices of Jacobs

& Dow, LLC, 350 Orange Street, New Haven, Connecticut,

before James A. Martone, LSR #248, and Notary Public,

in and for the State of Connecticut, on December 13,

2016, at 10:30 a.m.

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 2

```
 1   A P P E A R A N C E S:

 2

 3        For the Plaintiff:

 4   TODD & WELD, LLP

 5   One Federal Street-27th Floor

 6   Boston, MA  01880

 7   BY:  ALEXANDRA H. DEAL, ESQ.

 8   adeal@toddweld.com

 9

10        For the Defendants:

11   DONAHUE, DURHAM & NOONAN, PC

12   741 Boston Post Road

13   Guilford, Connecticut  06347

14   BY:  PATRICK NOONAN, ESQ.

15

16   ALSO PRESENT:

17   Harold Rose, Esq.

18   General Counsel, Yale University

19

20

21

22

23

24

25
```

Electronically signed by JAMES MARTONE (601-171-250-7767)          056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                        December 13, 2016

Page 3

```
 1              S T I P U L A T I O N S

 2

 3      IT IS HEREBY STIPULATED AND

 4   AGREED by and between counsel for the

 5   respective parties hereto that all

 6   technicalities as to proof of the official

 7   character before whom the deposition is to

 8   be taken are waived.

 9

10      IT IS FURTHER STIPULATED AND

11   AGREED by and between counsel for the

12   respective parties hereto that the

13   deposition may be signed before any Notary Public.

14

15      IT IS FURTHER STIPULATED AND

16   AGREED by and between counsel for the

17   respective parties hereto that all

18   objections, except as to form, are reserved

19   to the time of trial.

20

21

22                      *   *   *   *   *   *

23

24

25
```

Sanders, Gale & Russell
(203) 624-4157

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

```
                                                          Page 4

 1                      WITNESS INDEX

 2

 3

 4                                                 PAGE

 5   Direct Examination by Ms. Deal                  5

 6

 7                      EXHIBIT INDEX

 8   PLAINTIFF        DESCRIPTION                   PAGE

 9   1  Notebook                                     7

10   2  Sexual Misconduct Response                  26

11   3  Document entitled UWC Procedures            30

12   4  Statement of Confidentiality of UWC Proceedings 35

13   5  Report of Complaints of Sexual Misconduct   39

14   6  September 23, 2015 e-mail exchange          80

15   7  October 16, 2015 e-mail exchange            90

16   8  Incident Summary Form                       95

17   9  October 16, 2015 e-mail exchange           103

18   10  October 28, 2015 e-mail exchange          109

19   11  October 29, 2015 e-mail                   112

20   12  November 4, 2015 e-mail exchange          132

21   13  Fact Finder's report                      135

22   14  November 5, 2015 e-mail exchange          140

23   15  November 9 2015 e-mail exchange           159

24   16  November 10, 2015 e-mail chain            160

25   17  January 21, 2016 opening statement        175
```

Sanders, Gale & Russell
(203) 624-4157

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

---

Page 5

1                      -EXHIBITS CONTINUED-

2    18  November 18, 2015 letters              177

3    19  November 20, 2015 e-mail               179

4    _____

5    ANGELA GLEASON

6     called as a witness, having been first duly

7     sworn by James A. Martone, a Notary Public

8     in and for the State of Connecticut:

9              MR. NOONAN:  I should probably put on

10   the record our agreement that we're going to be using

11   real names of students whose names we ought not to

12   make public.  So we've agreed that the transcript will

13   be limited to parties and witnesses, and if the

14   transcript needs to be used elsewhere, for example, in

15   a court filing, we will redact the names.

16             MS. DEAL:  Yes.

17   DIRECT EXAMINATION BY MS. DEAL:

18        Q.   Good morning.

19        A.   Good morning.

20        Q.   Could you state your name please?

21        A.   Angela Gleason.

22        Q.   Ms. Gleason, have you ever been deposed

23   before?  Have you ever been to a deposition?

24        A.   I don't know what means.  Oh, yes I have.

25        Q.   Let me go over some of the ground rules,

---

Sanders, Gale & Russell
(203) 624-4157

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 34

 1        Q.    And what about for UWC proceedings, what si

 2    your understanding of the confidentiality expectations

 3    in that context?

 4        A.    My understanding is that the

 5    confidentiality expectations are much stricter, that

 6    there could be sanctions if confidentiality

 7    expectations are not met.

 8        Q.    So if you find yourself in a position where

 9    you have information about a UWC proceeding, what is

10    your understanding of whether or how you might be able

11    to share that information?

12        A.    I think it would depend on what the

13    information is.

14        Q.    Okay.  Let's just say you had information

15    about the substance of a UWC proceeding.  What is your

16    understanding about whether you could communicate the

17    substance of a UWC proceeding to anybody else?

18        A.    I could not.  Can I add to that?

19        Q.    Of course.

20        A.    My understanding is that I could discuss

21    that with my colleagues.

22        Q.    Okay.

23        A.    But not with a party to a complaint.  To my

24    colleagues in Title 9, excuse me.

25        Q.    And what about the simple fact of the UWC

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                                December 13, 2016

Page 35

1    proceeding itself?  If you understood that a person

2    had been involved in a UWC proceeding, what is your

3    understanding about communicating that fact to another

4    person?

5         A.   Any other person or --

6         Q.   Let's start with to a student.

7         A.   No.

8         Q.   So your understanding is that you cannot

9    communicate with a student the fact that another

10   student has been the subject of a UWC proceeding?

11        A.   Correct.

12        Q.   And what about if a person is sanctioned as

13   a result of a UWC proceeding, what is your

14   understanding about whether you can communicate the

15   fact that that person was sanctioned to another

16   student?

17        A.   I couldn't give that information to another

18   student.

19        Q.   And you have that understanding based on

20   the written UWC procedures on confidentiality?

21        A.   Yes.

22        Q.   Okay.  And do you also have that

23   understanding based on training you may have received

24   in confidentiality?

25        A.   Yes.

Electronically signed by JAMES MARTONE (601-171-250-7767)                           056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 102

1    remembering at least the substance of what she said to
2    you?
3        A.   It helps me remember the emotion.
4        Q.   Okay.  Did she in the course of that
5    conversation provide any details to you about any
6    alleged interaction between her and Jack Montague?
7        A.   Not in any details, no.
8        Q.   Did she during that conversation either
9    confirm or deny that she had had an unwanted sexual
10   experience with Mr. Montague?
11       A.   Not directly.
12       Q.   And to your knowledge, did she ever report
13   any sort of unwanted sexual experience between her and
14   Jack Montague to anybody?
15       A.   Not to my knowledge.
16       Q.   Okay.  So you were never able to confirm
17   whether or not the allegation concerning Jane Doe was
18   true?
19       A.   That was the sum total of my contact with
20   Jane Doe.
21       Q.   So that's a no, you were not able to
22   confirm that?
23       A.   Correct.
24       Q.   Okay.  Do you recall when you and Jane
25   first had contact with one another?  I believe you

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 110

1   moment to read it if you want, can you let me know if

2   this helps you remember what it is that you were

3   planning to talk to Jack Montague about?

4        A.   Yes.

5        Q.   Okay, and what was it that you were

6   planning to talk to Jack Montague about?

7        A.   That his behavior hadn't met our

8   expectations.

9        Q.   And what do you mean by that?

10        A.   I believe I meant that the behavior that

11   was reported to me, that concerned -- you know, it was

12   an alleged report of his behavior, didn't meet our

13   community expectations in terms of consent.

14        Q.   Okay.  And you also say here on the second

15   page in the first paragraph "I would recommend

16   sensitivity training sessions with John," and I'm

17   going to butcher the name, so I'll let you say it.

18        A.   Criscuolo.

19        Q.   "At Share."  Is that another thing that you

20   planned to talk to Jack about?

21        A.   I believe so, yes.

22        Q.   Okay.  And then you also say "Your name and

23   any potentially identifying information would not be

24   mentioned," right?

25        A.   Correct, if she agreed to what I suggested.

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 111

1        Q.   Okay.  So is it fair to say that this

2   reflects the informal process that she was requesting,

3   which is that you would meet with Jack, you would talk

4   to him about how his behavior hadn't met the

5   community's expectations, you would recommend that he

6   do some sensitivity training sessions, but you would

7   not identify Jane  by name?

8        A.   Correct.

9        Q.   Okay.  And that was your plan as of October

10  26th of 2015?

11       A.   That was what I was suggesting to her.

12       Q.   Okay.  And she was on board with that plan?

13       A.   Yes.

14       Q.   Okay.  And at this time did you consider

15  that to be an appropriate course of action?

16       A.   That's what she had requested.  And I could

17  do that.

18       Q.   Okay.  And did you contact Jack and talk to

19  him about his behavior not meeting the expectations of

20  the community?

21       A.   No, I didn't.

22       Q.   Okay.  And on October 28th, in fact you

23  tell her that you had a busy week and you haven't had

24  time to do that, is that right?

25       A.   Correct.

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                     December 13, 2016

Page 124

```
 1        A.   I don't know if there was a plan.
 2        Q.   Well, let's go back to Exhibit 11 I think
 3   it is.  I'm sorry, 10.  As of October 28th, you were
 4   planning to contact Jack, is that right?
 5        A.   Correct.
 6        Q.   And you were planning to contact Jack for
 7   the purpose of discussing with him the fact that his
 8   behavior hadn't met the community's expectations; is
 9   that right?
10        A.   Correct.
11        Q.   Okay.  Did that plan change at some point?
12        A.   The plan to contact him as I described to
13   Jane
14        Q.   That's right.
15        A.   Yes.
16        Q.   Okay.  When did that plan change?
17        A.   I believe it changed in the meeting that is
18   redacted.
19        Q.   Okay.  Why did it change?
20        A.   I believe it was because of a new
21   development.
22        Q.   Whaat was the new development?
23        A.   That Jack Montague had already been through
24   a UWC case.
25        Q.   Okay.  And what relevance did that have to
```

Electronically signed by JAMES MARTONE (601-171-250-7767)                                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                          December 13, 2016

Page 125

1   your plan?

2        A.   To this plan here?

3        Q.   Yes.

4        A.   I believe a decision in the case

5   recommended sensitivity training, or I believe

6   mandated sensitivity training, and Jane  had requested

7   that Jack receive sensitivity training.  And he had

8   already received sensitivity training.

9        Q.   Okay.  So why did that change the course of

10  action?

11       A.   I don't recalling the specifics of the

12  discussion.  But in concert with, I believe it was

13  also discussed that there had been not only the

14  mandate of the sensitivity training, but a period of

15  probation and the fact that there had been a finding

16  in a previous UWC case, that it wouldn't be the plan

17  going forward to recommend sensitivity training again,

18  as a voluntary course of action, which is what I would

19  have recommended in the case that Jane  requested.

20       Q.   Okay.  Does Yale have a policy that

21  prohibits a person from twice receiving sensitivity

22  training?

23       A.   I don't know.

24       Q.   You're not aware of any policy that Yale

25  has that prohibits someone from being trained again on

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 126

1    the same subject?

2         A.   I'm not aware, no.

3         Q.   Are there other types of training that Yale

4    offers other than sensitivity training?

5         A.   I believe so.

6         Q.   What other types of training does Yale

7    offer?

8         A.   I believe they offer training on alcohol

9    and drug abuse prevention.  I believe.

10        Q.   Okay.  What else?

11        A.   Just generally, FroCo training.

12        Q.   What about Share?  What kinds of training

13   does Share do?

14        A.   As far as I know, as a kind of course,

15   sensitivity training is the only one I'm aware of.

16        Q.   And what is sensitivity training?

17        A.   My understanding of sensitivity training

18   has -- has developed over the time I've been a Title 9

19   Coordinator.  My understanding of what sensitivity

20   training is, is helping students understand that their

21   conduct has consequences for others.

22                   So discussing issues like

23   consequences, empathy, consent.  Making them aware

24   that the decisions that they make can be harmful to

25   others.

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                      December 13, 2016

Page 128

1      A.   I do not recall.  I don't believe so.  I

2   know what the case was about now, sitting in this

3   chair.  I don't recall learning about what it involved

4   on November 11th, 2015.

5      Q.   Do you know that now because of documents

6   that have been filed in this case?

7      A.   And other sources.

8      Q.   Okay.  And did you gain some understanding

9   as to, at that time, on November 4th of 2015, as to

10  what the finding had been in his prior UWC case?

11     A.   So the recommendation I recall finding out

12  about, and recommendations are generally the result of

13  a finding.  The recommendation was sensitivity

14  training, and four semesters of probation.

15     Q.   But do you know what the finding was?

16           MR. NOONAN:  You mean adverse

17  finding?

18     Q.   What the nature of the finding was?

19     A.   You mean the nature of the event?

20     Q.   What he was found responsible for?

21     A.   No.

22     Q.   You know now?

23     A.   I believe so.

24     Q.   Okay.  But at that time you didn't know?

25     A.   No.

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                          December 13, 2016

 1       Q.   And what did she say?

 2       A.   I don't remember.  I don't recall.

 3       Q.   Did you offer her any options?

 4       A.   I don't recall specifically.

 5            (Recess taken: 2:52-3:01 p.m.)

 6       Q.   Okay.  So going back to the plan that you

 7  formulated in conjunction with Jane   to contact Jack,

 8  at some point that plan changed, is that right?

 9       A.   Correct.

10       Q.   Okay.  And what did the plan become?

11       A.   It -- from what I remember, the plan that

12  we had was halted.  And the possibility of a formal

13  complaint, either by Jane   or by the Title 9 office

14  was a potential plan.

15       Q.   Okay.  And what about the information that

16  you learned made it -- strike that.  How did the

17  information that you learned about the prior UWC

18  proceeding affect your assessment of the informal

19  options that were available to Jane

20       A.   Informal options were never entirely off

21  the table, which is to say accommodations that we

22  could provide to her.  For example, interim

23  accommodations were always on the table.

24       Q.   But she didn't, as of October 28th, want to

25  proceed with a formal complaint; is that right?

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 132

1        A.    I don't know what she wanted.

2        Q.    Okay.  She didn't tell that you she had no

3   interest in proceeding with a formal complaint against

4   Mr. Montague?

5        A.    She never told me that, no.

6        Q.    But she did tell that you what she wanted

7   was an informal/anonymous process; is that right?

8        A.    Correct.

9        Q.    Okay.  Can you point me to a policy, and I

10  think I've marked the sexual misconduct response,

11  that's 2, the UWC Procedures, that's 3, can you point

12  me to somewhere in either of these documents where it

13  says that if a person has been trained by Share, that

14  option is no longer available to them?

15       A.    I don't know of one.

16             MS. DEAL:  Okay.  Let's mark this.

17             (Plaintiff's Exhibit 12

18             Marked for identification)

19       Q.    If you can look at what's been marked as

20  Exhibit 12, this also appears to be an e-mail exchange

21  between you and Ms. Roe      is that right?

22       A.    Yes.

23       Q.    Okay.  And this is on Wednesday, November

24  4th?

25       A.    Correct.

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

 1        A.    I hadn't confirmed that.

 2        Q.    Okay.  And I believe you told me earlier

 3    that your understanding of Yale's confidentiality

 4    policy is that you may not reveal to another student

 5    the fact that a student has been disciplined, as a

 6    result of a UWC process; is that correct?

 7        A.    That's correct.

 8        Q.    Okay.  So were you planning to tell Jane

 9    that Jack had been disciplined as a result of the UWC

10    process?

11        A.    No.

12        Q.    Well, what were you planning to tell her at

13    this point?

14        A.    That he had already received sensitivity

15    training.

16        Q.    Okay.  Was that not because he had been

17    sanctioned by the UWC?

18              MR. NOONAN:  Are you asking her

19    whether she was going to tell Jane  that?

20        Q.    I'm asking you, isn't the sensitivity

21    training part of his sanction?

22        A.    It is, but that's not what I would tell

23    Jane

24        Q.    Okay.

25        A.    That's not what I did tell Jane

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                     December 13, 2016

Page 135

1     Q.   What did you tell Jane

2     A.   That he had already received sensitivity

3  training.

4     Q.   Did you tell her why he had already

5  received sensitivity training?

6     A.   No.

7     Q.   Did you tell her when he had received

8  sensitivity training?

9     A.   I don't believe so.  Because I don't

10  believe that I knew.

11     Q.   Okay.

12     A.   And in fact, it wouldn't have mattered.

13     Q.   Under what circumstances would a person

14  receive sensitivity training from the Share Center?

15     A.   I could recommend it, as a voluntary course

16  of action and often do.  I have no way of finding out

17  if someone does or not.

18     Q.   Okay.

19     A.   It could also be part of a decision, part

20  of a recommendation from a finding.  And generally I

21  just believe anyone, any member of the Yale community

22  can receive it if they want to.  You know, it could be

23  requested by any individual unit for an employee or,

24  you know, a student or a member of a group.

25     Q.   Okay.  Do you recall what you told Jane

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

                                                        Page 136
1    about Jack's sensitivity training?

2         A.   I believe I said that he had already

3    received sensitivity training.

4              MS. DEAL:  Let's mark this.

5              (Plaintiff's Exhibit 13

6              Marked for identification)

7         Q.   So I've marked as Exhibit 13, the Fact

8    Finder's report in the complaint brought by Jason

9    Killheffer on behalf of Jane  Roe       against Jack

10   Montague.  Can you turn to page 8 of that report

11   please.

12        A.   Okay.

13        Q.   Just so we are clear, when there's a formal

14   UWC process, the UWC engages a fact finder to

15   interview the complainant, the respondent and

16   witnesses, is that right?

17        A.   I believe so.

18        Q.   Okay.  And then the fact finder records his

19   or her findings in a report; is that right?

20        A.   I believe so.

21        Q.   All right.

22        A.   I'm not entirely familiar.

23        Q.   So if you'd turn to page 8 of this report.

24   And if you look at the middle paragraph.  And this has

25   been redacted but I think we can all agree this is the

                  Sanders, Gale & Russell
                     (203) 624-4157

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 138

1    misconduct against Jack Montague, and this were a

2    formal complaint, that her name as the person who had

3    experienced the sexual misconduct, would not be kept

4    confidential from him.

5         Q.   Okay.  And it also says here "Ms. Gleason

6    explained to Jane  that Mr. Montague had already been

7    given a recommendation for training after a previous

8    complaint and so that option was no longer open to

9    him."  Do you see that?

10        A.   I do.

11        Q.   So it looks here as if Jane   is saying that

12   you told her he had received training after a previous

13   complaint; is that right?

14        A.   That's what it says here.

15        Q.   So is it fair to infer that that's what

16   Jane   understood you to be saying?

17             MR. NOONAN:  Objection.  Speculation.

18   I don't know how she can infer someone else's

19   understanding?

20        Q.   The words here say you, Ms. Gleason, "told

21   Jane   that Mr. Montague had already been given a

22   recommendation for training after a previous

23   complaint."  Is that right?

24        A.   That's what it says here.

25        Q.   Did you tell Jane   that there had been a

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 139

1    previous complaint?

2         A.   I did not.

3         Q.   Do you recall if you were speaking with

4    Jane  on the phone or in person on November 6th?

5         A.   So I have a vague recollection of speaking

6    with either Kate or Jane  on the phone.  I believe it

7    was Jane    But I think it was in regard to

8    scheduling.  I'm not certain about my memory about --

9    of the phone call.

10        Q.   Okay.  So you don't know if this November

11   6th conversation was in person or by phone, where you

12   told her that he had already received sensitivity

13   training?

14        A.   I didn't tell her that -- oh, I see.  Okay.

15   So I don't have a recollection of the order of the

16   phone call, and I also don't have a recollection of, a

17   clear recollection of my first meeting with Jane

18        Q.   Okay.  But this would be your second

19   meeting with Jane   right?

20        A.   Which meeting are we talking about?

21        Q.   November 6th, because you had already met

22   with her on October 19th, correct?

23        A.   Correct.  Oh, so --

24        Q.   You had --

25        A.   The November 6th meeting I do recall.  It

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 140

1    was in Dow Hall.

2         Q.   So you met with her in person on November

3    6th, and told her at least that Jack had already

4    received sensitivity training?

5         A.   I'm sorry, I'm getting confused about the

6    meetings.  I am getting confused.

7         Q.   All right.

8         A.   So ask me the question again.

9         Q.   Well, let's just establish this.  Do you

10   know whether this meeting, this conversation that you

11   had on November 6th, with Jane   wherein you explained

12   to her that he had already been given a recommendation

13   for training at least, did you have that conversation

14   with her in person, or over the phone?

15        A.   That's what I don't recall.

16        Q.   Okay.

17             MR. NOONAN:  I just want to note that

18   we don't know that that, the November 6th date is in

19   fact, accurate.  It's obviously double hearsay.

20             MS. DEAL:  Correct.

21        Q.   At some point though you told Jane   that

22   Jack, at the least, that Jack had already been given a

23   recommendation for training?

24        A.   No.  I told him -- I told Jane   that he had

25   already received sensitivity training.

Electronically signed by JAMES MARTONE (601-171-250-7767)          056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 144

1       Q.   Check to see if Jack was known to the Title
2    9 Coordinators?
3       A.   Many times when I confer with Jason, that's
4    either the result of checking with Jason or something
5    that initiates that check.
6       Q.   Okay.  And do you recall whether you
7    learned at any point that Jack was or was not known to
8    the Title 9 Coordinators?
9       A.   I believe it was at the meeting that we've
10   discussed.
11      Q.   And that's the meeting with Stephanie,
12   Susan and Jason?
13      A.   Correct.
14      Q.   No.  It's at that meeting that you believe
15   you learned that Jack was at the very least, known to
16   the Title 9 Coordinators?
17      A.   My memory is that that's when I learned
18   that he had been in a UWC case.
19      Q.   And then in the next paragraph it says
20   "After consultation with other Title 9 Coordinators,
21   Ms. Gleason found out that Mr. Montague had already
22   participated in a full semester of sensitivity
23   training."  Do you see that?
24      A.   I do.
25      Q.   Okay.  You found out that that training had

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 145

1   been mandated, correct?

2        A.   I -- actually I, myself, never found that

3   out.  I was told.

4        Q.   Okay.  Could you have confirmed whether or

5   not he completed the training?

6        A.   I suppose I could have.

7        Q.   Okay.  But that's not information that's

8   not available to you?

9        A.   I don't know.  I've never -- I've never

10  asked.

11       Q.   Do you know if Share maintains any sort of

12  list or database of people who have received training?

13       A.   I believe they don't.

14       Q.   Okay.

15       A.   I don't know.

16       Q.   Is there any sort of certificate of

17  completion or something that students receive if

18  they've done the Share training?

19       A.   You know, based on the kind of

20  confidentiality concerns that Share has, I'm guessing

21  no.

22       Q.   Okay.  Do you know who John Criscuolo is?

23       A.   I do.

24       Q.   And have you ever talked to him about Share

25  training for any particular student?

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 147

1        A.    Yeah.   I don't know if I told her that or
2    if she got that from other people, or -- I don't know.
3        Q.    Did you give Ms. Berkman a copy of your
4    notes?
5        A.    I have given her copies of my notes but I
6    did not believe it was this case.
7        Q.    Okay.  Do you recall giving her any
8    documents in connection with this case?
9        A.    I do not believe I did.
10        Q.    Okay.  Why don't we look at your notes,
11    Exhibit 1.  And look at the last page of those notes.
12    Those appear to reflect a meeting with Jane  on
13    November 10th of 2015, do you see that?
14        A.    Uh-huh.
15        Q.    Okay.  Do you think you did meet with Jane
16    on November 10th of 2015?
17        A.    I do.
18        Q.    Okay.  Let's go through your notes on that
19    meeting.  The first one says "Title 9 complaint
20    university."  Do you see that?
21        A.    I do.
22        Q.    What is the significance of that note?
23        A.    I believe that it was to discuss with Jane
24    the possibility of a Title 9 complaint, that the
25    university might file.

Sanders, Gale & Russell
(203) 624-4157

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 148

1        Q.   Okay.  Couldn't Jane have filed it?

2        A.   Yes.

3        Q.   Okay.  Did you tell her that?

4        A.   Yes.

5        Q.   Okay.  And what was her response?

6        A.   I don't remember if she had a response.

7        Q.   Okay.  Do you remember if she ever

8    expressed to you a desire to file a formal complaint?

9        A.   Did she ever express a desire?  I don't

10   believe so.

11       Q.   But that option was available to her if she

12   wanted to do it?

13       A.   As it is to anyone.

14       Q.   Okay.  You also talked to her about the

15   possibility of the university filing a complaint; is

16   that right?

17       A.   Right.

18       Q.   Okay.  We talked a little bit earlier about

19   the circumstances under which the university might

20   file a formal complaint.

21       A.   Right.

22       Q.   Okay.  And I think we established that one

23   of those circumstances was if the Title 9 Coordinator

24   determined that there was a threat to -- what did you

25   say, a threat to what?

Sanders, Gale & Russell
(203) 624-4157

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 149

1      A.   The community.

2      Q.   A threat to the community, okay, and we

3  didn't actually establish other circumstances, that

4  was the one that we talked about, is that fair to say?

5      A.   We used that as an example.  I think it's a

6  "such as."

7      Q.   Well, in this case, what would be the basis

8  for the university filing a Title 9 complaint?

9      A.    I believe that the basis would be a

10  combination of things.  The serious nature of this

11  complaint.  The fact that a UWC complaint had already

12  been filed.  That -- against Jack Montague.

13             And that there was a finding in that

14  complaint.  And that there was a recommendation of

15  both sensitivity training and probation.

16      Q.   Okay.  And which policy is it that allows

17  the university to file a complaint on any of these

18  bases?

19             MR. NOONAN:  This is a complaint now

20  where the individual -- formal complaint where the

21  individual has indicated that she's willing to be a

22  witness?  As opposed to one where she's not?

23             MS. DEAL:  Well, at this point --

24  let's back up then.

25      Q.   At this point what was Jane  telling you,

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1

MONTAGUE v. YALE UNIVERSITY                    December 13, 2016

Page 150

1    if you recall, about her willingness to participate in

2    the formal complaint process?

3         A.    That she didn't want to be a complainant.

4         Q.    Okay.  And why did she not want to be a

5    complainant?

6         A.    I don't know.

7         Q.    Would the process have been any different

8    if she was the complainant?

9         A.    What process?

10        Q.    The UWC process?

11        A.    Perhaps.  But that would have been a

12   question I wouldn't have been the best person to

13   answer.

14                   (Pause in the proceedings)

15        Q.    So on November 10th, you met with her.  You

16   discussed a Title 9 complaint initiated by the

17   university, correct?

18        A.    I believe so.

19        Q.    And then you have some notes here that

20   appear to relate to the incident itself, do you see

21   those?

22        A.    Yes.

23        Q.    Is that based on something that Jane  told

24   you at that meeting?

25        A.    Which?

Electronically signed by JAMES MARTONE (601-171-250-7767)                    056999c1-7919-44a7-a21b-5d72e63e95c1