UNITED STATES DISTRICT COURT FOR THE

    DISTRICT OF CONNECTICUT

CIVIL ACTION No: 3:16 cv-00885-AVC

-----------------------------------x

JACK MONTAGUE,                       :

    Plaintiff,                       :

        -v-                          :

YALE UNIVERSITY, ANGELA GLEASON,     :

And JASON KILLHEFFER,                :

    Defendants.                      :

-----------------------------------x


        Depositon of ANGELA GLEASON, taken pursuant to Notice, held at the Law Offices of Jacobs & Dow, LLC, 350 Orange Street, New Haven, Connecticut, before James A. Martone, LSR #248, and Notary Public, in and for the State of Connecticut, on December 13, 2016, at 10:30 a.m.

```
 1   A P P E A R A N C E S:
 2
 3        For the Plaintiff:
 4   TODD & WELD, LLP
 5   One Federal Street-27th Floor
 6   Boston, MA  01880
 7   BY:  ALEXANDRA H. DEAL, ESQ.
 8   adeal@toddweld.com
 9
10        For the Defendants:
11   DONAHUE, DURHAM & NOONAN, PC
12   741 Boston Post Road
13   Guilford, Connecticut  06347
14   BY:  PATRICK NOONAN, ESQ.
15
16   ALSO PRESENT:
17   Harold Rose, Esq.
18   General Counsel, Yale University
19
20
21
22
23
24
25
```

```
 1                S T I P U L A T I O N S
 2
 3        IT IS HEREBY STIPULATED AND
 4     AGREED by and between counsel for the
 5     respective parties hereto that all
 6     technicalities as to proof of the official
 7     character before whom the deposition is to
 8     be taken are waived.
 9
10        IT IS FURTHER STIPULATED AND
11     AGREED by and between counsel for the
12     respective parties hereto that the
13     deposition may be signed before any Notary Public.
14
15        IT IS FURTHER STIPULATED AND
16     AGREED by and between counsel for the
17     respective parties hereto that all
18     objections, except as to form, are reserved
19     to the time of trial.
20
21
22                       *   *   *   *   *   *
23
24
25
```

```
 1                    WITNESS INDEX

 2

 3

 4                                                   PAGE

 5   Direct Examination by Ms. Deal                    5

 6

 7                    EXHIBIT INDEX

 8   PLAINTIFF      DESCRIPTION                      PAGE

 9   1   Notebook                                      7

10   2   Sexual Misconduct Response                   26

11   3   Document entitled UWC Procedures             30

12   4   Statement of Confidentiality of UWC Proceedings 35

13   5   Report of Complaints of Sexual Misconduct    39

14   6   September 23, 2015 e-mail exchange           80

15   7   October 16, 2015 e-mail exchange             90

16   8   Incident Summary Form                        95

17   9   October 16, 2015 e-mail exchange            103

18   10  October 28, 2015 e-mail exchange            109

19   11  October 29, 2015 e-mail                     112

20   12  November 4, 2015 e-mail exchange            132

21   13  Fact Finder's report                        135

22   14  November 5, 2015 e-mail exchange            140

23   15  November 9 2015 e-mail exchange             159

24   16  November 10, 2015 e-mail chain              160

25   17  January 21, 2016 opening statement          175
```

```
 1                  -EXHIBITS CONTINUED-
 2   18  November 18, 2015 letters                    177
 3   19  November 20, 2015 e-mail                     179
 4   _____
 5   ANGELA GLEASON
 6     called as a witness, having been first duly
 7     sworn by James A. Martone, a Notary Public
 8     in and for the State of Connecticut:
 9                  MR. NOONAN:  I should probably put on
10   the record our agreement that we're going to be using
11   real names of students whose names we ought not to
12   make public.  So we've agreed that the transcript will
13   be limited to parties and witnesses, and if the
14   transcript needs to be used elsewhere, for example, in
15   a court filing, we will redact the names.
16                  MS. DEAL:  Yes.
17   DIRECT EXAMINATION BY MS. DEAL:
18        Q.   Good morning.
19        A.   Good morning.
20        Q.   Could you state your name please?
21        A.   Angela Gleason.
22        Q.   Ms. Gleason, have you ever been deposed
23   before?  Have you ever been to a deposition?
24        A.   I don't know what means.  Oh, yes I have.
25        Q.   Let me go over some of the ground rules,
```

Electronically signed by JAMES MARTONE (601-171-250-7767)                056999c1-7919-44a7-a21b-5d72e63e95c1

 1     Q.   And when we say contact Jack, we're talking
 2   about how your plan based on your discussion with
 3   **REDACTED**     , was to talk to Jack about how his
 4   behavior didn't meet the community's expectations,
 5   recommend training and not mention **REDACTED** by name; is
 6   that right?
 7     A.   I believe so.
 8     Q.   Okay.  Still looking at your notes, looks
 9   like on November 4th of 2015, you met with Stephanie,
10   Susan and Jason about the JM case; is that correct?
11     A.   Yes.
12     Q.   Okay.  What was the purpose of that
13   meeting?
14     A.   I believe to discuss the Jack Montague
15   case.
16     Q.   What about the Jack Montague case?
17     A.   I don't recall if I knew going into the
18   meeting.
19     Q.   Meaning you don't recall, when you went
20   into the meeting that morning, it looks like at 9:00
21   a.m. you're not sure if you knew going in, why you
22   were meeting with Stephanie, Susan and Jason, about
23   Jack Montague?
24     A.   Correct.
25     Q.   Okay.  Is it typical for you to meet with

1    these three individuals together, about a particular
2    case?
3         A.   Define typical.
4         Q.   Had you done it before?
5         A.   Yes.
6         Q.   How often had you done this before?
7         A.   I'm guessing three times, four times.
8         Q.   And that's since you became a Deputy Title
9    9 Coordinator in July of 2014?
10        A.   Correct.
11        Q.   Okay.  And if you recall, what was the
12   purpose of involving the General Counsel's office in
13   this meeting?
14        A.   What did I think going in?  Or --
15        Q.   No, what was the purpose of involving the
16   General Counsel's office in this meeting?
17        A.   Assumed for legal advice.
18        Q.   For legal advice with regard to what?
19        A.   This case.  Title 9.  I didn't know.
20        Q.   Do you know now?
21        A.   It's just -- again, it's not infrequent for
22   General Counsel, specifically Susan Sawyer, to join a
23   meeting of Title 9 concerns.
24        Q.   Okay.  Do you recall this meeting?
25        A.   I recall where it was.

```
 1       Q.   Okay.  And do you recall whether Ms. Sawyer
 2   gave legal advice to you during this meeting?  Without
 3   revealing what the legal advice may have been?
 4               MR. NOONAN:  Just answer that yes or
 5   no.  Don't give any substance of what she said.
 6       A.   I remember her speaking, yes.
 7       Q.   Okay.  Would you characterize what she said
 8   as legal advice?
 9       A.   I believe so.
10       Q.   Okay.  Did your notes reflect things that
11   Ms. Sawyer said to you during that meeting?
12       A.   I can't see my notes.
13       Q.   Sitting here today, can you remember
14   whether these notes reflect what Ms. Sawyer said to
15   you during the meeting?
16       A.   I don't remember.
17       Q.   Okay.  Do you remember the topics that were
18   discussed at this meeting?
19               MR. NOONAN:  Again, at this point I
20   don't have any objection to you talking about topics
21   that others talked about, but don't mention anything
22   Attorney Sawyer mentioned.  So you can talk about what
23   other people said, just not her.
24       A.   I don't know how to separate them.  Because
25   I remember, I feel like largely, whatever was
```

1  your plan?
2      A.   To this plan here?
3      Q.   Yes.
4      A.   I believe a decision in the case
5  recommended sensitivity training, or I believe
6  mandated sensitivity training, and REDACTED had requested
7  that Jack receive sensitivity training.  And he had
8  already received sensitivity training.
9      Q.   Okay.  So why did that change the course of
10 action?
11     A.   I don't recalling the specifics of the
12 discussion.  But in concert with, I believe it was
13 also discussed that there had been not only the
14 mandate of the sensitivity training, but a period of
15 probation and the fact that there had been a finding
16 in a previous UWC case, that it wouldn't be the plan
17 going forward to recommend sensitivity training again,
18 as a voluntary course of action, which is what I would
19 have recommended in the case that REDACTED requested.
20     Q.   Okay.  Does Yale have a policy that
21 prohibits a person from twice receiving sensitivity
22 training?
23     A.   I don't know.
24     Q.   You're not aware of any policy that Yale
25 has that prohibits someone from being trained again on