## Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---------------------------------x
JACK MONTAGUE,

    Plaintiffs,

    -versus-    : CIVIL ACTION
                : No.
YALE UNIVERSITY, ANGELA    : 3:16-cv-00885-AVC
GLEASON and JASON KILLHEFFER, :

    Defendants   x
---------------------------------

    Deposition of ALEY MENON, taken pursuant to
Rule 30 of the Federal Rules of Civil Procedure,
held at the law offices of Jacobs and Dow, LLC,
350 Orange Street, New Haven, Connecticut,
before Rosanne LaBonia, LSR 249 and Notary
Public in and for the State of Connecticut, on
April 13, 2017, at 11:44 A.M.

## Page 2

APPEARANCES:

    ATTORNEY FOR PLAINTIFFS:
    TODD & WELD, LLP
    One Federal Street
    Boston, MA  02110
    BY: MAX STERN, ESQUIRE

    ATTORNEY FOR DEFENDANTS:

    DONAHUE, DURHAM & NOONAN
    741 Boston Post Road
    Guilford, CT  06437
    BY: PATRICK NOONAN, ESQUIRE

## Page 3

STIPULATIONS

    IT IS HEREBY STIPULATED AND AGREED by and
between counsel for the respective parties hereto
that all technicalities as to proof of the official
character before whom the deposition is to be taken
are waived.

    IT IS FURTHER STIPULATED AND AGREED by and
between counsel for the respective parties hereto
that the reading and signing of the deposition by
the deponent are NOT waived.

    IT IS FURTHER STIPULATED AND AGREED by and
between counsel for the respective parties hereto
that all objections, except as to form, are reserved
to the time of trial.

    * * * * *

## Page 4

WITNESS INDEX
Witness - ALEY MENON
                  PAGE
Direct Examination by Mr. Stern    6

        PLAINTIFF'S EXHIBIT INDEX
2 (Remarked)                6
57                            15
58   Protocol            22
59   Della Rocca's response    34
60   Fact Finder's report      36
61   E-mail chain           43
62   Fanti Statement         44
63   E-Mail                 47
64   D.O.E.                 51
65   Panel Report           58
66   E-Mail                 68
67   E-Mail                 79
68   Charging letter        91
69   Fact Finder's Draft      96
70   Fact Finder's Draft      97
71   Final Report          104
72   Native Word           109

Page 5

| | | | |
|---|---|---|---|
| 1 | 73 | E-Mail | 112 |
| 2 | 74 | | 139 |
| 3 | 75 | 9/24/15 | 169 |
| 4 | 76 | E-Mail | 173 |
| 5 | 77 | JM response | 185 |
| 6 | 78 | E-Mail | 186 |
| 7 | 79 | Decision | 189 |
| 8 | 80 | | 192 |
| 9 | 81 | JM appeal | 192 |
| 10 | 82 | E-Mail | 197 |
| 11 | 83 | Provost's decision | 197 |

Page 6

1  ALEY  MENON,
2  having been first duly sworn by Rosanne LaBonia, a
3  Notary Public in and for the State of Connecticut,
4  testified on her oath as follows:
5         MR. NOONAN: Before we start, I
6  probably should mention for Aley's
7  benefit that we've agreed in depositions
8  we're going to use actual names of the
9  students who were involved in some
10 fashion in this case, but they're not
11 going to be used publicly.
12        THE WITNESS: Very good. Thank
13 you.
14        MR. STERN: Off the record for
15 this.
16        (DISCUSSION HELD OFF THE RECORD.)
17        (PLAINTIFF'S EXHIBIT 2 FOR
18 IDENTIFICATION Received and Remarked.)
19        MR. STERN: We are substituting a
20 complete Exhibit 2 for the one that we
21 currently have in our compilation of
22 exhibits, but let me just, while we're at
23 it, ask the witness, this one is noted it
24 was last updated on May 10th, 2016. Can
25 you tell me, was there a material change

Page 7

1  in this between 2013 and 2016?
2         THE WITNESS: Yes, there would have
3  been changes, yes.
4         MR. STERN: Pat, when you get a
5  chance to give us the --
6         MR. NOONAN: You guys have it.
7         MR. STERN: We do? The 2013?
8         MR. NOONAN: Yes. We gave you all
9  versions. Even before the litigation
10 started. But if you don't find it, tell
11 me.
12        MR. STERN: All right.
13        MR. NOONAN: Off the record.
14        (DISCUSSION HELD OFF THE RECORD.)
15 DIRECT EXAMINATION
16 BY MR. STERN:
17     Q   Please state your name.
18     A   Aley Menon.
19     Q   What is your occupation?
20     A   I'm a secretary of the University-Wide
21 Committee on sexual misconduct.
22     Q   Would you kindly tell us what your
23 educational background is?
24     A   Yes. I have a Bachelor of Arts degree in
25 Political Science, and a J.D.

Page 8

1      Q   Your Bachelor's is from where?
2      A   University of Miami.
3      Q   And your J.D.?
4      A   Also from the University of Miami.
5      Q   What year did you get your J.D.?
6      A   1989, I believe.
7      Q   The J.D.?
8      A   Yes.
9      Q   What did you do after getting your J.D.?
10     A   I was the Coordinator of Volunteer
11 Services at the University of Miami for one year,
12 and then I was the assistant to the Vice-President
13 for Student Affairs and the University Ombuds person
14 at the University. I was of counsel --
15     Q   How long did you do that?
16     A   From 1990 to 1998. The volunteer
17 services position from 1989 to 1990.
18     Q   And then after the 1990 to '98 job?
19     A   I came to Yale and joined the Office of
20 the General Counsel as a Fellow.
21     Q   What were your duties as Assistant
22 Vice-President -- assistant --
23     A   To the Vice-President for Student Affairs
24 and the University Omsbud person. I investigated,
25 mediated and resolved grievances involving the

MONTAGUE v. YALE UNIVERSITY                                    April 13, 2017

Page 181

1      MR. NOONAN: Okay. I thought you
2  were asking -- you're talking about the
3  first page of the exhibit?
4      MR. STERN: Yes.
5  Q   It says this is an e-mail from David Post
6  to you, correct?
7  A   Yes.
8  Q   "I worked on panel report this morning.
9  I incorporated Susan's edits and suggestions."
10 A   Yes.
11 Q   That would be Susan Sawyer?
12 A   Yes.
13 Q   So in this case, Susan Sawyer was
14 involved in the initial stages of this, correct?
15 A   Yes, she gave advice.
16 Q   And now she's involved in the initial
17 stages --
18 A   Which stages, when you say "the initial
19 stages"?
20 Q   Before the formal complaint was even
21 made, at least according to Angie Gleason's notes,
22 which you saw.
23 A   I don't know her involvement.
24 Q   Well, let's just assume that she was
25 involved before the formal complaint was made.

Page 182

1  A   I don't know that I would make that
2  assumption.
3  Q   I'm going to ask you to assume.
4  A   Okay.
5  Q   And that --
6      MR. NOONAN: That's okay. For
7  purposes of this question, he's asking
8  you to assume that as a fact.
9      THE WITNESS: Okay.
10 Q   And you know that she was involved in
11 making comments on the fact finder's report,
12 correct?
13 A   Yes.
14 Q   And now she's involved in making comments
15 and edits on the panel report.
16 A   She does give legal advice, yes.
17 Q   Is there some provision in the rules that
18 entitles her, simply because she's a lawyer, to get
19 involved in making these comments and suggestions?
20 A   It's not prohibited.
21 Q   It's not prohibited, so it's okay, is
22 that right?
23 A   She's offering legal advice and she's the
24 legal advisor to the UWC.
25 Q   So whenever she makes a change or an edit

Page 183

1  to a report, that's legal advice, is that right?
2  A   That's the way I view it.
3  Q   Okay. Now, this panel report -- it's
4  Exhibit 43. Do we have it out already?
5      THE WITNESS: What time is it?
6      MR. NOONAN: Five-thirty.
7      THE WITNESS: I'm getting pretty
8  tired.
9  Q   I think we must have it out already.
10 This panel report doesn't make any reference in the
11 whole report to the statement in the fact finder's
12 report that we have been over that REDACTED told the
13 fact finder that Jack appeared drunk as if he did
14 not hear what she said when she was saying no. Did
15 you notice that the panel report did not include
16 that?
17     MR. NOONAN: You're asking her if
18 she recalls from reading it in realtime?
19 Q   Did you notice that?
20 A   I don't recall.
21 Q   Well, you were asked to make edits in the
22 report.
23 A   Yes.
24 Q   Right?
25 A   Yes.

Page 184

1  Q   And I take it you didn't make any edit to
2  include that in the report.
3  A   I don't recall.
4  Q   Is that an important -- a fact that
5  should have been, in your judgment, as a person who
6  makes edits in these reports, a fact that should
7  have been included?
8  A   I think that's for the panel to decide
9  which facts should be included.
10 Q   Well, you've been asked to make edits.
11 A   Yes, that's correct.
12 Q   And of course, the panel will decide what
13 goes in, but did you think it was not important to
14 suggest that that fact should go in?
15 A   I just don't recall. I don't remember.
16 Q   Now, when this panel report was done, it
17 was then provided to Jack and to REDACTED correct?
18 A   Yes.
19 Q   And Jack was told he could make a
20 response -- a response to you which you would then
21 send to the decision maker who was Dean Holloway,
22 right?
23 A   I believe that's correct.
24 Q   And likewise, a report -- the report was
25 given to REDACTED and she was told she could make a

46 (Pages 181 to 184)

Sanders, Gale & Russell
(203) 624-4157

Electronically signed by ROSANNE LABONIA (501-218-496-1146)        95aaa0a2-0622-43c3-8626-0f32aa2e79db