UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

------------------------------------- x
JACK MONTAGUE,                        :
                                      :
        Plaintiffs,                   :
                                      :
    -versus-                          : CIVIL ACTION
                                      : No. 3:16-cv-00885-AVC
YALE UNIVERSITY, ANGELA GLEASON       :
and JASON KILLHEFFER,                 :
                                      :
        Defendants                    x
------------------------------------- 

      Deposition of **Jane Roe**, taken pursuant to Rule 30 of the Federal Rules of Civil Procedure, held at the law offices of Jacobs and Dow, LLC, 350 Orange Street, New Haven, Connecticut, before Rosanne LaBonia, LSR 249 and Notary Public in and for the State of Connecticut, on March 23, 2017, at 12:10 P.M.

```
 1    A P P E A R A N C E S:

 2

 3               ATTORNEY FOR PLAINTIFFS:

 4        TODD & WELD, LLP
          One Federal Street
 5        Boston, MA  02110
          BY:  ALEXANDRA DEAL, ESQUIRE
 6             HILLARY A. LEHMANN, ESQUIRE

 7
          ATTORNEY FOR DEFENDANTS:
 8
          DONAHUE, DURHAM & NOONAN
 9        741 Boston Post Road
          Guilford, CT  06437
10        BY:  PATRICK NOONAN, ESQUIRE

11
          ATTORNEY FOR DEPONENT:
12
          CARLTON FIELDS
13        One State Street, Suite 1800
          Hartford, CT  06103
14        BY:  JAMES M. SCONZO, ESQUIRE

15

16

17

18

19

20

21

22

23

24

25
```

1              S T I P U L A T I O N S

2

3        IT IS HEREBY STIPULATED AND AGREED by and between

4   counsel for the respective parties hereto that all

5   technicalities as to proof of the official character

6   before whom the deposition is to be taken are waived.

7        IT IS FURTHER STIPULATED AND AGREED by and

8   between counsel for the respective parties hereto that

9   the reading and signing of the deposition by the

10  deponent are waived.

11       IT IS FURTHER STIPULATED AND AGREED by and

12  between counsel for the respective parties hereto that

13  all objections, except as to form, are reserved to the

14  time of trial.

15

16                      * * * * *

17

18

19

20

21

22

23

24

25

```
 1    WITNESS INDEX

 2    Witness - Jane Roe

 3                                                              PAGE

 4    Direct Examination by Ms. Deal                            5/87

 5    Cross Examination by Mr. Noonan                           83

 6

 7

 8

 9

10                     PLAINTIFF'S EXHIBIT INDEX

11    33   E-mail Jane Roe and Amy                              58

12    34   Response                                             63

13    35   Journal Entry                                        72

14

15

16

17

18

19

20

21

22

23

24

25
```

1   **Jane Roe**,

2   having been first duly sworn by Rosanne LaBonia, a

3   Notary Public in and for the State of Connecticut,

4   testified on her oath as follows:

5   DIRECT EXAMINATION

6   BY MS. DEAL:

7       Q    Good morning, Ms. **Jane Roe**.

8       A    Hi.

9       Q    You understand that you're here for a

10  deposition in a case that Jack Montague has brought

11  against Yale University and two individual defendants,

12  Angela Gleason and Jason Killheffer?

13      A    Yes.

14      Q    And you understand you're not a party to

15  this case.

16      A    Yes.

17      Q    You're not being sued.

18      A    Right, yes.

19      Q    Have you ever been deposed before?

20      A    No.

21      Q    So let me just explain a little bit about

22  some ground rules.  When I ask you a question, if you

23  could please give a verbal response rather than nodding

24  your head or shaking your head because the stenographer

25  needs to be able to take down the words that you say.

```
 1        A    Yes.
 2        Q    So your understanding was that Rachel Rogers would
 3   go to Ms. Gleason and find out what your options might
 4   be.
 5        A    Yes.
 6        Q    Do you know when she met with Ms. Gleason?
 7        A    It should have been October, around the
 8   15th.  It was that Friday, whatever it was.
 9        Q    When Rachel Rogers met with Ms. Gleason.
10        A    When Rachel Rogers met with her.
11        Q    Did Rachel Rogers report back to you about that
12   meeting?
13        A    Yes.
14        Q    What did she tell you about that meeting?
15        A    She explained that Angie had told her that
16   the two main options through Title IX are the informal
17   complaint, which may involve something like sensitivity
18   training, and the formal complaint which is the hearing
19   process.
20        Q    What did you understand at that time before
21   you yourself had spoken with Ms. Gleason, what did you
22   understand the informal complaint process to be?
23        A    I understood, from what Rachel Rogers told me, that
24   my name wouldn't necessarily be attached to it, that I
25   could file it anonymously, and that they would reach
```

1  out to him and offer this additional sensitivity
2  training.
3      Q   At that time, again, prior to when you had
4  spoken to Ms. Gleason, did you have any understanding
5  of what that sensitivity training would entail?
6      A   No.
7      Q   Did you at that time make a decision to go
8  and speak to Ms. Gleason yourself?
9      A   Yes.
10     Q   What did you want to talk to Ms. Gleason
11 about?
12     A   I had decided that I wanted to file an
13 informal complaint against Jack.
14     Q   And again, you understood that to mean
15 something along the lines of training, something that
16 would be provided to him, but your name would not
17 necessarily be attached to the complaint, is that
18 right?
19     A   Yes.
20     Q   Why was it that you wanted to proceed in
21 that fashion?
22     A   Because my main concern at that point
23 was -- I was concerned about Jack's potential behavior
24 to other women on campus, and I thought that that was
25 sort of a low stakes way to sort of affect change and

```
 1   hopefully prevent any further like incidents or
 2   anything like that.
 3        Q    When you say "low stakes," can you explain
 4   what you mean by that?
 5        A    My understanding was that after I filed the
 6   informal complaint, I wouldn't have to do anything
 7   else.
 8        Q    Okay.  So low stakes for you?
 9        A    Low stakes for me, yes.
10        Q    Am I correct in understanding that you
11   weren't at that point out to get Jack expelled or
12   anything along those lines?
13        A    Correct.
14        Q    So you went to talk to Ms. Gleason about
15   filing an informal complaint.
16        A    Yes.
17        Q    Do you remember when it was that you went
18   to speak to her about that?
19        A    It was October 19th.
20        Q    What did the two of you talk about at that
21   meeting aside from any details you may have given her
22   about your experience with Mr. Montague?
23        A    She explained the informal and formal
24   complaint processes to me again.  Basically,
25   reiterating what Rachel Rogers had said.
```

```
 1   when she said she looked it up?
 2        A    That the Title IX officers have some sort
 3   of record of who goes through sensitivity training.
 4        Q    Did you have a belief as to why Title IX
 5   would have that record?
 6        A    Because they're the one who offers the
 7   sensitivity training.
 8        Q    Did she explain to you any further what
 9   training he had received?
10        A    She said sensitivity training.
11        Q    She didn't explain to you then anything
12   about the sensitivity training that he had received?
13        A    No.
14        Q    But your understanding was that she got
15   that information from some records that Title IX keeps,
16   the Title IX office keeps.
17        A    Yes.
18        Q    Your understanding was that the Title IX
19   office keeps those records of people who have been
20   referred to sensitivity training because of a complaint
21   of sexual misconduct, correct?
22               MR. NOONAN:  Objection.
23            Mischaracterization.  She said she assumed
24            that Angie got it from records, but nothing
25            was said about it.
```

```
 1      A     Angie didn't mention a database or
 2   anything.
 3      Q     I'm not asking what Angie said.  I'm asking
 4   what you understood that to mean.  And I believe that
 5   you told me that you understood that Title IX keeps
 6   records of people who go through sensitivity training,
 7   is that right?
 8                MR. NOONAN:  I have the same
 9            objection.  I don't think she said she
10            understood it; she said she assumed it.
11      Q     Correct, you assumed that Title IX kept
12   records of people who go through sensitive training.
13      A     I assumed that, yes.
14      Q     And you know that the Title IX office at
15   Yale is established to deal with complaints of sexual
16   misconduct, is that correct?
17                MR. NOONAN:  Objection.  Lack of
18            foundation.
19                Perhaps we should mention, if someone
20            objects, you still get to answer.
21                THE WITNESS:  Okay.  Sorry, can I take
22            a break?
23                MR. SCONZO:  We can take a break.
24                (R E C E S S)
25                (THE REPORTER READ THE RECORD.)
```

1    A    Yes.
2    Q    So did you make any assumptions at that
3    point about the reason that Jack had already gone
4    through sensitivity training?
5    A    Not really.
6    Q    Did you know that sensitivity training was
7    one of the options for addressing a complaint of sexual
8    misconduct?
9    A    Yes.
10   Q    Did you assume that Jack had been trained
11   in sensitivity because of a prior incident of sexual
12   misconduct?
13   A    I think part of me assumed that.
14   Q    Did you make any specific assumptions about
15   that, as in did you assume that it was a prior incident
16   that was, for example, similar to yours?
17            MR. SCONZO:  Objection.
18   A    No.
19   Q    Do you know what other reasons there might
20   be for somebody going through sensitivity training?
21   A    Not really.
22   Q    Do you know if there are other mechanisms
23   by which a Yale student would get sensitivity training?
24   A    Not really.
25   Q    But you do know that sensitivity training