| | |
|---|---|
| **From:** | Pat  Noonan <PNoonan@ddnctlaw.com> |
| **Sent:** | Wednesday, July 26, 2017 11:10 PM |
| **To:** | Kiely, Christian |
| **Cc:** | Stern, Max D.; Deal, Alexandra |
| **Subject:** | RE: Montague v. Yale et al |

Hi Christian

      I will get you the responses by the end of the week, and we will provide the documents to Jim Sconzo for him to decide on what should be produced.

      Pat

Patrick M. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT  06437
Tel:  203-458-9168
Fax: 203-458-4424

---

**From:** Kiely, Christian [mailto:ckiely@toddweld.com]
**Sent:** Wednesday, July 26, 2017 10:28 AM
**To:** Pat Noonan
**Cc:** Stern, Max D.; Deal, Alexandra
**Subject:** RE: Montague v. Yale et al

Pat,

Can you please let me know: 1) when we can expect to receive the answers to interrogatories and privilege logs you have agreed to provide; and 2) whether you will agree to produce documents responsive to Request No. 2 to Jim Sconzo for him to review for privilege?

Regarding Request No. 4 and Interrogatory Nos. 7 and 10:  Suffice it to say we disagree with your characterization of our narrowed request and your continued objection.  In many instances an individual case appears to be listed in more than one edition of the Spangler Report (as it proceeds through the various stages of the complaint process); however, given that the descriptions are so vague as to render it impossible for me to know with certainty which cases have been reported multiple times, I highlighted all instances where a case responsive to our requests is discussed. I am confident that the total number of cases identified in our narrowed request is far fewer than 87.  In any event, we are willing to agree to further narrow Request No. 4 and Interrogatories No. 7 and 10 to the cases identified in paragraph 179 of our Amended Complaint.  If you are still unwilling to respond to these further narrowed requests, then we will move to compel on this issue.  Your burden argument as it concerns each individual case is unfounded as we are only seeking the case files maintained by the Title IX Office and/or UWC for each of these cases, which should be readily available.

Thanks,
Christian

**From:** Pat Noonan [mailto:PNoonan@ddnctlaw.com]
**Sent:** Tuesday, July 11, 2017 10:11 PM
**To:** Kiely, Christian
**Cc:** Stern, Max D.; Deal, Alexandra
**Subject:** RE: Montague v. Yale et al

Hi Christian,
        I will respond to your numbered paragraphs:
Requests for Production:

1.    We will get you the electronic calendars.

2.    I am unable to respond until you tell me Jim Sconzo's response on behalf of    Jane Roe

3.    I am not able to respond until you tell me exactly what documents you are seeking. In its present form this request is still far too broad. I can't  tell what documents you are seeking, but it seems very broad and not designed to lead to relevant evidence.

4.  You had previously agreed that this request was too broad. Unfortunately, compliance with your " narrowed" request would require many months for us to comply, without any prospect of finding relevant evidence. By my count you marked 33 cases with a blue asterisk and 54 with a red check (which you are seeking in the interrogatories and will be discussed immediately below). Thus, you are asking us to review in detail a total of 87 additional cases. As you know, the production of documents in this case alone has been unconscionably expensive for both sides just by itself. Reviewing 87 other cases is unimaginable. I also note that the  cases on which you are seeking discovery  are not similar to the Montague case in any manner. The majority of the 87 cases involve "unwanted sexual contact without consent," whereas the Montague case involves "intercourse without consent." It is obvious that the two categories are quite distinct. There are numerous other dissimilarities. For example, most of the 87 cases do not involve a case where there was any formal complaint filed, and many are nothing more than a report of unwanted sexual contact without any resolution whatsoever. A number of other cases note that the complainant chose not to pursue the matter. I can't understand how producing documents  generated in any of those cases can be expected to lead to relevant evidence. As to the Executive Committee, we cannot agree to a blanket search of all its files. There is a listing of cases on the Yale University website of all Executive Committee cases. It is available publicly. If you want to review that listing and alert me to any that you think are  factually similar, I will be happy to review them. My own review suggests none are similar to Mr. Montague's case.

6-7. As agreed, we will list them in a privilege log.

8. As you will see in our answers to interrogatories, the Yale Women's Center is run by students.

Interrogatories:

5.    We will supply an answer to subparagraphs a-d.
6.   We will stand on our objection as previously indicated.
7.   See discussion of your request that we review 87 additional cases above.
8.   We will be providing an answer.
9.   We will be providing an answer.
10. See discussion of your request that we review 87 additional cases above.
11. You previously agreed to withdraw this interrogatory in exchange for our agreement to permit you to depose Dr. Spangler outside the discovery period.

We will be providing you the answers to interrogatories we have agreed on, a privilege log and a date for Dr. Spangler's deposition shortly.

Pat

Patrick M. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT  06437
Tel:  203-458-9168
Fax: 203-458-4424

**From:** Kiely, Christian [mailto:ckiely@toddweld.com]
**Sent:** Wednesday, June 28, 2017 11:40 AM
**To:** Pat Noonan; James Flynn
**Cc:** Stern, Max D.; Deal, Alexandra
**Subject:** RE: Montague v. Yale et al

Pat,

Please see my responses to each item below.  As you know, I will be on vacation beginning tomorrow through July 9.  Accordingly, while I do not need to hear back from you this week, I would appreciate it if you could let me know by the end of next week what Defendants will agree to produce so that we can tee up any items on which Plaintiff will need to file a motion to compel, and agree to a briefing schedule for such a motion.

Requests for Production:

1. We have not been able to locate these electronic calendars in any of Yale's productions.  If you have produced them, please identify them by bates number.

2. I disagreed that any privilege exists over communications Roe exchanged with Myers in her capacity as UWC advisor, but explained that in any event, Roe waived any applicable privilege through her production of this category of documents in response to Plaintiff's subpoena to Roe.  I agreed that to the extent a privilege exists, it is held by Roe, and I will contact Jim Sconzo in this regard.

3. You said you were unfamiliar with the "Dollar Bills" case.  It is referenced in Pls. Ex. 59 and was discussed in Aley Menon's deposition at tr. 35-36. Plaintiff is willing to narrow this request as follows:

   a. The complete UWC case file (complaint, fact-finder's report, panel report, decision, appeal, decision on appeal, etc.)

   b. Any documents concerning the initiation of this complaint

   c. Any documents concerning the jurisdiction of UWC to hear this complaint and/or the decision whether to proceed with an Executive Committee or UWC complaint

4. I agreed to attempt to identify responsive UWC cases contained in the Spangler Reports, for which you could then conduct a more targeted search and produce, at a minimum, the entire Title IX office and/or UWC case file(s).  I explained that it would be impossible for us to narrow this request with respect to Executive Committee cases as they are not included in the Spangler Reports or, to our knowledge, otherwise cataloged in any kind of public document.  With respect to Title IX and UWC cases only, Plaintiff hereby identifies cases marked with a blue asterisk in the attached copies of the Spangler Reports as cases responsive to this request.  However, because the Spangler Reports describe many cases as involving "sexual assault" or "sexual harassment" without detailing the nature of the conduct, it is not possible for plaintiff to identify all cases which are responsive to this request.  Plaintiff insists that Yale produce the case files for all cases involving unwanted touching that did not

3

rise to the level of non-consensual penetration. Based on what these documents reveal, Plaintiff reserves the right to propound follow-up requests for more information about specific cases.

6. You stated that the only communications between Roe and your firm concerned possible legal representation. We will assess this claim of privilege once you have produced a privilege log and reserve the right to challenge the claim.

7. We disagree that communications between your firm and Mr. Sconzo are protected by any applicable privilege and reserve the right to challenge this claim once you have produced a privilege log.

8. We will agree to narrow this request to advisors, staff members and persons holding leadership roles with the Yale Women's Center in February and March 2016, including but not limited to any person responsible for maintaining the Women's Center's Facebook page during that time period.

Interrogatories:

5. Plaintiff maintains that he is entitled to a complete answer to this interrogatory.

6. You said you believed there have been approximately 5 or 6 students (and definitely fewer than 10) who have been expelled from Yale for sexual misconduct since July 1, 2011. Accordingly, there is no undue burden on Yale in answering this interrogatory. This is particularly true given that Yale has already compiled all or much of this information in preparing the sealed affidavit of Colleen Davis. We disagree that the Court has substantively ruled with respect to the discoverability or admissibility of this information. The court denied as moot Plaintiff's motion to compel the sealed Davis affidavit after Defendants indicated they would not rely on the information contained therein in opposing Plaintiff's motion for preliminary injunction. The court was not asked to consider, and did not rule on the question whether Plaintiff could affirmatively rely on the same information.

7. I have gone through the attached Spangler Reports and placed a red checkmark next to cases implicated by this interrogatory. For such cases, Plaintiff requests that Yale answer by providing more detail than what is provided in the Spangler Reports, and answer e, as this information not provided in the Spangler Reports.

8. We await your response.

9. You stated that you had been overzealous in your objection to this interrogatory. Plaintiff maintains he is entitled to a complete answer to this interrogatory. The information sought is relevant to, among other things, whether the statements of the Yale Women's Center regarding Montague's case are attributable to Yale.

10. We will agree to narrow this to the cases we have identified with blue asterisks in the attached Spangler reports, any other responsive cases included in the Spangler Reports for which it is not possible, based on the description in the Spangler Reports, for Plaintiff to determine whether the case involved an allegation of unwanted touching short of non-consensual penetration, as well as any responsive ExComm cases not included in the Spangler Reports. For each such case, Plaintiff requests that Yale answer a and b, which are not discernable from the Spangler Reports.

11. We obviously disagree regarding the importance of Dr. Spangler's testimony to this case but appreciate the accommodation in scheduling her deposition.


Regards,
Christian


**From:** Pat Noonan [mailto:PNoonan@ddnctlaw.com]
**Sent:** Friday, June 23, 2017 12:47 AM
**To:** Kiely, Christian; James Flynn
**Cc:** Stern, Max D.; Deal, Alexandra
**Subject:** RE: Montague v. Yale et al

Hi Christian,

My notes reflect the following on the third set of Requests for Production:

1. You will check your records for the electronic calendars. I believe you have them. If you do, you will withdraw this RFP.

2. You will discuss this request with Jim Sconzo, who represents Roe. We agreed that the privilege belongs to her, and her lawyer would have to consult her about this request.

3. After we discussed the fact that compliance with this request would entail a discovery process of the same magnitude as the production which has already ensued in this case (since your RFP asks for "all documents" relating to a different UWC case), you agreed to consider narrowing this request so that we need not come up with a list of search terms, a list of custodians and conduct an extensive electronic discovery process on a different UWC case which will literally take months. Once you make a proposal, I will be in a position to discuss it with my client. If you are unable to narrow this request, you will need to seek an order; we simply can't agree to a request of this breadth.

4. We had a similar discussion on this one as on #3. The only difference is that this one would involve a number of additional UWC and Executive Committee cases. I can't imagine how long it would take to identify the cases, the custodians, the search terms and then conduct the electronic search. I suggested that you begin by reviewing the semi-annual Title IX reports (which list all cases) available on Yale's website. I believe you may be able to obtain all the information you need for both RFP's 3 and 4 by doing that.

5. Not applicable.

6. I agreed to list the documents on the privilege log.

7. I agreed to list the documents on the privilege log.

8. You agreed to narrow this one, recognizing that the breadth is many times larger than RFP's 3 and 4. The Yale Women's Center is a student organization with approximately 170 members. In addition there are 13 "umbrella organizations" which are associated with the Yale Women's Center. The number of members in each of those organizations is not known to me. The thought of trying to conduct a process to do an electronic search to assemble "all documents" from "all persons" who are "associated with" (I'm not sure how to define that phrase in this context) the Yale Women's Center is daunting to say the least. As I mentioned, this issue is complicated by the fact that Yale promises its students that the University will respect the confidentiality of the students' email communication. The university does not review those communications. If you can't narrow this one, we will stand on our objection.

We discussed the following on the third set of interrogatories:

1-4. There are no interrogatories with these numbers.

5. We have agreed to provide information on subparagraphs a and d. I agreed to inquire as to how burdensome it will be to assemble the rest of the information requested and then determine whether we can comply with reasonable effort.

6. You agreed to review the semi-annual Title IX reports and determine whether you have any legitimate need for additional information beyond that which is publicly available on Yale's website. You will then inform me of what else you believe you need and I will determine whether we can agree to produce it. We discussed the fact that the Judge has issued a ruling relating to some of these records, and Yale has serious

concerns about making any disclosure that would jeopardize the privacy interest of the expelled students.  While your client has actively sought publicity in this  matter, all others who  were expelled have worked to keep their cases confidential.

7.  We had, essentially, the same discussion on this interrogatory as we did on number 6.

8.We have already begun assembling this information.  None of the panel members interviewed to date has any notes. We will provide a complete response.

9.While I did not make a commitment to get an answer, I did agree to investigate how burdensome it will be to assemble the requested information.  I also noted that none of the information sought appears to relate in any way to this case; I also can't see how this information could possibly lead to the production of relevant information.  But I will make the inquiry and  report back.

10.We had a similar discussion as we did on numbers 6 and 7.  The only additional commitment was that I agreed to inquire whether the Executive Committee has a report similar to the semi-annual reports prepared by the Title IX office.   That may provide an efficient path for you to obtain the information you are seeking without imposing an undue burden.

11.You agreed to withdraw this interrogatory, and I agreed to find a date for a four hour deposition of Dr. Spangler after July 13, so as not to interfere with your vacation plans.  Once we do agree on a date, I would ask that you not change the date absent a true emergency given that Dr. Spangler, whose only involvement in this case was to attend a single meeting, has previously set aside time on three different occasions for a deposition only to have it cancelled at the last minute.  I was told at the time of the most recent cancellation that your firm had decided not to depose Dr. Spangler at all.

I did agree that you need not file a motion to compel prior to the end of fact discovery, and I will always try to agree on a briefing schedule.  However, we did not discuss an agreement in which I stated that I would never take the position that a motion was too late, no matter when it is filed.

I also agreed that I am happy to discuss a reasonable extension for you to file your expert reports, and I have no intention of insisting on the current date if you need more time.  I also told you that I would need to know the number of experts and the subject matters of expert testimony before I could agree to a substantial extension.  There are no further fact witnesses to be deposed other than Dr. Spangler, and she played no role in this case other than to attend a single meeting.  You already have deposed  other   participants to that meeting and we have produced all notes taken at that meeting.  You can make your decision now on the subject matters on which you intend to offer expert testimony.  When we inform me of the subject matters of expert testimony and the number of experts, I will be happy to discuss a schedule which gives you more time without jeopardizing my ability to conduct expert discovery and list experts of my own.

Pat

Patrick M. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT  06437
Tel:  203-458-9168
Fax: 203-458-4424

**From:** Kiely, Christian [mailto:ckiely@toddweld.com]
**Sent:** Thursday, June 22, 2017 2:48 PM
**To:** Pat Noonan; James Flynn
**Cc:** Stern, Max D.; Deal, Alexandra
**Subject:** Montague v. Yale et al


Pat,

I just wanted to confirm my understanding from our call this afternoon.

With regard to Yale's objections to Plaintiff's Third Set of Interrogatories and Document Requests, we are both going to do a bit of homework and touch base again before Wednesday of next week in an attempt to narrow the disputes with respect to burden in particular.  With respect to Request Nos. 6 and 7 to which you have objected on the basis of privilege, you are going to produce a privilege log that will allow us to assess that claim.  You have agreed to answer Interrogatory Nos. 8 and 9.  We will withdraw Interrogatory No. 11 contingent on your making Stephanie Spangler available for deposition after June 30.  In the event we reach an impasse and need to file a motion to compel, we will agree to a briefing schedule at that time (taking into account people's summer vacations, etc.) and you will not oppose such a motion on the basis that it was filed after the close of fact discovery or otherwise untimely.

Regarding our request to extend the expert discovery deadlines, you agree in principle to an extension, but will consider the specific dates I have proposed if we are willing to tell you how many and what types of experts we plan to disclose.

Regards,
Christian


Christian G. Kiely

 Todd&Weld LLP

Todd & Weld LLP
One Federal Street, Boston, MA  02110
Tel:  617.624.4729   Fax:  617.624.4829
www.toddweld.com

This e-mail, and any attachments thereto, is intended only for the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax penalties.

This e-mail, and any attachments thereto, is intended only for the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax penalties.

This e-mail, and any attachments thereto, is intended only for the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax penalties.