UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

JACK MONTAGUE,
Plaintiff,

v.

YALE UNIVERSITY, ANGELA GLEASON,
and JASON KILLHEFFER
Defendants.

CIVIL ACTION
No. 3:16-cv-00885-AVC

## PLAINTIFF JACK MONTAGUE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO YALE UNIVERSITY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Jack Montague ("Montague" or "Plaintiff") requests that Defendant Yale University ("Yale" or "Defendant") produce for inspection and copying all documents and things listed below at the offices of Todd & Weld LLP, One Federal Street, 27th Floor, Boston, Massachusetts 02110, within thirty (30) days of service of these requests.

### INSTRUCTIONS AND DEFINITIONS

#### Instructions

You are requested to state separately for each of the following numbered requests for production which documents will be produced for inspection and copying.

The following instructions and definitions apply to each document request and are incorporated by reference into each request. The document requests must be read in light of these instructions and definitions, and your answers must be responsive to the requests as so defined.

You shall produce all documents within your custody, possession or control, including documents in the possession of your attorneys, agents, employees, companies, trusts, representatives, servants, consultants, accountants, partners, trustees, advisors or investigators, regardless of the location of such document.

All documents should be produced in multi-page tiff format, with corresponding document level text files containing the OCR or extracted text. The filename of both the text and image files should correspond to the Bates number of the document. In addition, a Concordance Delimited File and an Opticon Image Cross Reference File should be provided. The delimiters should be Tilde (~) as the field separator and Caret (^) as the field qualifier.

For documents maintained electronically, the following fields should be included, at a minimum: Bates Begin, Bates End; Bates Begin Attach; Bates End Attach; Custodian/Source; To; From; CC; BCC; Subject/Title; Author; Date Created; Date Last Modified; Date Sent; Time Sent; Original Filename; Original File Path; Hash Value; Link to Text File; Link to Native File.

For any electronically stored comment that cannot be interpreted in TIFF format (including, but not limited to, spreadsheets, presentations, databases, logs, video and audio files), you should produce a Bates numbered TIFF placeholder and a native version of that file, with the native version named by its Bates numbers.

If you object to any document request, you shall so state, including your basis for the objection, in answer to the specific question you found objectionable. If only part of any document request is objectionable, you will answer the document request as fully as possible in addition to stating the objection, and its basis, to any remaining part.

Rules of Construction:

    a.    The singular shall include the plural and the plural shall include the singular;

    b.    A masculine, feminine, or neutral pronoun shall be construed to refer to all other gender pronouns;

    c.    "And" and "or" shall be construed conjunctively and disjunctively so as to bring within the scope of these document requests any documents that might otherwise be construed to be outside their scope;

    d.    "Any" shall be understood to include and encompass one or more and "all";

    e.    The present tense shall include the past tense, for example "are" shall include "were"; and

    f.    Unless otherwise stated, the relevant time period for these document requests is March 1, 2011, through the date of your response.

With respect to any document responsive to any of these requests that is withheld from production on the grounds that the document or any of its contents is privileged or otherwise not subject to production, Plaintiff requests that you produce within thirty (30) days of service of these document requests a list:

    a.    Identifying each particular document request to which you object and each specific ground upon which such objection is based; and

    b.    Specifying each withheld document or thing or portion thereof as follows:

        (i)    its date;

        (ii)    the general nature of the document or thing (e.g., whether it is a letter, chart, pamphlet, memorandum, etc.);

        (iii)    a summary of the contents or the general subject matter of the document or thing;

        (iv)    the identity of each other document or other thing transmitted with or attached to that allegedly privileged or discovery-immune document or thing;

        (v)    its present location and the identity of its current custodian;

        (vi)    the identity of each person who authored, prepared, or signed the document or thing;

(vii) a list identifying each person, including, but not limited to, addressees and designated copy recipients, to whom either the original or a copy of the document or thing has been disclosed, including the date and means of such disclosure;

(viii) the nature of the privilege, immunity, or other rule of law relied upon to withhold the information, document, or thing and the facts supporting your asserted reliance; and

(ix) any purportedly privileged or discovery-immune information or document that contains matter that is not privileged or immune from discovery must be produced with the purportedly privileged or discovery-immune portion excised.

Qualification of Answers: If your answer is in any way qualified, please state the exact nature and extent of the qualification.

Plaintiff specifically requests that you supplement your responses to these Requests as required under Fed. R. Civ. P. 26(e).

Unavailability of Document: To the extent that any documents falling within the requests below have been destroyed, lost, or misplaced, please identify those documents by type, author, date, number of pages and the date and manner in which the document was destroyed, lost, or misplaced.

If no documents exist which are responsive to a request, please state that no documents exist.

## Definitions

Plaintiff expressly incorporates herein the provisions of Fed. R. Civ. P. 26(b)(5) and Local Rules 26(b). In addition, the words and phrases set out below shall have the following meanings:

1.  The words "document" or "documents" shall have the same meaning as in Fed. R. Civ. P. 34 and Local Rule 26(b) and shall include all documents, "tangible things," and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34, and includes, without limitation, any written or graphic matter or other tangible thing of every kind or description, however produced or reproduced, whether draft, revision, or final, original or reproduction, including, but not limited to correspondence, letters, memoranda, notes, transcripts, minutes of meetings, intra-office and interoffice communications, reports, reports of consultants, forecasts, estimates, requests, claims, summaries, instructions, descriptions, analyses, inspections, schedules, specifications, statements, recommendations, inventories, studies, certificates, samples, permits, notices, return receipts, contracts, agreements, certifications, approvals, authorizations, records, charts, plans, lists, diagrams, diaries, desk calendar notations, messages, microfilm, microfiche, e-mails, photographs, magnetic disk or tape recordings, teletype messages, films, computer printouts, telegrams, news releases, newspapers, periodicals, books, bulletins, circulars, pamphlets, manuals, brochures, advertisements, directions, affidavits, waivers, accounting worksheets, bills, invoices, vouchers, credit memoranda, financial statements, statements of account, ledger sheets, statistical statements, appraisals, credit files, evidence of indebtedness, checks, promissory notes, receipts, instruments, or material similar to any of the foregoing, however denominated, which are in your possession, custody or control or to which you can obtain access.

2. The term, "you", "your", "Defendant", the "University" or "Yale" means Yale University and any and all employees, agents, representatives or others working on its behalf, including without limitation, members of Yale's administration, members of officially appointed Yale committees, and the Individual Defendants in this action.

3. "Complaint" shall mean the Complaint filed in this matter on June 9, 2016.

4. "Student Handbook" shall refer to all versions of the Yale Student Handbook in effect during the 2012/2013, 2013/2014, 2014/2015, and 2015/2016 academic years and shall include all Yale policies and procedures, including but not limited to, the Procedures Governing the University Wide Committee on Sexual Misconduct, Yale Sexual Misconduct Policies and Related Definitions, and Office of the Provost Statement on Confidentiality of UWC Proceedings.

5. "UWC Procedures" shall mean the Procedures Governing the University Wide Committee on Sexual Misconduct.

6. "Sexual Misconduct Polices" shall mean the Yale Sexual Misconduct Policies and Related Definitions.

7. "UWC I Complaint" shall mean the complaint filed by a female student against Jack Montague on or about August 25, 2013.

8. "Sally Smith" shall mean the female student who filed the UWC I Complaint against Jack Montague.

9. "UWC I Disciplinary Process" shall refer to any and all actions taken by any person or entity under the Student Handbook with regards to the UWC I Complaint against Jack Montague, including, but not limited to, review of the complaint, the investigation, the report of the investigation, the hearing, the deliberations and conclusions of the hearing panel,

determination of sanction, and all evidence presented and/or received as part of the investigation, hearing and/or appeal.

10. "UWC I Investigation" shall mean the investigation conducted in response to the UWC I Complaint.

11. "UWC I Hearing" shall mean the UWC hearing conducted on October 9, 2013, as part of the UWC I Disciplinary Process.

12. "UWC I Hearing Panel" shall refer to the panel of individuals that was charged under the UWC Procedures with hearing the evidence presented at the UWC I Hearing and deciding the outcome and sanctions against Montague.

13. "UWC I Fact-Finder's Report" shall mean the investigative report drafted by Timothy Pothin concerning the UWC I Investigation.

14. "UWC II Complaint" shall mean the complaint filed by Defendant Jason Killheffer against Jack Montague on or about November 18, 2015.

15. "Jane Roe" shall mean the female student whose interactions with Jack Montague are the subject of the UWC II Complaint.

16. "UWC II Disciplinary Process" shall refer to any and all actions taken by any person or entity under the Student Handbook with regards to the UWC II Complaint against Jack Montague, including, but not limited to, review of the complaint, the investigation, the report of the investigation, the hearing, the deliberations and conclusions of the hearing panel, determination of sanction, and all evidence presented and/or received as part of the investigation, hearing and/or appeal.

17. "UWC II Investigation" shall mean the investigation conducted in response to the UWC II Complaint.

18.   "UWC II Hearing" shall mean the UWC Hearing conducted on January 21, 2016, as part of the UWC II Disciplinary Process.

19.   "UWC II Hearing Panel" shall refer to the panel of individuals that was charged under the UWC Procedures with hearing the evidence presented at the UWC II Hearing and deciding the outcome and sanctions against Montague.

20.   "UWC II Fact-Finder's Report" shall mean the investigative report drafted by Miriam Berkman concerning the UWC II Investigation.

21.   "Individual Defendant" shall mean Angela Gleason or Jason Killheffer, and "Individual Defendants" shall mean both of them, collectively.

22.   "Education Record" means those records, files, documents, and other materials which contain information directly related to a student and are maintained by an educational institution, including by a law enforcement unit of the institution, or by a person acting for such agency or institution.

23.   References to the singular include the plural and vice versa, references to the past tense include the present tense and vice versa, disjunctive terms or phrases should be read to include the conjunctive and vice versa, references to "each" or "any" shall include "all" and vice versa, and the word "including" should be construed without limitation, so as not to exclude any document within the scope of or responsive to these requests.

## DOCUMENT REQUESTS

1.   All documents and communications concerning the UWC I Disciplinary Process, including those documents and communications concerning the application of the UWC Procedures or Sexual Misconduct Policies to Sally Smith's complaint.

8

2.  All documents and communications concerning Montague's sanction resulting from the UWC I Disciplinary Process, including those documents and communications concerning the Sexual Harassment and Assault Response Education ("SHARE") training Montague was ordered to complete in connection with his UWC I sanction.

3.  All documents and communications concerning the UWC I Investigation or the UWC I Fact-Finder's Report.

4.  Any and all communications between Yale, its employees, agents, representatives or others working on its behalf, and Sally Smith concerning any of the following:

   a. Montague;

   b. the UWC I Disciplinary Process;

   c. UWC Procedures and/or Sexual Misconduct Policies; and

   d. Sexual misconduct, including sexual harassment.

5.  All documents and communications received or prepared by any member(s) of the UWC I Hearing Panel concerning the UWC I Disciplinary Process, Sally Smith, the Student Handbook, the UWC Procedures, the Sexual Misconduct Policies, and/or any of the witnesses or evidence presented at the UWC I Hearing.

6.  All communications by and/or between the Individual Defendants and anyone else concerning Jane Roe.

7.  All documents and communications concerning or referring to the UWC II Disciplinary Process.

8.  Any and all communications between Yale, its employees, agents, representatives or others working on its behalf, and Jane Roe concerning any of the following:

   a. Montague;

      b. the UWC I Disciplinary Process;

      c. the UWC II Disciplinary Process;

      d. UWC Procedures and/or Sexual Misconduct Policies; and

      e. Sexual misconduct.

9. The complete Education Record of Montague, including but not limited to his transcript and all documents concerning his academic performance and participation in Yale extra-curricular activities.

10. All communications by and between Yale's employees, agents, representatives or others working on its behalf, including without limitation, those with responsibilities related to enforcement of the Student Handbook, compliance with Title IX, and UWC proceedings, concerning Jack Montague.

11. All documents and communications received or prepared by any member(s) of the UWC II Hearing Panel concerning the UWC I Disciplinary Process, Sally Smith, the UWC II Disciplinary Process, Jane Roe, the Student Handbook, the UWC Procedures, the Sexual Misconduct Policies, and/or any of the witnesses or evidence presented at the UWC II Hearing.

12. Any notes of any kind prepared by any Individual Defendants concerning Montague, Jane Roe, Sally Smith, the UWC I Disciplinary Process, or the UWC II Disciplinary Process.

13. All documents provided to any agents or employees of Yale or anyone appointed to serve on a UWC Hearing Panel concerning the operation, interpretation, or application of and/or training on UWC disciplinary proceedings from July 1, 2011, to the present.

14. Any and all public statements (*e.g.*, statements intended for: the media; the Yale student body as a whole or particular student groups; alumni; faculty/staff; or donors) made by

you at any time after March 1, 2011, regarding the UWC disciplinary process and the issue of sexual misconduct.

15. Please provide the following documents for each and every complaint or allegation of sexual misconduct received by Yale that was made by a University student or employee from March 1, 2011, to the present[1]:

    a. Complaint/allegation;

    b. Any findings made by Yale, including the UWC;

    c. Any document memorializing the outcome;

    d. Any decision resulting from an appeal; and

    e. Any public announcement related to the complaint/allegation and/or outcome.

16. All documents or reports filed with the United States Department of Education concerning Yale's Title IX compliance and/or incidents of alleged sexual misconduct at Yale.

17. All communications between you and the United States Department of Education concerning Yale's Title IX compliance and/or incidents of alleged sexual misconduct at Yale.

18. Any and all statistical compilations prepared by or on behalf of Yale concerning incidents of alleged sexual misconduct at the College, including but not limited to all Spangler reports and all other documents reporting the gender of the complainant and alleged perpetrator, the nature of the alleged misconduct, and the resolution or outcome of the complaint and any disciplinary process.

19. Any audits, reviews or analyses prepared by Yale or any third party relating to Yale's student disciplinary procedures, Yale's Sexual Misconduct Policies and Procedures, or Yale's compliance with Title IX.

---

[1] To protect the privacy of the students and/or employees named in these documents, Yale may use pseudonyms or initials in place of names. If Yale so elects, it must identify each student and/or employee's gender.

11

20. Any and all contracts between the University and any sexual misconduct investigators or fact-finders, including Miriam Berkman and Timothy Pothin.

21. All bills and/or time records submitted to Yale by Timothy Pothin for his work in preparing the UWC I Fact-Finder's Report.

22. All bills and/or time records submitted to Yale by Miriam Berkman for her work in preparing the UWC II Fact-Finder's Report.

23. All notes, journal/diary entries, recordings, transcripts, or other memoranda by Timothy Pothin relating to the UWC I Disciplinary Process.

24. All notes, journal/diary entries, recordings, transcripts, or other memoranda by Miriam Berkman relating to the UWC II Disciplinary Process.

25. All communications between Yale, its employees, agents, representatives or others working on its behalf, and Timothy Pothin relating to the UWC I Disciplinary Process and/or Pothin's role as a fact-finder generally or with respect to the UWC I Disciplinary Process.

26. All communications between Yale, its employees, agents, representatives or others working on its behalf, and Miriam Berkman relating to the UWC II Disciplinary Process, the UWC I Disciplinary Process, and/or Berkman's role as a fact-finder generally or with respect to the UWC II Disciplinary Process.

27. All documents and communications dated from January 1, 2012 to present concerning revisions (including proposed revisions, regardless of whether they were adopted) to the Student Handbook's Sexual Misconduct Policies and Procedures and the UWC Procedures.

28. All documents and communications which discuss, state, or comment on whether UWC proceedings are confidential, including whether a sanction received in a UWC proceeding is confidential.

29. All documents and communications concerning Yale's September 9, 2013 Sexual Misconduct Scenarios, attached to the Complaint at Exhibit 1.

30. All documents and communications concerning any federal investigations of Yale's compliance with Title IX.

31. All documents and communications concerning media/press coverage of sexual misconduct at the University or Title IX compliance at the University from March 1, 2011 to the present. Responses to this request shall include, without limitation, all communications by Yale (including all individual defendants and Yale's agents and employees) to any Yale agent or employee (internal or external to Yale) tasked with managing Yale's public relations.

32. All documents or communications created after March 1, 2011, concerning the issue of sexual misconduct and allegations of sexual misconduct at Yale, or Yale's compliance with Title IX, that were directed to any of the following:

    a. Anyone performing Title IX responsibilities at Yale;

    b. Anyone with responsibilities under Yale's student disciplinary process;

    c. Anyone acting as a sexual assault counselor;

    d. Any member of the University Wide Committee on Sexual Misconduct;

    e. United States Department of Education, the Office of Civil Rights, or any other federal agency, department or authority;

    f. Any of the Individual Defendants;

    g. Any internal or external public relations professional or public relations firm;

    h. Anyone employed in the Dean of Students Office; or

      i.      Student or alumni groups which advocate on issues related to sexual misconduct, including Students Against Sexual Violence at Yale ("SASVY").

33.    All policies of liability insurance and/or umbrella or excess policies that may operate to provide liability insurance coverage to Defendant Yale University for personal injury and emotional distress caused by one or more persons arising from the circumstances alleged in the Complaint.

34.    All documents and communications concerning the September 2015 survey conducted by the Association of American Universities ("AAU") concerning the issue of sexual assault on college campuses.

35.    Any and all documents and communications by or between members of Yale's administration concerning publicity received by Yale concerning the issues of sexual misconduct, discipline for or failure to discipline those found responsible for sexual misconduct, or compliance with Title IX.

Respectfully submitted,

JACK MONTAGUE,

By his attorneys,

*/s/ Hillary A. Lehmann*

Max D. Stern (BBO #479560)
mstern@toddweld.com
Alexandra H. Deal (BBO #660654)
adeal@toddweld.com
Hillary A. Lehmann (BBO #683657)
hlehmann@toddweld.com
TODD & WELD LLP
One Federal St., 27th Floor
Boston, MA 01880
Tel. (617) 720-2626
Fax (617) 227-5777

Dated: September 13, 2016

**CERTIFICATE OF SERVICE**

I, Hillary A. Lehmann, hereby certify that on this 13th day of September, 2016 copies of Plaintiff Jack Montague's First Request for Production of Documents to Yale University were served via electronic mail and First Class mail upon counsel of record as follows:

Patrick Noonan, Esq.
Colleen Doyle Davis, Esq.
Donahue Durham & Noonan, PC
741 Boston Post Road
Guilford, CT 06437
cdavis@ddnctlaw.com
pnoonan@ddnctlaw.com

*/s/ Hillary A. Lehmann*
Hillary A. Lehmann

15