EXHIBIT A

         UNITED STATES DISTRICT COURT
           DISTRICT OF CONNECTICUT


                            CIVIL ACTION NO.:
                            3:16-CV-00885-AVC
JACK MONTAGUE,

                    Plaintiff

vs.



YALE UNIVERSITY, ET AL,

                    Defendants


          DEPOSITION OF SUSANNA B. MURPHY,

taken pursuant to Notice under the applicable

provisions of the Massachusetts Rules of Civil

Procedure, on behalf of the Defendants, before

Elisheva Eis, a Notary Public in and for the

Commonwealth of Massachusetts, at the office of

Todd & Weld LLP, One Federal Street, Boston, MA

02110, commencing on Friday, October 20th,

2017, at 10:49 a.m.



```
 1          in some form.

 2    Q     With regard to your billing records that you

 3          have maintained over the last week, is it just

 4          a billing record as opposed to any notations

 5          about the substance of things?

 6    A     Typically, I keep a run sheet that includes my

 7          time, sometimes includes a reminder to myself

 8          of something else I want to look into or focus

 9          on.  I'm pretty sure that over the last week it

10          has more to do with just my time, but I'm not

11          100 percent certain that there isn't one line

12          in there that isn't more substantive.

13    Q     Fair enough.

14              MR. KIELY:  Can we go off the record for a

15          second?

16              (A discussion was held off the record.)

17    Q     And did you make any summary for yourself of

18          the case, either within the last week or as it

19          went along, just to sort of -- as a memory

20          tool, if you will?

21    A     Nothing I would call a summary.

22    Q     Do you have some kind of notes that helped you

23          remember things?

24    A     From the last week, are you asking, or in
```



1          preparation of my report?

2    Q     Well, yes, both, actually.  But we can do it

3          one at a time.  For preparation of the

4          deposition, did you review handwritten notes,

5          typewritten notes, things that you looked at in

6          order to refresh your recollection about this

7          case?

8    A     Yes, I would say I took some notes.

9    Q     And that was in connection with just refreshing

10         your recollection of the facts of the case?

11   A     Yes.  But I wouldn't categorize it as a

12         summary.

13   Q     Fair enough.  In other words, it wasn't

14         exhaustive.  It was just some things that you

15         wrote down in order to remember them?

16   A     Correct.

17   Q     And where are those notes?

18   A     In my file.

19   Q     Not here?

20   A     Yes, here.

21   Q     And were they notes that you took yourself?

22   A     Yes.

23   Q     In other words, it didn't reflect input from

24         the lawyers?



```
 1    A     No, no.
 2              MR. NOONAN:  So I'd like to be able to
 3          look at those.
 4              MR. KIELY:  So I would say that I have
 5          reviewed the notes to which Ms. Murphy is
 6          referring, and they either are in the form of
 7          notes of communications with counsel, which are
 8          protected work product, or notes prepared in
 9          the process of drafting her report, which are
10          also protected work product.  On that basis, we
11          would not be producing them.
12    Q     Let me ask you.  The notes that you prepared in
13          the last week, that you just said you did
14          without input from counsel, you didn't do those
15          to prepare your report, which was done some
16          months ago, correct?
17    A     Right, not what I prepared for today.
18    Q     So the notes that you were preparing over the
19          last week were prepared some months after you
20          prepared your report, correct?
21    A     Some were based on conversations with counsel,
22          and some just to trigger -- not trigger my
23          memory but for me to sort of focus on for
24          today.
```



```
 1   Q    Right, fair enough.  But am I correct that none
 2        of the notes you prepared in the last week were
 3        prepared in connection with drafting your
 4        report?
 5   A    Well, I think by the form of your question,
 6        you're answering your own question.  If I
 7        prepared them this week, I did not prepare them
 8        months ago, correct.
 9   Q    I only asked that because Attorney Kiely just
10        indicated that these notes included materials
11        that you used in drafting your report, and it
12        appears that that's not the case, correct?
13             MR. KIELY:  Objection.
14   A    You want me to opine on why you formed the
15        question based on Attorney Kiely's --
16   Q    No.  Actually, you were suggesting that my
17        question answered itself, and I just wanted you
18        to understand the reason I asked the question
19        is Attorney Kiely just represented that he had
20        looked at the notes, and that they represented
21        things that you used in formulating your
22        report.
23   A    I assumed that's why you asked the question,
24        yes.
```



| | | |
|---|---|---|
| 1 | Q | I just want to be clear, because we may have to |
| 2 | | file a motion.  I want to understand.  The |
| 3 | | notes you prepared in the last week that we've |
| 4 | | been talking about for the last few minutes are |
| 5 | | not notes that you prepared in connection with |
| 6 | | drafting your report; am I correct in that |
| 7 | | note? |
| 8 | A | Correct.  But some of them do have to do with |
| 9 | | conversations with counsel. |
| 10 | Q | Understood. |
| 11 | | MR. NOONAN:  So Christian, can I get the |
| 12 | | ones that don't have to do with conversations |
| 13 | | with counsel? |
| 14 | | MR. KIELY:  I would have to look at them |
| 15 | | more closely.  I do not agree that just because |
| 16 | | the notes do not exclusively reflect |
| 17 | | conversations with counsel, that they are not |
| 18 | | protected work product on some other basis or |
| 19 | | common law.  I will review these notes and will |
| 20 | | get back to you on whether we can produce them |
| 21 | | in some form. |
| 22 | | MR. NOONAN:  So you're not able to do that |
| 23 | | now while I am here trying to take the |
| 24 | | deposition? |



```
 1              MR. KIELY:  You want to take a short
 2        break?
 3   Q    Let me ask you, how many pages are we talking
 4        about, best estimate?  Is it 150?
 5   A    Four, five, six.
 6              MR. NOONAN:  If it's only half a dozen
 7        pages, let's take a break.
 8              MR. KIELY:  Sure.
 9              (A brief recess was held.)
10              (Documents were marked as Exhibits M-S for
11        identification.)
12              MR. NOONAN:  I think where we are is,
13        Christian, you are going to consider showing me
14        those notes, but you can't do it right now.
15              MR. KIELY:  Actually, Ms. Murphy wants to
16        clarify a prior answer, and then we can discuss
17        as needed.
18   Q    Is that true?  You'd like to clarify your prior
19        answer after having a break when you spoke with
20        Attorney Kiely; is that correct?
21   A    Yes.
22   Q    Okay.  Go ahead.
23   A    So the notes that I've taken this week were
24        taken after and reflect consultation with
```



```
 1            counsel.

 2    Q    And you do acknowledge that you told me before

 3         the break that they did not all include things

 4         discussed with counsel, correct?

 5            MR. KIELY:  Objection.

 6    A    Yes.  Some were contemporaneous with

 7         conversations with counsel and some I made

 8         following my conversation with counsel, but do

 9         indeed reflect my communications with counsel.

10    Q    And you have those notes here?

11    A    Yes.

12    Q    Okay.  I don't want to look at them, but can

13         you just mark them as an exhibit, and you're

14         going to keep the original.  Can we put an

15         exhibit sticker on, just so we know what they

16         are.  We can count the pages and put an exhibit

17         sticker on it, which the witness will keep.

18            MR. KIELY:  That's fine.

19    A    Right now?

20    Q    Yes, if you don't mind.

21    A    Including those that are contemporaneous with

22         my conversations with counsel?

23    Q    Yes.  Whatever notes you prepared in the last

24         week or two when you were preparing for trial.
```



| | | |
|---|---|---|
| 1 | | And how many pages? |
| 2 | A | Eleven. |
| 3 | Q | So we will mark as Exhibit T, 11 pages of |
| 4 | | handwritten notes from Attorney Murphy, and |
| 5 | | which Attorney Murphy will keep, depending on |
| 6 | | the decision by the trial judge on whether they |
| 7 | | should be disclosed or not. |
| 8 | | (Notes were marked as Exhibit T for |
| 9 | | identification.) |
| 10 | Q | And now, I think you indicated you also have |
| 11 | | some notes which you created before you |
| 12 | | prepared your report?  Or I should say before |
| 13 | | your deposition preparation, whether it's |
| 14 | | before or after you prepared your report? |
| 15 | A | The only other notes I have were in preparation |
| 16 | | of the report. |
| 17 | Q | Okay.  And where are those? |
| 18 | A | In my file. |
| 19 | Q | Okay.  Is that here? |
| 20 | A | Here, yes. |
| 21 | Q | Okay.  Can we just get those and mark those as |
| 22 | | the next exhibit? |
| 23 | | (Notes were marked as Exhibit U for |
| 24 | | identification.) |



SUSANNA B. MURPHY                                  October 20, 2017
MONTAGUE vs YALE UNIVERSITY                                     22

 1    Q    We have marked as Exhibit U a collection of
 2         notes, handwritten notes, that you created.
 3         And were those all created before you generated
 4         your report?
 5    A    Yes.
 6    Q    And do you have any other notes, besides
 7         Exhibits T and U?
 8    A    Do you mean have I created other notes?
 9    Q    Yes.
10    A    I have.  For instance, notes of conversations
11         with counsel in what I call my run sheet, which
12         I referred to earlier, which also includes time
13         that I've written on things, thoughts of things
14         I need to follow up on.
15    Q    And you don't have your run sheet here?
16    A    Correct.
17    Q    And your run sheet includes what?  Just tell me
18         what categories it includes.
19    A    What categories it includes?  Time that I've
20         spent on various tasks, expenses incurred,
21         conversations with counsel, potentially,
22         thoughts of things I want to come back to.  I
23         think that's it.
24    Q    Okay.  Now, with regard to the things you want



```
 1        to come back to, those are things that you were

 2        thinking of, not things that your lawyers were

 3        thinking of; is that right?

 4             MR. KIELY:  Objection.

 5   A    It could be either.

 6   Q    But there are some things that you were

 7        thinking that you wanted to come back to?

 8   A    I'm just telling you what I typically include

 9        in a run sheet.  I did not review my run sheet

10        before I came here today or in preparation for

11        this.  So I can't really tell you exactly

12        what's in this run sheet.

13   Q    So it sounds like some of the run sheet

14        reflected conversations with counsel and some

15        didn't; is that a fair statement?

16             MR. KIELY:  Objection.

17   A    I'm sorry.  Can you repeat the question?

18   Q    Is it true that some of the materials in the

19        run sheet reflects communications you had with

20        counsel and some did not?

21   A    They might.  I just can't tell you

22        specifically.  Sometimes I take notes on a

23        legal pad.  Sometimes I'm at my computer, I put

24        it right in.  I don't know what I did and
```



```
 1        didn't include in this run sheet.  It's
 2        possible there's nothing.  It's possible there
 3        is some substance of conversations in there.
 4   Q    So the run sheet does include some materials
 5        that don't reflect conversations with counsel,
 6        correct?
 7   A    If you mean by materials the time that I worked
 8        on something, yes, that would be in the run
 9        sheet.
10   Q    And you're not sure what else is in the run
11        sheet?
12   A    Exactly.
13   Q    Other than your time and expenses?
14   A    Correct.
15            MR. KIELY:  Pat, if I can just stop you
16        for a minute.  I don't believe we put on the
17        record the normal stipulations.  I will reserve
18        objections except as to form and privilege for
19        the time of trial.  The witness will read and
20        sign, and you'll waive the notary requirement?
21            MR. NOONAN:  Absolutely.
22            MR. KIELY:  Okay.  Thank you.
23   Q    So your run sheet, you've never even shown to
24        counsel, it sounds like; is that a fair
```



| | | |
|---|---|---|
| 1 | | statement? |
| 2 | A | Yes, that's a fair statement. |
| 3 | Q | And with regard to Exhibits T and U, which are |
| 4 | | the ones that we're leaving in your possession, |
| 5 | | did you review both those exhibits in preparing |
| 6 | | for the deposition? |
| 7 | A | I'm not sure if I reviewed the notes that I |
| 8 | | made in preparation of my report. |
| 9 | Q | Okay.  So that would be Exhibit U? |
| 10 | A | I believe so. |
| 11 | Q | But you do recall reviewing Exhibit T to |
| 12 | | prepare for your deposition? |
| 13 | A | Yes.  They were created in that vein. |
| 14 | Q | Now, I know you said earlier that you actually |
| 15 | | haven't participated in a deposition before as |
| 16 | | a -- well, either as a lawyer or as a witness? |
| 17 | A | Correct. |
| 18 | Q | And I know you've had your fair share of trials |
| 19 | | as a lawyer.  Have you ever participated in a |
| 20 | | trial as a witness? |
| 21 | A | I have. |
| 22 | Q | And can you tell me how many times? |
| 23 | A | I can't tell you exactly.  They've all been |
| 24 | | criminal trials. |



| | | |
|---|---|---|
| 1 | | investigations? |
| 2 | A | No. |
| 3 | Q | And do you know Brett Sokolove? |
| 4 | A | Not personally. |
| 5 | Q | Do you know anyone at ATIXA that you would |
| 6 | | recommend? |
| 7 | A | I don't know any of these people personally. |
| 8 | Q | I was going to ask you about the Clery Center, |
| 9 | | but you don't know them either? |
| 10 | A | No. |
| 11 | Q | So you've never talked to anybody who actually |
| 12 | | does the Title IX training for investigators? |
| 13 | A | Well, I've attended trainings, so yes, I have |
| 14 | | spoken to them.  I just don't know them on a |
| 15 | | personal level. |
| 16 | Q | And what trainings have you attended for Title |
| 17 | | IX investigations? |
| 18 | A | I don't know that I know the titles off the top |
| 19 | | of my head.  I believe they are on my resume. |
| 20 | | Intersection of Title IX and Clery Act.  I |
| 21 | | think it's at the bottom of my resume or the |
| 22 | | back page. |
| 23 | Q | So it says ATIXA, member of Title IX |
| 24 | | investigators.  Oh, this is all one thing. |



1          Addressing sexual assault allegations, K-12

2          schools, colleges, and universities.  Is that

3          the seminar you were talking about?

4     A    I think that may have been offered at Mass.

5          Continuing Legal Education.

6     Q    Underneath it it says you attended in October

7          of 2014, sponsored by the Massachusetts Bar

8          Association.  Does that make sense?

9     A    Yes.

10    Q    And how long was that program?

11    A    It was, I believe, a one-day program.

12    Q    And when you say one day, do you have any idea

13         how many hours?

14    A    I don't remember.

15    Q    Was it three or four hours?

16    A    I don't remember.

17    Q    You don't know, okay.

18              And do you still have those materials that

19         were published in connection with that program?

20    A    I'm not sure.

21    Q    If you have them, can you get them to

22         Christian?

23    A    Sure.

24    Q    And have you attended any other programs



1    A    I don't have a specific memory of reading that,

2         but it may well be in there.

3    Q    I'm not asking you about Yale's policies now.

4         You're knowledgeable on the federal

5         government's requirements in Title IX and VAWA

6         and the Clery Act, right?

7    A    Yes.

8    Q    In fact, you claim to be an expert on those

9         subjects, right?

10   A    Yes.

11   Q    Is it true that the federal government requires

12        that institutions allow a complainant to end an

13        informal process at any time and to switch to a

14        formal process?

15             MR. KIELY:   Objection.

16   A    Yes.

17   Q    There's no doubt in your mind about that?

18   A    No.

19   Q    And in fact, the federal government requires

20        that institutions like Yale actually tell their

21        students that they have a right at any time to

22        terminate an informal process and move to a

23        formal complaint; isn't that right?

24   A    I believe these institutions have an



```
 1                  C E R T I F I C A T E

 2       DISTRICT OF MASSACHUSETTS

 3

 4            I, Elisheva Eis, a Notary Public within

 5       and for the Commonwealth of Massachusetts, do

 6       hereby certify:

 7            That SUSANNA B. MURPHY, the witness whose

 8       deposition is hereinbefore set forth, was duly

 9       sworn by me and that such deposition is a true

10       record of the testimony given by the witness.

11       The witness has requested a review of the

12       transcript pursuant to Rule 30(e)(1).

13            IN WITNESS WHEREOF,  I have hereunto set

14       my hand and notarial seal this 2nd day of

15       November, 2017.

16

17       _____
                        Elisheva Eis
18

19       My Commission Expires: July 22nd, 2022

20            THE FOREGOING CERTIFICATION OF THIS

21       TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION

22       OF THE SAME BY ANY MEANS UNLESS UNDER THE

23       DIRECT CONTROL AND/OR DIRECTION OF THE

24       CERTIFYING REPORTER.
```

