UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JACK MONTAGUE | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:16-CV-00885-AVC |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | |
| Defendants | : | NOVEMBER 10, 2017 |

**MOTION TO COMPEL RE:  PUBLIC RELATIONS FIRM, FUNDRAISING FOR LEGAL FEES, AND MEDICAL RECORDS; AND MEMORANDUM IN SUPPORT**

The defendants hereby move to compel the following: (1) answers to the questions posed at the deposition of the plaintiff's father, James Montague, regarding the public relations firm engaged by the plaintiff to publicize the plaintiff's position in this lawsuit and fundraising for the plaintiff's legal fees; (2) documents exchanged between the public relations firm and Kelly Montague (the plaintiff's mother), James Montague, the plaintiff, and/or plaintiff's counsel; and (3) medical records relating to the plaintiff's treatment for difficulties with his memory and/or auditory processing.

In connection with the first request, the defendants request permission to convene a second deposition session of James Montague, at the plaintiff's expense, so that the questions can be posed to him and answered. The defendants also request that this session be held without anyone else present besides the deponent, the court stenographer, and counsel for the parties. At the depositions of Kelly Montague and James Montague on June 21, 2017,

plaintiff's counsel, Attorney Max Stern, refused to proceed with the depositions unless Mr. Montague was permitted to be present during Mrs. Montague's deposition, and vice versa. He claimed that Mrs. Montague and Mr. Montague felt that they needed to be present at each other's depositions for support.[1]  (Depo. Kelly Montague June 21, 2017, at pp. 3-5.)  Since defense counsel had incurred expenses to take the depositions in Tennessee, the depositions proceeded over defense counsel's objection to the presence of Mr. and Mrs. Montague during each other's depositions. Local Rule 30(a) provides that depositions are private proceedings which the public is not entitled to attend. Contrary to Attorney Stern's belief, a "special reason" and permission from the Court to exclude a non-party from a deposition is not required: "Any person other than the witness being deposed, the parties to the action, the parent of a minor deponent, counsel for the witness or any party, or any person who has been disclosed by any party as an expert witness in the case shall, at the request of counsel for any party, or the witness, be excluded from the hearing room while the deposition of any person is being taken." L. Rule Civ. P. 30(a).

I.      **Procedural Background**

At his deposition on June 21, 2017, James Montague claimed that he was represented by plaintiff's counsel.[2]  (Depo. Jim Montague June 21, 2017, at p. 11.)  Mr. Montague admitted that he paid the fees of the public relations firm that had been retained to assist with the plaintiff's publicity campaign. (Depo. Jim Montague June 21, 2017, at pp. 87, 89.)

---

[1] Copies of relevant portions of Kelly Montague's deposition transcript are attached hereto as Exhibit A.

[2] Copies of relevant portions of James Montague's deposition transcript are attached hereto as Exhibit B.

However, plaintiff's counsel then instructed Mr. Montague not to answer any further questions regarding the retention of, payment for, or communications with the public relations firm. Plaintiff's counsel claimed that some of the communications were protected by attorney-client privilege. He also claimed that the information was irrelevant and not likely to lead to admissible evidence. (Depo. Jim Montague June 21, 2017, at pp. 87-92.)

At the first session of his deposition, the plaintiff testified that following his expulsion form Yale he attempted to apply to Vanderbilt University, but was unable to obtain his transcript from Yale University due to an outstanding bill for unpaid tuition of approximately $3,000. Rather than pay that bill to obtain his transcript and apply to Vanderbilt University, the plaintiff decided to fund his lawsuit against Yale University and engage a public relations firm to publicize his claim that he had been wrongfully expelled.[3] (Depo. Jack Montague March 30, 2017, at pp. 34-38.) The plaintiff also testified that his teammates had established a Fundly account to raise money for the plaintiff's fees for his attorney and publicist, which had raised between $3,000 and $4,000. In addition, alumni had contributed between $25,000 and $30,000 to his legal fund. (Depo. Jack Montague March 30, 2017, at pp. 195-197.) The plaintiff indicated that his parents paid his legal fees and the fees of the public relations firm directly, not through his lawyer. (Depo. Jack Montague March 30, 2017, at p. 198.)

---

[3] Copies of relevant portions of the plaintiff's March 30, 2017 deposition transcript are attached hereto as Exhibit C.

Following the first session of his deposition, the plaintiff submitted an errata sheet with 73 changes to his testimony.[4] The vast majority of these changes were not typographical; but represented wholesale changes to the substance of his testimony. These extensive changes to the plaintiff's deposition testimony necessitated a second deposition.

At the second session of his deposition, the plaintiff testified that he had difficulty with his memory and that he had scheduled an appointment for September, 2017 to evaluate that issue.[5] (Depo. Jack Montague August 17, 2017, at pp. 14-19.) In his errata sheet to the second session of his deposition, the plaintiff indicated that he had made an appointment in September to be evaluated, not for a problem with his memory, but for "an auditory processing disorder."[6]

## II.     Argument

### A.     Public Relations Firm and Fundraising for Legal Fees

#### 1.     Questions Posed to James Montague

Plaintiff's counsel asserted that the questions posed by defense counsel at Mr. Montague's deposition regarding the public relations firm were protected by the attorney-client privilege. The plaintiff asserts both federal and state law claims in this case, and therefore federal law governs the application of the attorney-client privilege. Marsh v. Safir, 2000 U.S. Dist. LEXIS 5136 (S.D.N.Y. April 21, 2000). "To invoke the attorney-client

---

[4] A copy of the Errata Sheet for the March 30, 2017 deposition transcript is attached hereto as Exhibit D.

[5] Copies of relevant portions of the plaintiff's August 17, 2017 deposition transcript are attached hereto as Exhibit E.

[6] A copy of the Errata Sheet for the August 17, 2017 deposition transcript is attached hereto as Exhibit F. In addition to making substantive changes to his own testimony, the plaintiff made changes to the questions asked by both defense counsel and plaintiff's counsel.

4

privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. The privilege does not extend to communications made exclusively or predominantly for purposes other than obtaining the legal services of an attorney." (Internal citations omitted.) Id. at *24-25.

None of the questions posed to Mr. Montague regarding the public relations firm and the fundraising for legal fees sought information regarding a communication between the plaintiff and his counsel made for the purpose of obtaining or providing legal advice. The amount of fees charged by the public relations firm is not related to the provision or receipt of legal advice and disclosing the amount paid to the public relations firm will not divulge any privileged communications. Moreover, as explained in greater detail below, the attorney-client privilege does not apply to a public relations firm.

According to the plaintiff's testimony, providing information regarding the fundraising efforts also will not divulge any privileged communications. The plaintiff testified that his teammates had established a Fundly account to raise money for the plaintiff's fees for his attorney and publicist and that alumni had contributed to his legal expense fund. These activities did not involve plaintiff's counsel, and therefore providing information regarding the fundraising efforts will not divulge any privileged communications.

Plaintiff's counsel also claimed that the questions regarding the public relations firm and fundraising for the plaintiff's legal fees were irrelevant and would not likely lead to admissible evidence. The defendants submit that the amount of money that has been paid to

the public relations firm and the amount of money raised to fund this lawsuit is relevant to the issue of damages. In his claims for damages, the plaintiff alleges that, as a result of the defendants' wrongful conduct, "his academic and employment prospects – indeed, his entire future prospects – have been materially and drastically limited." He further claims loss of educational and employment opportunities. (Amended Complaint, at ¶¶ 211, 218, 228, 253, 309, 316.) The plaintiff is required to mitigate his damages. Applying to other colleges and universities to complete his education would be one way to mitigate the loss of educational and employment opportunities. The amount of money which the plaintiff has paid to his public relations firm and which has been raised for his legal fees is certainly relevant, as those funds could have been used to pay the outstanding bill at Yale University and obtain his transcript, thereby enabling him to apply to other colleges and universities in a timely manner.

Since plaintiff's counsel instructed Mr. Montague not to answer questions regarding the public relations firm and the fundraising efforts for the plaintiff's legal fees, the defendants request that the plaintiff be compelled to produce Mr. Montague for a second deposition limited to those two topics, and that the plaintiff be required to pay the expenses for said deposition.

      2.   <u>Documents exchanged between the public relations firm and Kelly Montague, James Montague, the plaintiff, and/or plaintiff's counsel</u>

The defendants submit that the communications with the public relations firm were made for the purpose of publicizing the plaintiff's position that he was wrongfully expelled through the media, and not to obtain legal services, and that the attorney-client privilege does not extend to the public relations firm. The plaintiff certainly did not require the service of the

6

public relations firm to file this lawsuit or to prosecute it. Therefore, the plaintiff should be compelled to produce documents exchanged between the public relations firm and Mrs. Montague, Mr. Montague, the plaintiff, and/or plaintiff's counsel because such communications are not protected by the attorney-client privilege or the work product doctrine.

It should be noted at the outset that the party claiming a privilege has the burden of establishing it: thus the present defendants need not prove that the privilege does not apply. Pritchard v. County of Erie (In re County of Erie), 473 F.3d 413, 418 (2d Cir. 2007); In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).

McNamee v. Clemens, 2013 U.S. Dist. LEXIS 179736 (E.D.N.Y. September 18, 2013), is instructive. In that case, the plaintiff sought to compel the production of all communications between the defendant and the public relations firm which had been withheld on the grounds of attorney-client privilege and work product. The defendant argued that the public relations firm was a member of his legal team, and therefore the communications were privileged. Id. at *2-3. The district court acknowledged that the attorney-client privilege may be expanded to those assisting a lawyer in representing a client, such as public relations consultants. However, the court explained: "[I]t is not sufficient that communications with a PR Firm prove important to an attorney's legal advice to a client. Instead, the 'critical inquiry' is whether the communication with the person assisting the lawyer was made in confidence and for the purpose of obtaining legal advice…. The communication itself must be primarily or predominantly of a legal character…. If the advice sought is that of a non-legal professional

7

rather than a lawyer, no privilege exists." (Internal quotations and citations omitted.) Id. at *18-19. The district court's *in camera* review of the documents revealed that the majority of the communications facilitated the development of a public relations campaign and media strategy primarily aimed at protecting the defendant's public image and reputation in the face of allegations that he used performance-enhancing drugs. In addition, the vast majority of documents that potentially related to litigation seemed designed to manage the public's perception of the defendant as opposed to discussing legal strategy. Accordingly, the district court concluded that the communications with the public relations firm were not protected by the attorney-client privilege. Id. at *20-22.

The district court also concluded that the work product doctrine did not protect the communications from disclosure. The *in camera* review revealed that the topic of litigation strategy was rarely mentioned and in the rare instances it was brought up, it was contained within communications predominately focused on public relations and media strategy. The district court observed: "Although the communications sought may have ultimately 'played an important role' in [defense counsel's] litigation strategy, as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine…. That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." (Internal citations omitted.) Id. at *25-26. Since the communications with the public relations

firm dealt almost exclusively with the effects of the litigation, the district court found that they were not protected from disclosure under the work product doctrine. Id. at *26.

The district court in Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53 (S.D.N.Y. 2000), reached the same conclusion. In that case, the defendants sought to compel production of documents and testimony from the public relations firm engaged by plaintiff's counsel. Id. at 54. The district court observed that only communications which revealed confidential communications from the plaintiff made for the purpose of obtaining legal advice were protected by the attorney-client privilege. The possibility that communications between the public relations firm and plaintiff's counsel may help plaintiff's counsel formulate legal advice was not sufficient to implicate the privilege. Furthermore, even if the documents contained confidential communications with the client which were originally made for the purpose of seeking legal advice, their disclosure to the public relations firm waived the attorney-client privilege, since the public relations firm was simply providing ordinary public relations advice. Id. The fact that the public relations firm's activities "may also have been helpful to [plaintiff's counsel] in formulating legal strategy is neither here nor there if [the public relations firm's] work and advice simply serves to assist counsel is assessing the probable public reaction to various strategic alternatives, as opposed to enabling counsel to understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice." Id. at 55. The district court also explained that the attorney-client privilege must be narrowly construed: "Nothing in the policy of the privilege suggests that attorneys, simply by placing…[a public relations firm] on their payrolls…should be able

to invest all communications by clients to such person with a privilege the law has not seen fit to extend when the latter are operating under their own steam." Id. at *55.  For the foregoing reasons, the court determined that the communications were not protected by the attorney-client privilege.  Id. at 54.

As to the work product doctrine, the district court found that only a small number of documents were protected from disclosure.  The court explained that an otherwise valid assertion of the work product doctrine was not waived with respect to the attorney's work product when the attorney provided the work product to a public relations firm and the public relations firm maintained the work product in confidence.  Accordingly, it found that only those documents which were drafted by counsel or which reflected counsel's work product were protected from disclosure.  Id. at 55.

The present defendants submit that the public relations firm was engaged to provide ordinary public relations advice, and therefore, the attorney-client privilege does not protect the documents exchanged between the public relations firm, Mrs. Montague, Mr. Montague, the plaintiff, and/or plaintiff's counsel.  Furthermore, there is nothing confidential about the work of the public relations firm, which was engaged specifically for the purpose of making public – not keeping confidential – the plaintiff's claim that he had been wrongfully expelled.  To that end, the public relations firm actually issued a public statement before the present lawsuit was filed.[7]  (Depo. Jack Montague March 30, 2017, at p. 202.)  The defendants request an *in camera* review of the documents exchanged between the public relations firm and Mrs.

---

[7] A copy of the March 14, 2016 press release is attached hereto as Exhibit G.  The plaintiff did not file this lawsuit until June 9, 2016.

Montague, Mr. Montague, the plaintiff, and/or plaintiff's counsel to determine whether any are protected from disclosure by the work product doctrine.

### B. Medical Records

The plaintiff first disclosed his difficulties with memory at the second session of his deposition on August 17, 2017, noting that he had made an appointment for an evaluation in September, 2017. He later changed his testimony to indicate that he had made an appointment to be evaluated for an auditory processing disorder. See, Exhibit F at, p. 2. Although plaintiff's counsel initially agreed to provide medical records regarding the plaintiff's memory and/or auditory processing difficulties, the plaintiff has not yet produced any medical records whatsoever. The evaluation was apparently done more than two months ago, and the plaintiff has offered no reason for his failure to produce the records. Medical records regarding his memory and/or auditory processing difficulties are certainly relevant to assessing the plaintiff's ability to remember the encounters with the student whom the plaintiff was accused of sexually assaulting. Given that the encounter which led to the plaintiff's expulsion had no witnesses besides the plaintiff and the individual who made the accusation of sexual assault, it is clear that the credibility of both individuals is at issue in this case. Certainly statements made by the plaintiff to his physicians regarding his difficulty processing information, or his difficulty recalling information at a later time, is relevant to whether the plaintiff's testimony about prior events should be believed. Similarly the conclusions of the medical practitioners on this issue are relevant to credibility. Therefore, the plaintiff should be compelled to

produce all medical records related to his difficulty with memory and/or auditory processing disorder.

## CONCLUSION

For the foregoing reasons, the defendants' motion to compel should be granted.

THE DEFENDANTS

BY:   /s/ Patrick M. Noonan (#ct00189)
Patrick M. Noonan
Colleen Noonan Davis
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

## CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan