```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3    JACK MONTAGUE,            )
                                )
 4           Plaintiff,         )
                                )
 5         -vs-                 )  CIVIL ACTION NO.:
                                )  3:16-CV-00885-AVC
 6    YALE UNIVERSITY, ET AL., )
                                )
 7           Defendants.        )
                                )
 8

 9

10         The deposition of JIM MONTAGUE, a witness in the

11   above-entitled cause, taken before Cynthia Odom,

12   Licensed Court Reporter and Notary Public in and for

13   Davidson County, Tennessee, at 555 Marriott Drive,

14   Suite 315, Nashville, Tennessee, on the 21st day of

15   June, 2017, commencing at 12:02 p.m., pursuant to the

16   Connecticut Rules of Civil Procedure.

17

18

19

20

21

22

23

24

25
```



```
 1      Q.   Now, what did you do to prepare for this
 2  deposition?
 3      A.   I didn't.
 4      Q.   So you didn't talk to Attorney Stern?
 5      A.   We had dinner last night.
 6      Q.   And I take it you talked about the
 7  deposition?
 8      A.   Briefly.
 9      Q.   What did you talk about?
10              MR. STERN:  Don't answer that.
11  BY MR. NOONAN:
12      Q.   And is it your position that you are
13  represented by Attorney Stern in this case?
14      A.   I am.
15      Q.   And did you review any documents in
16  preparation for the deposition?
17      A.   No.
18      Q.   Have you ever reviewed any of the documents
19  that relate to this case?
20      A.   I have.
21      Q.   Which ones?
22      A.   The ones that are public record, I don't know
23  which ones were sent by whom, the UW -- I don't know
24  the names of all the -- or even the personnel involved
25  in the panels and whatnot, I'm kind of --
```



```
 1     A.    No.
 2     Q.    And you're paying Jack's attorney's fees;
 3  right?
 4              MR. STERN:  Don't answer that.
 5              MR. NOONAN:  Who's paying the attorney
 6  fees?
 7              MR. STERN:  Yes, do not answer that.
 8              MR. NOONAN:  But you have a claim for
 9  attorney fees in this case; right?
10              MR. STERN:  Sure.
11              MR. NOONAN:  So don't I get to know
12  what they are.
13              MR. STERN:  You'll get to know them
14  when we win the case, you'll know all about them.
15  BY MR. NOONAN:
16     Q.    Okay.  And there's a public relations firm
17  that has been involved in assisting Jack with
18  publicity; is that right?
19     A.    Yeah, uh-huh.
20     Q.    And who is paying those fees?
21              MR. STERN:  Don't answer that question.
22              MR. NOONAN:  It's not the attorney's
23  fees.
24              MR. STERN:  I know it's not the
25  attorney's fees.
```



```
 1              MR. NOONAN:  So you're claiming that is
 2   an attorney/client matter?
 3              MR. STERN:  It's related to -- it's a
 4   lot closer to the representation than any of the
 5   claims that you've made about attorney/client, I'll
 6   tell you that.
 7              MR. NOONAN:  Who is paying those fees?
 8              MR. STERN:  I am telling him not to
 9   answer that question.
10              MR. NOONAN:  Okay.  I just want the
11   record to be clear, you're instructing him not to
12   answer the question as to who is paying for the fees
13   of the public relations firm?
14              MR. STERN:  I don't want to open this
15   question.
16              MR. NOONAN:  I just want it clear.
17              MR. STERN:  Is that all you want, to
18   know who is paying for it?
19              MR. NOONAN:  That's the question that
20   --
21              MR. STERN:  It's the only thing you
22   want to know, no follow-up questions?
23              MR. NOONAN:  I don't know, it depends
24   on what the answer is.
25              MR. STERN:  All right.  Go ahead, who
```



```
 1  paid the fees for the PR person?
 2      A.     Is it Dean Holloway?  I'm sorry, I had to.
 3  BY MR. NOONAN:
 4      Q.     That's all right.
 5      A.     That's a jab.
 6      Q.     I got it.
 7      A.     I am.
 8      Q.     And how much have they been to date?
 9             MR. STERN:  No, don't answer any more.
10             MR. NOONAN:  And the basis?
11      A.     A lot.
12             MR. STERN:  No, no, no, no, no, no,
13  we're not answering that question.
14             MR. NOONAN:  Could you just state the
15  basis?
16             MR. STERN:  No, I'm not going to say
17  anything, I'm not answering.
18  BY MR. NOONAN:
19      Q.     Okay.  Is it more than $3,000?
20             MR. STERN:  Do not answer the question.
21  BY MR. NOONAN:
22      Q.     And there has been some fundraising for
23  Jack's fees; is that right?
24             MR. STERN:  Do not answer the question.
25  This is not remotely going to lead to any admissible
```



```
 1   evidence.
 2                  MR. NOONAN:  Don't know.
 3                  MR. STERN:  Yeah, well, I'm telling you
 4   it's not.
 5   BY MR. NOONAN:
 6       Q.    Has there been fundraising efforts for --
 7                  MR. STERN:  Do not answer the question.
 8                  MR. NOONAN:  What's the basis for that?
 9                  MR. STERN:  It is not relevant or even
10   likely to lead to the admissible evidence.
11                  MR. NOONAN:  But you're not allowed to
12   instruct people not to answer questions simply because
13   they're not relevant, Max.
14                  MR. STERN:  Well, then, you can file a
15   motion on this one; okay?
16   BY MR. NOONAN:
17       Q.    You've read Jack's transcript, you said?
18       A.    Yes.
19       Q.    Did you see in there that he was allowed to
20   answer questions about the public relations firm?
21                  MR. STERN:  Do not answer that
22   question.
23                  MR. NOONAN:  It's in his deposition.
24                  MR. STERN:  What does that have to do
25   with anything?
```



```
 1       A.    He's a grown man, I'm a grown man.  I'm not
 2   answering that question.
 3   BY MR. NOONAN:
 4       Q.    Did you see that Jack discussed the PR firm
 5   and the efforts to raise funds to pay his legal fees
 6   and PR firm's in his deposition?
 7             MR. STERN:  Well, I guess you know the
 8   answers to these.
 9             MR. NOONAN:  I know what Jack said.
10             MR. STERN:  Okay.
11             MR. NOONAN:  I'm just -- I'm really
12   misunderstanding, Max, why you think you can do this.
13             MR. STERN:  This is related to how he
14   funds his defense, and I don't think that's any of
15   your business; okay?
16             MR. NOONAN:  And that's how he funds
17   his PR offensive, that's --
18             MR. STERN:  That's your term, that's
19   your term, the way I look at it is protecting the
20   reputation which your client destroyed, which is part
21   of his legal -- of what he's trying to do legally,
22   he's trying to recover his reputation.
23             MR. NOONAN:  So you're saying
24   communications about the PR firm are covered by the
25   attorney/client privilege?
```



```
 1                MR. STERN:  Some.
 2                MR. NOONAN:  But you're not letting me
 3   ask any questions about the PR firm, right, that's
 4   what you've told me, I can't find out how much, what
 5   they're doing, what communications he's had with them,
 6   you're going to tell me he's not going to answer any
 7   of those; correct?
 8                MR. STERN:  No, he's not.
 9                MR. NOONAN:  None of those, you're not
10   going to allow him to answer those questions?
11                MR. STERN:  Well, you can keep asking
12   questions and I'll keep taking it question by
13   question; all right?
14                MR. NOONAN:  Okay.
15   BY MR. NOONAN:
16       Q.    Tell me about your communications with the PR
17   firm.
18                MR. STERN:  Do not answer that.
19                MR. NOONAN:  Let's mark that as -- this
20   will be J.
21                (Reporter marks document as
22                Deposition Exhibit J for
23                identification.)
24   BY MR. NOONAN:
25       Q.    You all set?
```



```
 1   STATE OF TENNESSEE)
 2                     )  ss
     COUNTY OF DAVIDSON)
 3
 4        I, CYNTHIA ODOM, Licensed Shorthand Reporter and
 5   Notary Public duly and qualified in and for the State
 6   of Tennessee do hereby certify there came before me
 7   the deponent herein, namely JIM MONTAGUE, who was by
 8   me duly sworn to testify to the truth and nothing but
 9   the truth concerning the matters in this cause.
10        I further certify that the foregoing transcript is
11   a true and correct transcript of my original
12   stenographic notes.
13        I further certify that I am neither attorney or
14   counsel for, nor related to or employed by any of the
15   parties to the action in which this deposition is
16   taken; and furthermore, that I am not a relative or
17   employee of any attorney or counsel employed by the
18   parties hereto or financially interested in the
19   action.
20        IN WITNESS WHEREOF, I have hereunto set my hand
21   and affixed my Notarial Seal this        day of June,
22   2017.
23                        [signature: Cynthia Odom]
24                        CYNTHIA ODOM,
                          NOTARY PUBLIC
25                        TNLCR#: 487
```

