UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JACK MONTAGUE | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:16-CV-00885-AVC |
| vs. | : | |
| | : | |
| YALE UNIVERSITY, ET AL | : | |
| | : | |
| Defendants | : | DECEMBER 11, 2017 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
COMBINED MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO
INTERROGATORIES**

The defendants, Yale University, Angela Gleason, and Jason Killheffer, respectfully

submit this memorandum in opposition to Plaintiff's Combined Motion and Memorandum in

Support of Motion to Compel Production of Documents and Answers to Interrogatories dated

October 31, 2017.  (Doc. No. 119.)

**I.      Statement of Facts**

This case arises out of the expulsion of the plaintiff during the spring semester of his

senior year after Yale's University-Wide Committee on Sexual Misconduct (the "UWC")

concluded that he had violated Yale's Sexual Misconduct Policy.  The essence of the

complaint, filed with the UWC on November 18, 2015, was that the plaintiff had engaged in

sexual intercourse with another student, Jane Roe, without her consent.  Ms. Roe stated that

she had agreed to some sexual contact on the evening in question, but that she had specifically

told the plaintiff three times that she did not want to engage in intercourse.  She further stated

that, despite her protests, he forced himself on her and then later apologized, and acknowledged that he was aware that she did not want to engage in intercourse but that he was unable to stop.

The complaint was adjudicated pursuant to Yale's UWC Procedures. The disciplinary process began with an investigation conducted by an impartial fact-finder who interviewed both the plaintiff and Ms. Roe, as well as five other witnesses. A hearing was held on January 21, 2016 before a UWC panel consisting of five members. At the conclusion of the hearing, the panel unanimously determined that Ms. Roe had provided a full, detailed, and consistent account of the events of the night in question, which was supported by the testimony of several witnesses. The panel further unanimously found that the plaintiff's selective and shifting recollection of the events of that night, and his conflicting statements as to how he obtained Ms. Roe's consent, rendered his account not credible. Having determined that Ms. Roe was credible and that the plaintiff was not, the panel unanimously concluded that the plaintiff had engaged in non-consensual sexual intercourse, which is a clear violation of Yale's Sexual Misconduct Policies. The panel therefore unanimously recommended to Dean Jonathan Holloway that he be expelled. On February 10, 2016, Dean Holloway accepted the panel's findings, conclusions, and recommended penalty. Provost Ben Polak denied the plaintiff's appeal on February 24, 2016, and the plaintiff was expelled.

## II.     <u>Argument</u>

The plaintiff has moved to compel the production of several categories of documents, including: (1) discovery regarding prior University disciplinary matters involving students other

than the plaintiff; (2) detailed information relating to every Yale student accused of sexual misconduct, sexual assault, rape or non-consensual sexual contact during the past six and one half years; (3) communications between members of "the administration" and representatives of the Yale Women's Center; (4) communications between Yale's counsel and counsel for Ms. Roe; and (5) documents concerning Title IX/UWC training provided by the University.   The defendants will address each category in turn.

        **A.**      <u>**Discovery Regarding Prior University Disciplinary Matters**</u>

                i.      <u>Documents Concerning the "Dollar Bills Case"</u>

The plaintiff requests production of the following documents concerning a case before the UWC referred to as the "dollar bills case:"  (1) the UWC case file, including the complaint, fact-finder's report, panel report, decision, and any written appeal and decision on appeal; and (2) any documents which the relevant decision makers relied upon or in which they discussed the jurisdiction of the UWC to hear the "dollar bills" case and/or the decision whether to proceed with an UWC or Executive Committee complaint.  (Doc. No. 119, at p. 8.)  In support of his motion to compel, the plaintiff argues that these documents are relevant to the issue of whether the UWC had jurisdiction over the "pizza plate incident"[1] and whether the UWC erroneously

---

[1] The "pizza plate incident" refers to the UWC complaint brought against the plaintiff after he stuffed a used pizza plate down the front of a female student's tank top, in between her breasts, at the end of his freshman year at Yale.  That case has been referred to in this litigation as "UWC I."  The plaintiff admitted his responsibility in that case.

concluded that the plaintiff had engaged in sexual misconduct.  (Doc. No. 119, at p. 8).  The defendants maintain that the requested discovery is irrelevant and not proportional to the needs of this case and that disclosure of these documents would violate the privacy interests of individuals who are not parties to this action.

Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26 "does not allow a party to roam in shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so.  Therefore, [t]he party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition."  (Internal quotations and citations omitted.)  Williams v. City of Hartford, 2016 U.S. Dist. LEXIS 71691 *5 (D. Conn. June 2, 2016).  The court must limit the frequency or extent of discovery otherwise allowed if the proposed discovery is outside the scope permitted by Rule 26(b)(1). F.R.C.P. 26(b)(2)(C)(iii).

The first reason that the motion to compel discovery related to the "dollar bills" case should be denied is that the plaintiff has already waived any right to contest the jurisdiction of the UWC I Panel.  The plaintiff in response to that UWC complaint acknowledged that he had violated Yale's Sexual Misconduct Policies.  Having admitted his guilt, he elected not to

contest the charges before the UWC Panel, decided not to contest the penalty imposed, and elected not to take an appeal to the Provost, all of which he was entitled to do under Yale's policies.  He therefore failed to exhaust his administrative remedies with regard to UWC I, and cannot now challenge the jurisdiction of the UWC to hear the UWC I complaint.

In Neiman v. Yale Univ., 270 Conn. 244 (2004), the Connecticut Supreme Court considered whether a university professor was required to exhaust her administrative remedies before asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, and negligent misrepresentation arising out of the defendant's failure to offer her a tenured appointment to its faculty.  Id. at 246.  The Supreme Court affirmed the trial court's dismissal of the action, concluding that the exhaustion of administrative remedies doctrine applies to the internal grievance processes provided by academic institutions:  "To allow a plaintiff to sidestep these procedures would undermine the internal grievance procedure that the parties had agreed to and encourage other litigants to ignore the available process as well." Id. at 255.  The Supreme Court also explained that "academic institutions themselves are best suited to be the original forum for these types of disputes."  Id.

The principles enunciated in Neiman also apply to procedures articulated in a student handbook.  In the context of claims arising from disciplinary action taken by a university against a student, courts have stated that "[i]n order to inject the judiciary into what is essentially an intra-university dispute, plaintiff must first exhaust his available administrative remedies."  Hill v. Trs. of Ind. Univ., 537 F.2d 248, 256 (7th Cir. 1976).  Courts have routinely dismissed cases for failure to exhaust the administrative remedies provided by an educational

5

institution's policies and procedures.  See, Durham v. SUNY Rockland Cmty. Coll., 2016 U.S. Dist. LEXIS 3713 *19 (S.D.N.Y. January 12, 2016) (action dismissed when plaintiff failed to exhaust administrative remedies following school suspension); Sierros v. Nova Southeastern Univ., Inc., 906 So.2d 1124, 1124-25 (Fla. Dist. App. Ct. 2005) (affirming summary judgment in favor of defendant because plaintiff, who was expelled, failed to exhaust his administrative remedies); Montalvo v. Univ. of Miami, 705 So. 2d 1042, 1043 (Fla. Dist. App. Ct. 1998) (affirming summary judgment against expelled plaintiff for failure to exhaust his administrative remedies); Gamma Phi Chapter of Sigma Chi Fraternity v. Univ. of Miami, 718 So. 2d 910, 910 (Fla. Dist. App. Ct. 1998) (denying injunctive relief for failure to exhaust administrative remedies in University's Handbook); Hill v. Trs. of Ind. Univ., 537 F.2d 248, 256 (7th Cir. 1976) (plaintiff's failure to exhaust administrative remedies foreclosed procedural due process claim).

Here, the UWC I Panel found that the plaintiff sexually harassed Ms. Smith in violation of Yale's Sexual Misconduct Policies when he shoved a used paper pizza plate down the front of her tank top between her breasts.  Dean Miller accepted the panel's conclusion and its recommendation of training and probation.  The UWC Procedures permitted the plaintiff to appeal Dean Miller's decision to the Provost.  The plaintiff chose not to appeal, and thereby failed to exhaust his administrative remedies.  Since he did not exhaust his administrative remedies, the plaintiff cannot now re-litigate his first disciplinary action[2] by claiming that the UWC lacked jurisdiction over UWC I.  Given that fact, there is simply no relevance to the

---

[2] The plaintiff also accepted responsibility for his second disciplinary complaint, which involved a proceeding before Yale's Executive Committee after the plaintiff interfered with a police investigation.

reasoning of the UWC in connection with its conclusions as to jurisdiction in the "dollar bills" case.

A second, and independent, reason for denying discovery of materials relating to the "dollar bills" case is that production of those materials will not in any way assist in a determination as to whether the UWC Panel's conclusions regarding jurisdiction over UWC I were correct.  Specifically, the plaintiff claims that he is seeking discovery of documents concerning the "dollar bills" case in an effort to establish that the UWC did not have jurisdiction over UWC I.  In order to prove that fact with documents concerning the "dollar bills" case, it would be necessary for the UWC to have concluded that it <u>did</u> <u>not</u> have jurisdiction over the "dollar bills" case.  Only then would any similarities between the "dollar bills" case and UWC I tend to support the theory that the UWC did not have jurisdiction over UWC I.  However, as Michael Della Rocca's August 27, 2013 e-mail establishes, the UWC had determined that it did have jurisdiction over the "dollar bills" case.  (Exhibit K to Doc. No. 119.)  Given this fact, the documents relating to the "dollar bills" case will not support the claim that the UWC lacked jurisdiction over UWC I; and therefore they are irrelevant to the plaintiff's claim that the UWC lacked jurisdiction over UWC I.

Third, the defendants oppose disclosure of documents concerning the "dollar bills" case because they are highly sensitive and confidential documents about students who are not parties to the present litigation.  The confidentiality of documents related to complaints of sexual misconduct is mandated by Yale's Title IX process, including the UWC Procedures.  The requirement of confidentiality encourages victims to report incidents of sexual misconduct and

witnesses to participate in the process.  Protecting the confidentiality of both the complainants and respondents involved in UWC cases is essential to this process.  An order requiring the disclosure of documents concerning the "dollar bills" case would violate Yale's promise of confidentiality, and it would thwart Yale's efforts to encourage victims to report incidents of sexual misconduct. The prejudice to Yale's efforts to adjudicate claims of sexual misconduct outweighs the questionable probative value of the documents concerning the "dollar bills" case, especially where those documents will not aid the plaintiff in proving that the UWC lacked jurisdiction over UWC I. [3]

Even if the requested documents had any relevance to the present case and would not require the release of confidential material, and even if the plaintiff had not already waived his right to challenge the jurisdiction of the UWC to adjudicate the complaint in UWC I, the cost of producing the documents requested substantially outweighs any possible benefit, within the meaning of Rule 26 (b)(1).  The breadth of the request for documents concerning the "dollar bills" case is virtually identical to the breadth of the discovery requests made in connection with UWC I and UWC II in this case.  Specifically, the plaintiff seeks the entire UWC case file, and "any documents" which were relied upon or which discuss the jurisdiction of the UWC to hear the "dollar bills" case and/or the decision whether to proceed with a UWC or Executive Committee complaint.  The broad nature of the plaintiff's request for production of documents as

---

[3] As will be discussed below in greater detail with regard to the sixteen UWC cases listed in paragraph 179 of the Amended Complaint, compliance with the Request for Production in the "dollar bills" case would require the University to either spend an inordinate amount of time redacting the personally identifiable information of all the students involved in the case (including the complainant and witnesses), or notify the students of the request for disclosure and give them an opportunity to object as envisioned by the Federal Educational Rights and Privacy Act ("FERPA.")  See C.F.R. §99.31 (a)(1)(9)(1)(i) and (ii).

to UWC I and UWC II has already required defense counsel to review more than 77,500 separate, often multi-page, documents.  Some of these documents were just a few pages, while others were more than one hundred pages.  The search for and production of these documents consumed several hundred hours of attorneys' time.  Additionally, the scope of the search required Yale to engage a document management service, Ricoh USA, Inc., at significant expense. There is simply no basis for requiring Yale to engage in a similarly broad search with regard to the "dollar bills" case.

In the event that the Court permits the plaintiff to obtain documents concerning the "dollar bills" case, the defendant requests that the number of custodians whose electronically stored information ("ESI") is to be searched and the number of search terms applied be restricted so as to make the defendant's task of producing relevant information reasonable.  The defendant has already provided the plaintiff with ESI from twenty-three custodians, using thirty-three search terms with regard to custodians involved in UWC I, twelve search terms with regard to custodians involved in the Executive Committee proceeding, and fifty-nine search terms with regard to custodians involved in UWC II.  One of the search terms used with regard to UWC II was "Jack AND basketball."  This produced a myriad of irrelevant documents.  Applying a similarly broad search for documents concerning the "dollar bills" case will be unduly burdensome, and any permitted discovery should therefore be limited.

> ii.    The UWC case files for each UWC case listed in Paragraph 179 of the Amended Complaint

The plaintiff seeks discovery of 16 UWC case files for the UWC cases listed in Paragraph 179 of the plaintiff's Amended Complaint.  Disclosure of this material would violate

the Federal Educational Rights and Privacy Act, because it would include a disclosure of all personally identifiable information in the educational records of all of the students involved in each of those cases.  This would include complainants, respondents, and any witnesses or persons mentioned in the various documents relating to the 16 UWC case files.   Under the Code of Federal Regulations, disclosure of such information, even in compliance with a judicial order, is not permitted unless the educational institution either notifies the students of the proposed effort to obtain their information, or goes through the records to remove any information which might possibly identify the students involved. See C.F.R. §99.31 (a)(1)(9)(1)(i) and (ii). In the present case, compliance with the discovery request would therefore require the defendant to either go through the laborious task of reading each and every document to remove from each document any information (which is not limited to names) which might possibly identify the students, or notifying each of the several dozen students whose personally identifiable information is contained within the records of their right to object.  Given the fact that students have a right to maintain their confidentiality when involved in the UWC process, the notification itself is likely to cause significant distress to the students, none of whom has any relationship to the present action.  The plaintiff has not made any showing which would justify imposing such a burden on either the defendant or the students.

In the event that the Court is inclined to grant any portion of this request, disclosure should be limited to UWC cases in which the respondent was similarly situated to the plaintiff in that he/she was charged with sexual penetration/intercourse without consent and he/she had prior discipline imposed by either the UWC or the Executive Committee.  The plaintiff claims that he

seeks the UWC case files of other students for two reasons:  (1) to understand why other students who were found responsible for sexual misconduct were given lesser sanctions than he was; and (2) to determine whether Yale has been consistent in its treatment of respondents with disciplinary records.  As conceded  in plaintiff's brief, the prior discipline imposed on the plaintiff was considered by the UWC panel in its conclusion regarding culpability and its recommendation of expulsion as a penalty.   Therefore, any disclosure should be limited to respondents who engaged in the same behavior as the plaintiff, i.e., sexual penetration/intercourse after being told that that was not welcome, and had a history of discipline.  This approach is in line with Judge Bolden's decision in Metcalf v. Yale University, 2017 U.S. Dist. LEXIS 21032 (D. Conn. February 15, 2017), wherein he limited the disclosure of documents maintained by Yale's Title IX office to those concerning cases with respondents who were similarly situated to the plaintiff.

Given the very sensitive nature of the documents which are being requested, in the event that the court is considering requiring the production of any of these records, the defendants request that the Court conduct an *in camera* review in order to ensure that only those cases in which the respondents were actually similarly situated to the plaintiff are subject to disclosure.  If the Court orders any disclosure, the defendants also request the entry of a protective order similar to that ordered by Judge Bolden in Metcalf v. Yale University, Docket Number: 3:15-CV-01696-VAB.

     **B.**      **Information Concerning Students Accused of Sexual Misconduct Since July 1, 2011**

The plaintiff seeks an order requiring the defendants to answer Interrogatory #7, which states as follows:

Interrogatory No. 7.   Please state the number of students, from July 1, 2011, to the present, against whom a formal complaint of sexual misconduct was made for one of the following alleged offenses:   rape, sexual assault, non-consensual sexual activity (including, but not limited to, penetration), and for each student, please state:

a.      The nature of the complaint;

b.      Whether the complaint was brought by an individual or by the Title IX Office (or any person acting in his or her capacity as a Title IX officer);

c.      Whether the accused student was found responsible or not responsible for the alleged sexual misconduct;

d.      What discipline was imposed on the accused student as a result of the finding(s); and

e.      Whether the accused student had a prior disciplinary history at Yale, and if so, the nature of the prior disciplinary history (e.g., prior UWC complaint, prior Executive Committee involvement, etc.).

(Exhibit B to Doc. No.119.)  Contrary to the plaintiff's representation, Interrogatory #7 does not

request "information concerning cases between July 1, 2011 and the present in which Yale

expelled students for sexual misconduct" or information about "the outcome for the student,

including whether that student successfully completed his degree at another institution and if so,

where."  (Doc. No. 119 at p. 13.)  Rather, this interrogatory requests information relating to every

Yale student who was charged in a UWC complaint with rape, sexual assault and "non-

consensual sexual activity."  Virtually all of the complaints brought to the UWC involve some

kind of non-consensual sexual activity.

In the first place, with the exception of information regarding the prior disciplinary history of the accused students, all of the information requested in this interrogatory is provided in the biannual Reports of Complaints of Sexual Misconduct, which are publicly available online at http://provost.yale.edu/title-ix/reports.   The defendants have already provided the plaintiff with the reports for the time period from June, 2011 to June, 2016, and the plaintiff can obtain the most recent reports online. As noted above, Rule 26(b)(1) provides that one consideration in deciding whether to compel discovery is the ability of the party seeking production to access the information.   In this case, since all of the information, with the exception of prior disciplinary history, is already available online, or has been previously provided to the plaintiff, there is no basis for requiring the defendant to expend resources to characterize that information in interrogatory form, which is what is being requested by this interrogatory. Fed.R.Civ.P. 33 (d) specifically states that in lieu of responding to an interrogatory, a party may simply refer to records. With regard to prior disciplinary history, that information is protected by FERPA and by the confidentiality promised by Yale in its Sexual Misconduct Policies.   Since those arguments were fully briefed in Section II (A)(i) and (ii), the defendants will not repeat them here.

Despite not having sought this information in the interrogatory in question, plaintiff's brief now seeks to compel Yale to provide information regarding "the outcome for the student, including whether that student successfully completed his degree at another institution and if so, where."  (Doc. No. 119, at p. 13.)  There is no provision in the Federal Rules for a district court to compel production of information that was not contained in a discovery request.  It is quite clear from a reading of Interrogatory # 7, which is quoted above, that the plaintiff in that interrogatory

never sought information regarding "the outcome for the student, including whether that student successfully completed his degree at another institution, and if so, where."  For that reason alone, the motion to compel must be denied.

The plaintiff apparently seeks the discovery of information relating to the "outcome" for other expelled students believing that it will assist the plaintiff in proving irreparable harm. However, irreparable harm is no longer an issue in this case because the Court previously denied the plaintiff's motion for a preliminary injunction.   Therefore, the education and employment achieved by other students after their expulsions from Yale are irrelevant.

Yet another reason to deny this request is that the Court has already ruled that Yale need not produce the requested information. The plaintiff previously moved to compel the production of the sealed affidavit of Colleen Davis, which contains some of the information now sought by the plaintiff.  (Doc. No. 70).  Judge Covello denied that motion.  (Doc. No. 75). The plaintiff has not provided any basis for a reversal of that decision.[4]

Finally, the "outcome" information is protected from disclosure by FERPA.  As noted above, FERPA prohibits the release of personally identifiable information, which is defined by the regulations to include the student's name and "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty."   34 C.F.R. 99.3 (a), (f).  If the defendants

---

[4] The plaintiff claims that Judge Covello denied the Motion as moot; however, a review of his order reveals that there is nothing which supports that claim. In any event, the Court has already ruled on the issue, and the plaintiff has not provided any rationale for a reversal of that decision.

provide the plaintiff with information regarding the activities of students expelled for sexual misconduct, the plaintiff and others will be able to "reasonably identify" those students simply by searching the Internet for the information. Given the fact that there have been only seven students expelled from Yale for violation of Yale's sexual misconduct policy, it will be relatively easy for the plaintiff, and others, to identify those individuals if the requested information is required to be produced.   Therefore, the plaintiff's motion to compel information regarding the activities of students who have been expelled from Yale for sexual misconduct should be denied.

In the event that the Court is inclined to consider requiring production of this information, the defendants request that the Court conduct an *in camera* review in order to ensure that the greatest protection possible is given to this highly sensitive information, including the full redaction of any information that might reasonably identify the students.

    **C.**    <u>**Communications Between Members of Yale Administration and Representatives of Yale's Women Center**</u>

The Court need not rule on this issue, since the parties have now resolved it.  Plaintiff's counsel has agreed that compliance with this discovery request will be limited to an electronic search of the records of Dr. Melanie Boyd for the months of February and March, 2016, and the search terms to be applied for that electronic search will be "Montague OR Facebook."

    **D.**    <u>**Communications Between Yale's Counsel and Counsel for Ms. Roe**</u>

The plaintiff requests production of communications between the defendants' counsel and counsel for Ms. Roe, James Sconzo, Esq.  (Doc. No. 119.)  Contrary to the plaintiff's assertion,

the defendants do not seek to assert a common interest or joint defense privilege.  Rather, the requested communications are protected from disclosure by the work product doctrine.

The work product doctrine shields from disclosure materials prepared "in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Fed. R. Civ. P. 26(b)(3)(B) protects from discovery "the mental impressions, conclusions, or opinions, or legal theories of a party's attorney or other representative concerning the litigation."  The Rule ratified "the principles that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side would not automatically have the benefit of the detailed preparatory work of the other side."  (Internal quotations omitted.)  United States v. Adlman, 134 F. 3d 1194, 1199 (2d Cir. 1998).

The Second Circuit has instructed: "The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes.  An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information.  At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.  The doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary."  (Internal quotations and citations omitted.)  Salomon Bros. Treasury Litigation v. Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.), 9 F.3d 230, 234 (2d Cir. 1993). There is a critical distinction between the work-product doctrine and the attorney-client privilege: "The [work-product]

privilege protects information against opposing parties, rather than against all others outside a particular confidential relationship."  (Internal quotations omitted.)  Coastline Terminals of Connecticut, Inc. v. United States Steel Corp., 221 F.R.D. 14, 16-17 (D. Conn. 2003).

This Court has previously acknowledged that the scope of the work product privilege is quite different from the scope of the attorney client privilege:  "[U]nlike work protected by the attorney-client privilege, mere disclosure of evidence to a third party does not necessarily waive work-product protection.  Rather, the standard articulated for determining when work-product protection has been waived is whether the disclosure substantially increases the opportunity for potential adversaries to obtain the information."  (Internal quotations and citations omitted.)  Lavatec Laundry Technology, GmbH v. Lavatec, Inc., 2014 U.S. Dist. LEXIS 57771 *6-7 (D. Conn. Apr. 25, 2014).  See also, Coastline Terminals of Connecticut, Inc. v. United States Steel Corp., 221 F.R.D. 14, 16-17 (D. Conn. 2003) (Internal quotations omitted; emphasis added) ("[d]isclosure of material protected by the work-product doctrine…results in a waiver of the protection afforded by that doctrine only when the disclosure is to an adversary or materially increases the likelihood of disclosure to an adversary.")

As noted on the defendants' privilege log (attached to Plaintiff's Brief as Exhibit W), the communications between defense counsel and Attorney Sconzo contain information relating to Yale's defense strategy.  The disclosure of this strategy to Attorney Sconzo does not constitute waiver of the work product doctrine.  As acknowledged by the plaintiff, the defendants and Ms. Roe have a common interest in seeing the plaintiff's expulsion upheld.

(Doc. No. 119, at p. 20.)  Thus, sharing the defense strategy with Attorney Sconzo did not increase the likelihood of disclosure of that strategy to the plaintiff, and therefore did not constitute a waiver of the protection afforded by the work product doctrine.  See, Lavatec Laundry Technology, GmbH v. Lavatec, Inc., 2014 U.S. Dist. LEXIS 57771 *6-7 (D. Conn. Apr. 25, 2014); Coastline Terminals of Connecticut, Inc. v. United States Steel Corp., 221 F.R.D. 14, 16-17 (D. Conn. 2003).  Since the e-mails between defense counsel and Attorney Sconzo are protected from disclosure by the work product doctrine, and since the defendants did not waive that protection, the plaintiff's motion to compel should be denied.

**E.     Documents Concerning the Fall 2015 Title IX/UWC Training**

The plaintiff has requested that the defendants produce documents relating to Yale's UWC and Title IX Training conducted in the Fall of 2015.  This request for production was untimely, and therefore should be denied.  Under Fed. R. Civ. P.16(b), district courts are required to enter scheduling orders "that limit the parties' time to complete discovery." McKay v. Triborough Bridge & Tunnel Auth., 2007 U.S. Dist. LEXIS 81722 *2 (S.D.N.Y. November 5, 2007).  The plaintiff filed a Joint Stipulation and Request to Enlarge Scheduling Order on April 4, 2017.  (Doc. No. 84.)  Pursuant to that request, the plaintiff requested that the deadline for fact discovery be extended from March 31, 2017 to June 30, 2017.  The Court granted this motion on April 7, 2017 and ordered the parties to complete fact discovery by June 30, 2017.  (Doc. No. 85).  The plaintiff issued the Fourth Request for Production, seeking the Title IX training materials, on September 8, 2017, more than two months after the close of fact discovery.  Since the Fourth Request for Production was propounded outside of the fact

18

discovery completion date, it is untimely and the defendants should not be required to comply with those discovery requests.

As will be discussed below, plaintiff's counsel was aware of the existence of the Title IX training materials well prior to the close of discovery and decided not to request them. Consequently, there is no basis for compelling their production now.  In a case directly on point, the Court held: "Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied."  Gucci Am. v. Guess?, Inc., 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011). This Court reached the same conclusion in Casagrande v. Norm Bloom & Son, LLC, 2014 U.S. Dist. LEXIS 158752 *6 (D. Conn. November 10, 2014).

The plaintiff has conceded that the Fourth Request for Production was untimely.  The plaintiff was aware of the Title IX training, and had an opportunity to issue a request for production, prior to the close of discovery.  This is not a case where the plaintiff only learned of the Title IX training materials at the deposition of Deputy Provost and University Title IX Coordinator Stephanie Spangler, which was conducted on August 31, 2017.  Indeed, in his brief plaintiff's counsel admits that he made a conscious decision not to request the training materials prior to the deposition of Dr. Spangler, because he believed that Dr. Spangler would be able to orally respond to certain questions about the Title IX training.  Thus, he made a strategic decision not to seek production of material which he knew existed prior to the discovery deadline, which had already been extended.  There is simply no basis for allowing

the plaintiff to issue new discovery requests, without permission of the Court, two and a half months after the discovery cut-off.

There can be no doubt that the materials which the plaintiff now requests were known to the plaintiff, well before the deposition of Dr. Spangler.  The Title IX training materials are described in a document titled, "Voluntary Resolution Agreement Yale University (University) Complaint No. 01-11-2027" ("Voluntary Resolution Agreement").  The plaintiff was clearly aware of the Voluntary Resolution Agreement prior to the close of discovery, since that document is referenced in Paragraph 15 of the original complaint filed on June 9, 2016.  The plaintiff also marked the Voluntary Resolution Agreement as an exhibit at Aley Menon's deposition on April 13, 2017, two and a half months prior to the close of fact discovery.  It should be noted that Dr. Spangler's deposition was scheduled for three different dates prior to the close of fact discovery on June 30, 2017.  Plaintiff's counsel cancelled the deposition each time.  At the time of the last cancellation in June, 2017, plaintiff's counsel informed defense counsel that he had decided not to depose Dr. Spangler at all.  (Exhibit F to Doc. No. 119, at p. 6.)  Thus, the plaintiff had ample time to depose Dr. Spangler and request information concerning the 2015 Title IX/UWC training prior to June 30, 2017.  Since the Fourth Request for Production is untimely, and since the plaintiff never sought the Court's permission to file additional document requests after the close of fact discovery, it should be denied.

The defendants further object because the requested documents are irrelevant to the plaintiff's claims.  There is no claim in the plaintiff's 64-page Amended Complaint asserting that the Title IX Coordinators and/or UWC members, or anyone else, did not receive adequate

training or that they did not abide by their training.  Rather, the plaintiff claims that certain representatives of Yale failed to abide by Yale's UWC procedures.  Since the plaintiff has not alleged any claims regarding the adequacy of the training provided to Title IX Coordinators and/or UWC members, the requested documents are irrelevant and not likely to lead to the discovery of relevant information.

In the event that the Court allows any portion of the requested disclosure, those portions of the 2015 Title IX/UWC training which were given by attorneys in Yale's General Counsel's Office are protected from disclosure by the attorney-client privilege.  To invoke the attorney-client privilege, a party must demonstrate that there was: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." Pritchard v. County of Erie (In re County of Erie), 473 F.3d 413, 419 (2d Cir. 2007).  "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." Id.  "When a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation – or that advocates and promotes compliance, or oversees implementation of compliance measures – is legal advice." Id. at 422.  "[T]he privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice." Id. at 420.

Portions of the Fall 2015 UWC and Title IX Training were conducted by Susan Sawyer, an attorney in Yale's General Counsel's Office.  In her presentation, Attorney Sawyer

gave legal guidance in the interpretation of the requirements of Title IX in order to advise Yale employees in their efforts to comply with Title IX.  Therefore, the training materials and advice provided by Attorney Sawyer are protected from discovery under the attorney-client privilege.

**III.**     **Conclusion**

For all the reasons stated above, the plaintiff's motion to compel should be denied.


                                    THE DEFENDANTS,
                                    YALE UNIVERSITY, ANGELA GLEASON
                                    and JASON KILLHEFFER


                          BY:___/s/ Patrick M. Noonan (#ct00189)__
                                    Patrick M. Noonan
                                    Colleen Noonan Davis
                                    Donahue, Durham & Noonan, P.C.
                                    741 Boston Post Road
                                    Guilford, CT 06437
                                    (203) 458-9168


                         **CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


                         _____/s/_____
                                    Patrick M. Noonan