UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACK MONTAGUE,<br>    Plaintiff,<br><br>v.<br><br>YALE UNIVERSITY, ANGELA GLEASON,<br>JASON KILLHEFFER, and OTHERS<br>UNKNOWN,<br>    Defendants. | CIVIL ACTION<br>No. 3:16-cv-00885-AVC |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
DOCUMENTS FROM PLAINTIFF'S EXPERT WITNESSES**

**I.**     **Introduction**

Plaintiff Jack Montague respectfully submits this opposition to Defendants' Motion to Compel Documents from Plaintiff's Expert Witnesses. Defendants' Motion is in large part moot, in that it seeks to compel production of documents which were not yet due to be produced but which Plaintiff has produced since the filing of this Motion, including items which Defendants formally requested only the day before filing this motion. The only live issue for the Court's resolution is the dispute over Defendants' entitlement to the handwritten notes of Plaintiff's expert sexual assault investigator, Susanna Murphy, Esq., reflecting her conversations with counsel over which Plaintiff asserts work production protection. The Court should deny Defendants' Motion insofar as it seeks to compel the production of Ms. Murphy's handwritten notes, which for the reasons explained below, are protected attorney work product and expressly shielded from disclosure under Fed. R. Civ. P. 26(b)(4)(C). The remainder of Defendants' Motion is moot as Plaintiff has already produced the materials sought to the extent they exist or are in the possession of Plaintiff's experts.

## II. Background Relevant to Defendants' Motion

On September 8, 2017, Defendants noticed the depositions of Plaintiff's expert witnesses Stan Smith, Ph.D and Susanna Murphy, Esq. Dr. Smith is an expert economist, and has offered an opinion on the value of Plaintiff's loss in future earning potential as a result of his expulsion from Yale. Ms. Murphy is an expert sexual assault investigator, and has offered an opinion that Yale's investigation into the allegations against Plaintiff which led to his expulsion was neither thorough nor impartial as required by Yale's rules and applicable federal regulations. Dr. Smith's deposition was noticed for October 5 in Chicago, and Ms. Smith's deposition was noticed for October 20 in Boston. Due to an oversight, Plaintiff's counsel did not realize that Defendants' counsel had included in its notices of deposition several requests for documents from Plaintiff's experts, requesting that those documents be produced at least 14 days in advance of each deposition.

### A. Documents Requested from Dr. Smith

Defense counsel brought the requests pertaining to Dr. Smith to the attention of Plaintiff's counsel by email on October 3, and Plaintiff's counsel responded with objections and noted that several of the items requested had already been provided voluntarily. Defense counsel then narrowed his request by email dated October 8. By that time, however, Dr. Smith's deposition been postponed indefinitely due to a last minute scheduling conflict, and the parties did not again discuss the topic of the document requests to Dr. Smith. Ultimately, Defendants re-noticed Dr. Smith's deposition for January 9, 2018. The re-notice contained the same documents requests as the original notice, requesting that the documents be produced at least 14 days prior to Dr. Smith's deposition, *i.e.*, on or before December 26, 2017. Plaintiff intended to produce by this deadline documents responsive to Defendants' earlier narrowed request for

documents from Dr. Smith. Had Defendants simply inquired about the status of their request, this Motion could have been avoided insofar as it concerns Dr. Smith.

### B. Documents Requested from Ms. Murphy

Defense counsel followed up regarding its request for documents from Ms. Murphy by email on October 8. On October 13, Plaintiff's counsel sent an email to defense counsel attaching certain of the requested documents, stating that others did not exist, and objecting to the production of certain documents which are expressly protected from disclosure under Fed. R. Civ. P. 26(b)(4). The deposition of Ms. Murphy proceeded as scheduled on October 20. At that time, Plaintiff's counsel reviewed Ms. Murphy's file and produced all documents not protected under Rule 26(b)(4), including communications between Plaintiff's counsel and Ms. Murphy in redacted form. Plaintiff however stood on his objection to producing Ms. Murphy's handwritten notes which, because they reflect her communications with counsel, are protected from disclosure under Fed. R. Civ. P. 26(b)(4)(C). These notes were marked for identification as Exhibits T and U to Ms. Murphy's deposition but were not shown to defense counsel and were retained by the witness.

Because Ms. Murphy's deposition could not be completed on October 20 due to a scheduling conflict with the court reporter, Defendants issued a notice of continued deposition on November 7, noticing Ms. Murphy's continued deposition for December 12. The notice contained new requests for three additional categories of documents: 1) invoices issued subsequent to her September 11, 2017 invoice which Plaintiff already provided to Defendants; 2) "run sheets" related to Ms. Murphy's work on the case; and 3) materials published in connection with a seminar which Ms. Murphy attended and which is listed on her CV. *The day after Defendants made this request*, and without giving Plaintiff any advanced notice or opportunity to

comply, they filed the instant Motion seeking to compel production of those three categories of documents. Upon receiving the instant Motion, Plaintiff informed Defendants' counsel that he had no objection to producing the most recent invoice (which was not even generated until *after* Ms. Murphy's deposition) and the run sheet (in redacted form), and that Ms. Murphy had been unable to locate the seminar materials requested. Thus, except as it pertains to Ms. Murphy's handwritten notes, Defendants' Motion is moot.

### III. Discussion

In moving to compel the production of Ms. Murphy's handwritten notes reflecting her communications with counsel, Defendants are improperly seeking to invade the work product privilege which the Federal Rules expressly confer upon certain expert materials. Indeed, the 2010 amendments to the Rules governing the discoverability of expert materials were expressly designed to provide clarity on this issue and avoid disputes of this very nature. The Court should reject Defendants' overreach and deny their Motion.

#### A. A Testifying Expert's Notes of Conversations with Counsel Are Generally Not Discoverable

Prior to 2010, there existed a split among the federal courts regarding the extent to which communications between an attorney and a testifying expert were discoverable. In recommending that Rules be amended to clarify the confusion and codify the protection properly afforded to attorney-expert communications and draft reports regardless of form, the Rules Committee observed that under the existing regime:

> Experts and counsel often go to great lengths to avoid creating draft reports, creating drafts only in electronic or oral form, deleting all electronic drafts, and even scrubbing hard drives to prevent subsequent discovery. *Lawyers and experts often avoid written communications or creating notes by the expert, encumbering attorney-expert communications and the formulation of effective and accurate litigation opinions.*

Report of the Civil Rules Advisory Committee, May 9, 2008, at 93 (emphasis added).[1]

To alleviate these concerns and stem the proliferation of motion practice in this area, the Rules were amended to make clear that neither draft reports nor attorney-expert communications are discoverable – regardless of their form – subject to three specifically enumerated exceptions. The newly adopted rules, 26(b)(4)(B) and (C) provide as follows:

> (B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
>
> (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
>> (i) relate to compensation for the expert's study or testimony;
>>
>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>>
>> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(B) and (C). Thus, following the 2010 amendments, draft reports are no longer discoverable regardless of form, and attorney-expert communications are as a general rule not discoverable except to the extent they fall into one of the three narrow categories. Communications which "identify facts or data" provided by the attorney and which "the expert considered in forming the opinions to be expressed" are discoverable, however, as the Advisory Committee noted, "[t]he exception applies only to communications 'identifying' the facts or data provided by counsel; *further communications about the potential relevance of the facts or data are protected*." Fed. R. Civ. P. 26(b)(4) advisory committee's notes (2010 amendments)

---

[1] *Available at* http://www.uscourts.gov/sites/default/files/fr_import/CV06-2008.pdf

(emphasis added); *see Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 (9th Cir. 2014). In addition, while communications providing assumptions which the expert ultimately relied on in forming his or her opinions are discoverable, "general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception." *Id.*

While, as Defendants correctly note, a testifying expert's notes are not categorically entitled to protection, they *are* protected from disclosure to the extent they reflect communications with counsel not falling into one of the three exceptions set forth in Rule 26(b)(4)(C). It is well established that records of privileged communications are privileged to the same extent as the underlying communications themselves. *See, e.g., Upjohn Co. v. United States,* 449 U.S. 383, 401 (1981) (holding that insofar as "notes and memoranda . . . reveal [privileged] communications, they are . . . protected by the attorney-client privilege"); *Martinez v. Kleinfeld Bridal Corp.*, 2017 WL 2859941, at *1 (S.D.N.Y. 2017) (recognizing that the "[a]ttorney-client privilege can apply to notes taken from oral statements if they reveal privileged communications"); *In re Gabapentin Patent Litigation*, 214 F.R.D. 178, 187 (D.N.J. 2003) (attorney notes which "reflect conversations or other communications with clients . . . are of course privileged"). Respectfully, Magistrate Judge Fitzsimmons conclusion in the case cited by Defendants, *Dongguk Univ. v. Yale Univ.*, 2011 WL 1935865 (D. Conn. May 19, 2011), that an expert's notes "memorializing a meeting with . . . counsel" cannot constitute protected work product, *see id.* at *1 n.1, is inconsistent with both the plain language of Rule 26(b)(4)(C) stating that communications are protected "regardless of the form," and the centuries of case law, cited above, recognizing that documents which reflect privileged communications are themselves privileged. Obviously, the protection for attorney-expert communications afforded by Rule

6

26(b)(4)(C) would be meaningless if it did not cover an expert's notes reflecting her conversations with counsel; thus, an expert's notes reflecting conversations with counsel must be protected from disclosure to the same extent the underlying communications are protected.

> **B. The Bulk of Ms. Murphy's Notes Are Not Discoverable Because They Reflect Conversations with Counsel Not Falling Into One of the Three Exceptions in Rule 26(b)(4)(C)**

Given the applicable rules as outlined above, the dispute in this case centers on the substance of Ms. Murphy's handwritten notes marked as Exs. T & U at her deposition, the degree to which they reflect or reveal her conversations with counsel, and whether those communications fall into one of the exceptions to the general rule that expert-counsel communications are not discoverable. With the limited exception of three pages of Exhibit U, which Plaintiff has subsequently produced to Defendants, Exs. T & U are protected from disclosure in their entirety, as they reflect communications with counsel not falling into one of the enumerated exceptions in Rule 26(b)(4)(C).

Admittedly, as Defendants point out in their Motion, Ms. Murphy initially testified at her deposition that only a portion of Exs. T & U reflected communications with counsel. Although this ultimately proved accurate, upon conducting a close review of her notes following the first day of her deposition, Ms. Murphy determined that she was mistaken concerning which portions of which exhibits reflected communications with counsel. As Ms. Murphy testified during her second day of deposition on December 13, and explains in the Affidavit of Susanna B. Murphy attached hereto as Exhibit A, Ms. Murphy had not closely reviewed her notes in advance of her deposition and was not prepared to answer specific questions regarding their contents. *Id.* ¶9;

*see* Murphy Dep. Tr. Vol. 1 at 10:2-6, attached hereto as <u>Exhibit B</u>.[2] In response to questions from defense counsel, Ms. Murphy testified that some of her notes dated back to when she was drafting her report in August 2017, and some of the notes were more recent and made in connection with preparing for her deposition in October 2017. Ex. A. ¶10.[3] Ms. Murphy testified, based on her best recollection at the time, having not reviewed the notes with an eye towards answering questions about their contents, that only some of these notes reflected her communications with Plaintiff's counsel. *Id.* At a break in the deposition, Ms. Murphy quickly reviewed the notes and determined that the notes marked as Ex. T were taken contemporaneously to, or immediately following her meeting with Plaintiff's counsel to prepare for her deposition, and that all of these notes reflected communications with counsel. *Id.* ¶11. The notes are mostly undated, so it was difficult for Ms. Murphy to determine conclusively based on a hurried review what exactly she was looking at. *Id.* After her deposition, Ms. Murphy reviewed the notes marked as Exs. T and U more carefully. *Id.* ¶12. She confirmed, consistent with her testimony after the break at her deposition, that the set of notes marked as Ex. T entirely reflected her communications with counsel in preparation for her deposition. *Id.* In more carefully reviewing Ex. U, she determined that seven pages of those notes reflected her conversations with counsel regarding various drafts of her report. *Id.* ¶13. The remaining three pages contain notes she took independent of discussion with counsel, during her review of the case materials provided to her by Plaintiff's counsel. *Id.* These three pages have since been produced to Defendants and were marked as Ex. X at Ms. Murphy's continued deposition on December 13.

---

[2] Plaintiff has provided an affidavit from Ms. Murphy because a transcript of her second day of deposition was not yet available as of the deadline for submitting this Opposition.

[3] The earlier set of notes was marked for identification as Ex. U, and the more recent set was marked as Ex. T.

As established through Ms. Murphy's Affidavit, all pages of Ex. T and the seven pages of Ex. U not produced to Defendants reflect and reveal Ms. Murphy's communications with counsel during the drafting of her report and in preparation for her deposition. Under Rule 26(b)(4)(C), these notes are protected from discovery. The communications do not relate to Ms. Murphy's compensation or identify any assumptions Plaintiff's counsel provided to Ms. Murphy and which she relied on in forming her opinions in this case. Ex. A. ¶14. Nor do the notes reflect the identification by Plaintiff's counsel of any facts or data – all such facts were provided to Ms. Murphy via emails from Plaintiff's which were previously produced to Defendants in redacted form. Further, at the time Ms. Murphy was preparing for her deposition, all facts considered in forming her opinions had necessarily already been provided to her, as her report had already been finalized and disclosed to Defendants by that time.[4] In short, nothing in Ex. T and the portion of Ex. U being withheld from Defendants is legitimately discoverable. To allow Defendants access to these materials would be to directly contravene the policy with respect to the expert discovery that the 2010 amendments to the Federal Rules sough to establish. Defendants' Motion should be denied.

**IV.    Conclusion**

For the reasons set forth above, this Court should DENY Defendants' Motion.

---

[4] Ms. Murphy's communications with Plaintiff's counsel concerning drafts of her report arguably are entitled to independent protection under Rule 26(b)(4)(B), which protects from disclosure draft reports "regardless of the form in which the draft is recorded."

JACK MONTAGUE,

By his attorneys,

/s/ *Christian G. Kiely*
Max D. Stern (BBO #479560) (*pro hac vice*)
mstern@toddweld.com
Alexandra H. Deal (BBO #660654) (*pro hac vice*)
adeal@toddweld.com
Christian G. Kiely (BBO #684308) (*pro hac vice*)
ckiely@toddweld.com
TODD & WELD LLP
One Federal St., 27th Floor
Boston, MA 01880
Tel. (617) 720-2626
Fax (617) 227-5777

William F. Dow III (ct00161)
JACOBS & DOW, LLC
350 Orange Street
New Haven, CT 06511
wdow@jacobslaw.com
Tel. (203) 772-3100
Fax (203) 772-1691

Dated: December 13, 2017

## CERTIFICATE OF SERVICE

I, Christian G. Kiely, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 13, 2017

/s/ *Christian G. Kiely*