UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

JACK MONTAGUE,
    Plaintiff,

v.

YALE UNIVERSITY, ANGELA GLEASON,
JASON KILLHEFFER, and OTHERS
UNKNOWN,
    Defendants.

CIVIL ACTION
No. 3:16-cv-00885-AVC

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

Plaintiff Jack Montague hereby submits this Reply in support of his Motion to Compel Production of Documents and Answers to Interrogatories (ECF No. 119). Yale in its Opposition has failed to meet its burden of "demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules," the discovery Plaintiff seeks "is not relevant or . . . is overly broad, unduly burdensome or oppressive." *Benavidez v. Greenwich Hotel Limited Partnership*, 2017 WL 1051184, at *2 (D. Conn. 2017). The additional discovery which Plaintiff seeks to compel through the instant Motion is all directly relevant to Plaintiff's claims and compliance with the requests would not impose any undue burden on Yale. For the reasons set forth below and in Plaintiff's opening brief (ECF No. 119), the Court should grant Plaintiff's Motion.

## ARGUMENT

**I.     The Discovery Sought into the "Dollar Bills Case" is Relevant and Imposes a Minimal Burden on Yale**

As explained in Plaintiff's opening brief, Plaintiff in this lawsuit has challenged the jurisdiction of Yale's University Wide Committee on Sexual Misconduct ("UWC") to hear a complaint against Plaintiff stemming from an incident during Plaintiff's freshman year at Yale in which he stuffed a used pizza plate down the shirt of a female senior who was belittling him. Plaintiff alleges that this incident (which the parties have referred to as the "UWC I" incident) did not involve sexual misconduct and thus should not have been adjudicated by the UWC or been treated as a prior offense of sexual misconduct on Plaintiff's disciplinary record, a designation which ultimately had dire consequences for Plaintiff. Discovery has revealed that when the UWC I complaint was originally lodged by the complaining student, members of the UWC openly questioned whether the incident could be properly regarded as an incident of sexual harassment appropriate for adjudication by the UWC, or instead should be referred to Yale's Executive Committee which adjudicates all other types of student misconduct. Plaintiff seeks narrow discovery into a precedential disciplinary matter, the so-called "Dollar Bills Case" which then-chair of the UWC, Michael Della Rocca characterized as another jurisdictional "close call" in emails with other members of the UWC deliberating the jurisdictional question. The information sought is plainly relevant and despite Yale's specious argument to the contrary, compliance with Plaintiff's narrowed request imposes no undue burden.

Yale argues that the Dollar Bills Case is irrelevant to Plaintiff's claims in this litigation for two principal reasons. First, Yale argues that the Dollar Bills Case could not be relevant to Plaintiff's jurisdictional argument because it appears, based on Della Rocca's email, that the UWC ultimately retained jurisdiction over the Dollar Bills Case and did not refer it to the

2

Executive Committee.  Second, Yale argues that the Dollar Bills Case is irrelevant because, it contends, Plaintiff waived his right to challenge the UWC's jurisdiction over the UWC I case because he did pursue an internal appeal of the finding against him in that case.  Neither argument is persuasive.

      a. <u>Information Concerning the "Dollar Bills" Case, Which Yale Admits Was a Jurisdictional "Close Call", Is Relevant To Plaintiff's Jurisdictional Challenge Concerning the UWC I Case.</u>

First, the fact that the UWC members may have ultimately determined that the Dollar Bills Case involved conduct which they deemed sufficiently sexual in nature to confer jurisdiction on the UWC does not render the Dollar Bills Case irrelevant to Plaintiff's claims in this litigation.  If, for example, the Dollar Bills Case involved conduct that was more clearly sexual in nature than the pizza plate incident that led to the UWC I complaint against Plaintiff, the fact that the UWC chairman characterized the Dollar Bills case as a "close call" would support Plaintiff's contention that his pizza plate incident was *not* a close call, and the UWC exceeded its jurisdiction in adjudicating it.  Given the comparison which the UWC chairman himself drew between the two cases, Plaintiff is entitled to know the nature of the conduct at issue in the Dollar Bills Case and the reasoning which led the UWC members to conclude that the UWC did indeed have jurisdiction over that case.  Separately, the role which the gender of the parties played in the UWC's decision to accept jurisdiction over the Dollar Bills Case is relevant to Plaintiff's Title IX claim arising from Yale's handling of the UWC I case.

      b. <u>Plaintiff's Waiver Defense is Not Grounds To Refuse To Provide Discovery Relevant to Plaintiff's Claims</u>

Nor is the Dollar Bills Case immune from discovery because Yale asserts that Plaintiff waived his right to challenge the jurisdiction of the UWC to adjudicate the pizza plate incident by failing to pursue an internal appeal.  Yale has not moved to dismiss the counts of the

3

operative Amended Complaint relating to the UWC I case, and so long as these claims remain part of the case, Plaintiff is entitled to take discovery on them. Yale can move for summary judgment on these claims at the appropriate time if it thinks it has a winning legal defense.

In any event, there is no merit to Yale's waiver defense. Yale's procedures specify that "[t]he only grounds for appeal" of a UWC decision are (i) procedural error that prevented the hearing panel or the decision maker from judging the matter fairly, or (ii) the discovery of facts that were not reasonably available to the appealing party prior to the UWC hearing and that support or refute the allegation of sexual misconduct. *See* UWC Procedures, Motion Ex. J, at Sec. 7.7. There was thus no available administrative procedure whereby Plaintiff could challenge the jurisdiction of the UWC to hear the case or the determination that the conduct to which he was admitting constituted an act of sexual misconduct. Accordingly, the doctrine of exhaustion of administrative remedies does not apply. *See, e.g., Stepney, LLC v. Fairfield*, 263 Conn. 558, 565 (2003) (recognizing that doctrine of exhaustion of administrative remedies does not apply when "recourse to an administrative remedy would be futile or inadequate"); *Mendillo v. Board of Education*, 246 Conn. 456, 467 (1998) (holding an "administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief").

Even if there were any merit to Yale's waiver argument, the Dollar Bills Case would still be relevant to Plaintiff's claim that he was denied basic fairness when the UWC II panel that recommended his expulsion treated the UWC I incident as a prior offense of sexual misconduct, as well as his Title IX claims arising from the handling of the UWC I matter as a sexual misconduct offense based solely on the gender of the parties involved.

      c.   <u>Yale's Grossly Overstates The Effort Required to Produce Responsive Documents Relating to the Dollar Bills Case</u>

Finally, Yale grossly overstates the burden associated with producing documents responsive to Plaintiff's narrowed requests. Yale retains the case files for all UWC cases and can easily retrieve and produce the file for the Dollar Bills Case. To the extent documents responsive to the second part of Plaintiff's narrowed requested, i.e., documents reflecting any discussion between the UWC decision makers concerning the decision whether to accept jurisdiction, are not included in the official case file, they can be collected via a targeted search of the email of then-UWC Chairman Della Rocca using the involved students' names or the case number. The likely small number of responsive documents, including the case file, can be redacted to protect the privacy of the students involved. Yale's assertion that the search for and production of documents responsive to Plaintiff's narrowed request would somehow involve thousands of documents defies logic.

**II.**    **Plaintiff is Entitled to the Redacted UWC Case Files of the Sixteen Relevant Precedential UWC Cases Identified in Plaintiff's Amended Complaint**

Yale repeats its well-worn burden objection in response to Plaintiff's request for the production of the UWC case files for the sixteen relevant precedential cases identified in Paragraph 179 of the Amended Complaint. The case files are maintained by the UWC pursuant to its recordkeeping practices and are thus easily retrievable; the only real burden associated with this request would be the ministerial task of redacting student names and identifying information, which can be performed by non-attorney staff. This burden is outweighed by the relevance of the case files requested by Plaintiff, the vast majority of which involve cases in which sanctions less than expulsion were imposed despite the students' being found responsible for conduct that, as best Plaintiff can tell based on the exceedingly vague published descriptions, was similar to the conduct with which Plaintiff was charged. A substantial question is thus raised whether Yale

5

consistently applied relevant precedents in accordance with its rules, *see* Ex. J, when it decided to expel Plaintiff. Yale should be required to produce these case files. Yale's alternative request for *in camera* review is inappropriate and unnecessary here where there is no claim of privilege over the files and counsel would be bound to maintain requisite confidentiality.

**III.    Plaintiff is Entitled to an Answer to Interrogatory No. 6 Regarding Outcomes Experienced by Other Students Expelled from Yale for Sexual Misconduct**

Based on a typographical error in Plaintiff's opening brief, Yale sets up a straw man and knocks it down. As the substance of Plaintiff's argument in his brief makes clear, *see* Motion at 13-14, Plaintiff has moved to compel an answer to Interrogatory **No. 6** to Plaintiff's Third Set of Interrogatories, Motion Ex. B at 4-5, which seeks certain basic information about cases since July 1, 2011 in which students were expelled from Yale for sexual misconduct, including Yale's knowledge of the outcomes experienced by those students since being expelled. Yale's counsel previously represented that there are approximately 5 or 6 (and certainly fewer than 10) cases that meet this criteria. *See* Motion Ex. F. at 4. There is no undue burden associated with providing this highly relevant information, most of which has already been gathered by Yale and submitted to the Court on an *ex parte* basis in connection with Plaintiff's Motion for Preliminary Injunction. The information can either be de-identified in such a way as to protect the identity of the students, or given the small number of students involved, Yale can opt to notify those students consistent with its obligations under FERPA. There is no legitimate basis for Yale to continue to withhold this critical information.

**IV.    Yale's Newly-Asserted Privilege Objection to Producing the Fall 2015 Title IX Training Materials Is Without Merit**

Yale initially refused to produced materials presented at its annual Title IX Training held in the Fall of 2015 on the grounds that Plaintiff's request for these materials was untimely. The relevance of these materials is discussed at length in Plaintiff's opening brief. As explained in

6

the opening brief, these materials were timely requested, both because the specific request for the Fall 2015 materials was made as a follow-up to the deposition of Yale's chief Title IX officer which was conducted by agreement after the close of fact discovery, and because the materials are responsive to other, broader document requests previously served within the fact discovery period.  Rather than respond to Plaintiff's argument that the documents sought are responsive to these earlier-served requests, Yale now asserts an alternative basis for withholding these training materials:  that they were presented by Susan Sawyer of Yale's Office of the General Counsel and thus are protected by the attorney-client privilege.  This late-advanced argument has no support in the law.

Case law establishes that compliance materials which are widely disseminated to employees within a corporate organization do not qualify for the attorney-client privilege, even if drafted by an attorney, essentially because the scope of distribution renders illusory any assurance of confidentiality.  *See, e.g., Hartford Life Ins. Co. v. Bank of America Corp.*, 2007 WL 2398824, at *3 (S.D.N.Y. 2007) (corporate compliance presentation regarding due diligence prepared by in-house and outside counsel not protected by attorney-client privilege); *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 430-31 (N.D. Ill. 2006) (no privilege for antitrust compliance manuals distributed to corporate employees).  Even if the training materials sought might be privileged under different circumstances, any privilege that might have otherwise attended materials drafted by Ms. Sawyer was vitiated when those materials were presented at the training session.  Because Yale refuses to produce even the attendance records for these training sessions, it is impossible for Plaintiff to fully evaluate Yale's dubious claim of privilege.  But the limited evidence in the record concerning these annual trainings indicates that in addition to employees of the Title IX office, SHARE Center, UWC, Yale Police Department,

and independent contractors hired as UWC fact finders, Yale's Title IX trainings also include students serving on the UWC, affiliated with the SHARE Center, and/or belonging to various other campus constituencies. *See* Ex. A, Transcript of August 31, 2017 Deposition of Stephanie Spangler, at 48:9-23. Yale cannot possibly maintain attorney-client privilege over materials disseminated so broadly, with no reasonable assurance that they would be kept confidential.

## CONCLUSION

For the reasons set forth above and in Plaintiff's opening brief (ECF No. 119), the Court should GRANT Plaintiff's Motion to Compel.

JACK MONTAGUE,

By his attorneys,

/s/  *Christian G. Kiely*
Max D. Stern (BBO #479560) (*pro hac vice*)
mstern@toddweld.com
Alexandra H. Deal (BBO #660654) (*pro hac vice*)
adeal@toddweld.com
Christian G. Kiely (BBO #684308) (*pro hac vice*)
ckiely@toddweld.com
TODD & WELD LLP
One Federal St., 27th Floor
Boston, MA 01880
Tel. (617) 720-2626
Fax (617) 227-5777

William F. Dow III (ct00161)
JACOBS & DOW, LLC
350 Orange Street
New Haven, CT 06511
wdow@jacobslaw.com
Tel. (203) 772-3100
Fax (203) 772-1691

Dated: January 8, 2018

## **CERTIFICATE OF SERVICE**

I, Christian G. Kiely, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 8, 2018

/s/ *Christian G. Kiely*