```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JACK MONTAGUE                      :
   plaintiff,                      :
                                   :
v.                                 : CIVIL NO. 3:16-cv-00885(AVC)
                                   :
YALE UNIVERSITY, ANGELA            :
GLEASON, JASON KILLHEFFER,         :
AND OTHERS UNKNOWN,                :
   defendants.                     :
```

### RULING ON THE PLAINTIFF'S MOTION TO COMPEL

This is an action for damages and injunctive relief in which the plaintiff, Jack Montague (hereinafter "Montague"), alleges breach of contract and violations of 20 U.S.C. § 1681[1] and 42 U.S.C. § 1981.[2] It is brought pursuant to 28 U.S.C. § 1331[3] and 28 U.S.C. § 1332.[4]

Montague filed the within motion to compel production of documents. The defendants object to further requests for

---

[1] 20 U.S.C. § 1981 states in pertinent part that no "person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

[2] 42 U.S.C. § 1981 states that all "persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[3] 28 U.S.C. § 1331 provides that the "district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[4] 28 U.S.C. § 1332 states in relevant part that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different states."

production.  For the reasons that follow, Montague's motion to compel (doc. no. 86) is DENIED.

## FACTS

On January 25, 2017, Montague filed the amended complaint in this case.  The amended complaint alleges that Montague was unlawfully and improperly expelled from Yale University on or about February 24, 2016 for alleged sexual misconduct.

The defendants have withheld or redacted certain documents containing communications to and from attorneys at the Office of General Counsel (hereinafter "OGC") at Yale University, as well as communications on which members of the OGC were copied.  These documents are the subject of the instant motion to compel.

## STANDARD

"[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Furthermore, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  "The definition of relevance [is] to be liberally construed . . . ." Breon v. Coca-Cola Bottling Co., 232 F.R.D. 49, 52 (D. Conn. 2005).  Moreover, the district court has "wide latitude to determine the scope of discovery . . . ." In Re Agent Orange Product Liability Litigation, 517 F.3d 76, 103 (2d Cir. 2008).  "The objecting party bears the burden of

2

demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive . . . ." <u>Klein v. AIG Trading Group Inc.</u>, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal citations and quotation marks omitted).

## **DISCUSSION**

Montague moves to compel the production of the following documents:

- Redacted Communications:
    - YALE00011984
    - YALE00000845
    - YALE00015947-00015948
    - YALE00015953-00015954
    - YALE00012942-00012943
    - YALE00013179-00013180
    - YALE00012287-00012289
    - YALE00012290-00012292
    - YALE00016686-00016689
    - YALE00012797-00012799
    - YALE00016867-00016869
    - YALE00012210
    - YALE00016008-00016011
    - YALE00011984

- Withheld Documents:
    - Log at Ex. A, lines: 8, 43, 60, 100, 117, 119-120, 123, 125, 161-164, 176-177, 184-188, 241-242, 245-246, 259-264, 273-274, 287-288
    - Log at Ex. B, lines: 24, 51-84, 135-138, 147-152, 174-177
    - Log at Ex. C, lines: 7-10, 13-16
    - Log at Ex. A, lines: 79-81, 143-146, 227-231
    - Log at Ex. B, lines: 18, 28-33, 93-100, 161-162
    - Log at Ex. B, lines: 52, 67-68, 70, 179, 181-189

In support of his motion to compel, Montague argues that the defendants are "attempting to shield from disclosure documents that are critical to the claims in this case by improperly claiming attorney-client privilege and/or work product protection." Specifically, Montague argues that such documents "fall into one or more of the following categories: 1) [d]ocuments whose privilege, if it ever existed, has been waived; 2) [d]ocuments for which there is no showing that the communications were made for the purpose of giving or receiving legal advice; and 3) [d]ocuments in which there is disclosure to third parties."

## I.   Waiver of the Attorney-Client Privilege

Montague argues that the defendants "have improperly redacted certain documents on the basis of attorney-client privilege when it is clear that if a privilege ever existed as to those documents, it has been waived by the detailed testimony of the individual defendants." The defendants respond, "[t]here was no waiver of privilege because neither witness gave any testimony whatsoever in their depositions as to statements made or advice given by Attorney Sawyer." Furthermore, the defendants respond, "even if answering questions regarding the conversations of the non-lawyers at the meeting could somehow be construed as a waiver of the privilege with respect to the

advice offered by Attorney Sawyer, these witnesses were not authorized to waive the privilege."

The attorney-client privilege protects from disclosure of "confidential communications that pass in the course of professional employment from client to lawyer." U.S. v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989).  The privilege protects "both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information." In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992).  "To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." U.S. v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (citing Fisher v. U.S., 425 U.S. 391, 403 (1976).  The party asserting the privilege bears the burden of establishing its essential elements.  See von Bulow ex rel. Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987).

If the holder of the attorney-client privilege "voluntarily undertakes actions that will predictably lead to the disclosure of the document, then waiver will follow." Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 479 (S.D.N.Y. 1993) (citing In re von Bulow, 828 F.2d 94, 100-01 (2d Cir. 1987)).

Determining whether a party has waived the attorney-client privilege is addressed "'on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'" In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008) (quoting In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000)).

The attorney-client privilege attaches to corporations as well as to individuals. Upjohn Co. v. United States, 449 U.S. 383 (1981). "[F]or solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343 (1985).

In this case, Angela Gleason (hereinafter "Gleason") is an Assistant Director of the Center for Language Study, Director of the Native American Language Project, and a Deputy Title IX Coordinator. Jason Killheffer (hereinafter "Killheffer") is an Assistant Provost and the Senior Deputy Title IX Coordinator. Neither Gleason nor Killheffer is a member of Yale University's management, an officer, or a director. Therefore, neither Gleason nor Killheffer had the authority to waive the attorney-client privilege on behalf of Yale University. Furthermore, the defendants' counsel objected to all questions regarding the substance of communications with Attorney Sawyer on the basis of

6

the attorney-client privilege at the depositions of Gleason and Killheffer. Therefore, the defendants have not waived the attorney-client privilege with respect to the documents at issue.

### II. Communications Made for the Purpose of Giving or Receiving Legal Advice

Montague next argues that the "[d]efendants have also improperly redacted or withheld a number of documents on which general counsel either commented or was copied, but whose primary purpose is not clearly legal." The defendants respond, "[t]he fact that both attorneys and lay individuals participated in drafting and editing the reports connected with the investigation of the [University Wide Committee on Sexual Misconduct (hereinafter "UWC")] complaint against the plaintiff does not defeat the attorney-client privilege."

"Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "It requires a lawyer to rely on legal education and experience to inform judgment." Id. (citing Ball v. U.S. Fid. & Guar. Co., No. M8-85, 1989 WL 135903, at *1 (S.D.N.Y. Nov. 8, 1989). "But it is broader, and is not demarcated by a bright line." Id., at 420. In determining whether communications were made for the purpose of obtaining or

7

providing legal advice, "[w]e consider whether the predominant purpose of the communication is to render or solicit legal advice." Id.

In this case, the predominant purpose of the communications in question was either to render or to solicit legal advice. While both attorneys and non-attorneys participated in drafting and editing the reports in connection with the investigation of the UWC complaint, Yale's counsel were still acting in their roles as attorneys throughout their communications with the defendants. The predominant purpose of the defendants' counsel's communications with the defendants was to provide legal advice throughout the course of the investigation and the UWC hearing process. Therefore, the communications in question took place predominantly for the purpose of obtaining legal advice.

**III. Disclosure to Third Parties**

Montague next argues that the "[d]efendants have also withheld, on the basis of a purported attorney-client privilege, communications between (or involving) the UWC II fact-finder, Miriam Berkman, and general counsel," and that, "Ms. Berkman is a third party. . . and had no client relationship with the Yale general counsel's office." The defendants respond that Yale "hired Ms. Berkman to conduct an investigation into Ms. Roe's complaint against the plaintiff," and that "Ms. Berkman was

8

working at the behest of Yale and as its agent," therefore, "the attorney-client privilege extends to communications with Ms. Berkman."

"Generally, the [attorney-client] privilege applies only to communications between a client and its lawyer, not between the client or its lawyer and third parties." In re Grand Jury Proceeding, 79 Fed. Appx. 476, 477 (2d Cir. 2003). "Under certain circumstances, however, the privilege for communication with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client." U.S. v. Adlman, 68 F.3d 1495 (2d Cir. 1995). "[T]he attorney-client privilege may extend to communications with a third party, such as an accountant or private investigator hired to assist in the rendition of legal services." In re Grand Jury Proceeding, 79 Fed. Appx. 476, 477 (2d Cir. 2003). "Like any communications protected by the attorney-client privilege, however, communication with such third-party agents is only protected if it is 'made in confidence for the purpose of obtaining legal advice from the lawyer.'" Id. (citing United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)).

In this case, Yale hired Miriam Berkman (hereinafter "Berkman"), a licensed social worker, to conduct an investigation into Ms. Roe's complaint against Montague, as well

9

as to assist counsel in providing appropriate legal advice based on the results of such investigation.  Berkman was acting as an agent of Yale, and her findings were necessary to the defendants' counsel's consultation, in that the results of her investigation were essential to the defendants' counsel's ability to provide adequate legal advice.  Disclosure of the privileged communications to Berkman was necessary for the defendants to obtain informed legal advice.  Berkman's communications with the defendants and the defendants' counsel were made in confidence for the purpose of obtaining legal advice.  Because Berkman provided information necessary for Yale's counsel to render informed legal advice to the defendants, the attorney-client privilege extends to the communications with Berkman.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel (doc. no. 86) is DENIED.

It is so ordered this 26th day of March, 2018 at Hartford, Connecticut.

_____/s/_____
Alfred V. Covello
United States District Judge