## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
JACK MONTAGUE              :
  plaintiff,               :
                           :
v.                         : CIVIL NO. 3:16-cv-00885(AVC)
                           :
YALE UNIVERSITY, ANGELA    :
GLEASON, JASON KILLHEFFER, :
AND OTHERS UNKNOWN,        :
  defendants.              :
```

## RULING ON THE PLAINTIFF'S AND THE DEFENDANTS' MOTIONS TO COMPEL

This is an action for damages and injunctive relief in which the plaintiff, Jack Montague (hereinafter "Montague"), alleges breach of contract and violations of 20 U.S.C. § 1681[1] and 42 U.S.C. § 1981.[2]  It is brought pursuant to 28 U.S.C. § 1331[3] and 28 U.S.C. § 1332.[4]

Montague filed the within motion to compel production of documents and answers to interrogatories. The defendants have

---

[1] 20 U.S.C. § 1981 states in pertinent part that no "person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

[2] 42 U.S.C. § 1981 states that all "persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[3] 28 U.S.C. § 1331 provides that the "district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[4] 28 U.S.C. § 1332 states in relevant part that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different states."

also filed two separate motions to compel production of
documents and a second deposition of James Montague.  Both
Montague and the defendants object to further requests for
production, interrogatories, and deposition.  For the reasons
that follow, Montague's motion to compel (doc. no. 119) is
granted in part and denied in part.  The defendants' motion to
compel (doc. no. 122) is granted in part and denied in part.
The defendants' motion to compel (doc. no. 123) is granted in
part and denied in part.

## FACTS

On January 25, 2017, Montague filed the amended complaint
in this case.  The amended complaint alleges that Montague was
unlawfully and improperly expelled from Yale University on or
about February 24, 2016 for alleged sexual misconduct.

On October 30, 2017, Montague filed his motion to compel
production of documents and answers to interrogatories.
Specifically, Montague seeks to compel the production of
discovery concerning other Yale student disciplinary matters,
information concerning outcomes for other students whom Yale has
expelled for sexual misconduct, communications between Yale
administrators and the Yale Women's Center concerning a social
media post in which the Women's Center "outed [the] [p]laintiff
as a sexual assailant," communications between its counsel and

counsel for non-party witness Jane Roe surrounding her
deposition testimony, and materials presented at an annual
training for members of the Yale community responsible for the
investigation and adjudication of sexual assault complaints and
Yale's compliance with Title IX.

On November 8, 2017, the defendants filed a motion to
compel documents from plaintiff's expert witnesses.
Specifically, the defendants seek to compel the production of
the following documents from one Stan Smith, PhD: (1) bills,
including an itemization as to the tasks performed, the amount
of time spend, and the hourly rate for each; (2) documents
demonstrating Dr. Smith's calculation of the value of the
plaintiff's lost wages and benefits; and (3) documents
identifying the assumptions and facts provided by Montague's
counsel to Dr. Smith.  The defendants seek to compel the
production of the following documents from Susana Murphy, Esq.:
(1) notes marked as Exhibits T and U at Attorney Murphy's
October 20, 2017 deposition; (2) the "run sheet" related to
Attorney Murphy's work on Montague's case; (3) bills subsequent
to September 11, 2017; and (4) materials published in connection
with the "ATIXA-Member of Title IX Investigators, Addressing
Sexual Assault Allegations K-12 Schools, Colleges and
Universities" seminar attended by Attorney Murphy in October
2014.

On November 10, 2017, the defendants filed a motion to compel the following: (1) answers to the questions posed at the deposition of Montague's father, James Montague, regarding the public relations firm Montague engaged to publicize Montague's position in this lawsuit and fundraising for Montague's legal fees; (2) documents exchanged between the public relations firm and Montague's mother, Kelly Montague, James Montague, Montague, and/or Montague's counsel; and (3) medical records relating to Montague's treatment for difficulties with his memory and/or auditory processing.  The defendants seek to compel a second deposition of James Montague, at the plaintiff's expense.  The defendants request that this deposition be held without anyone else present besides the deponent, the court reporter, and counsel for the parties.

**STANDARD**

"[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Furthermore, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  "The definition of relevance [is] to be liberally construed . . . ." Breon v. Coca-Cola Bottling Co., 232 F.R.D. 49, 52 (D. Conn. 2005).  Moreover, the district court has "wide latitude to determine the scope of discovery . . . ."

In Re Agent Orange Product Liability Litigation, 517 F.3d 76, 103 (2d Cir. 2008).  "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive . . . ." Klein v. AIG Trading Group Inc., 228 F.R.D. 418, 422 (D. Conn. 2005) (internal citations and quotation marks omitted).

## DISCUSSION

I.   Montague's Motion to Compel

   a. Documents Concerning Prior University Disciplinary Matters

Montague first argues that "Yale should be ordered to provide discovery regarding relevant precedential university disciplinary matters."  Specifically, Montague argues that he seeks "relevant information concerning precedential [University-Wide Committee on Sexual Misconduct (hereinafter "UWC")] disciplinary matters," because, "[i]nformation about these cases is relevant to [the] [p]laintiff's claims, the scope of information sought is proportional to the needs of the case, and the information can be provided in such a way as to protect the privacy interests of the individuals involved."  More specifically, Montague seeks "documents relating to a UWC case known as the 'dollar bills case,'" as well as, "certain other

UWC cases, the outcomes of which were published in Yale's semi-annual Report of Complaints of Sexual Misconduct, in which the respondent was found to have engaged in non-consensual sex but was not expelled."

The defendants respond that "the requested discovery is irrelevant and not proportional to the needs of this case and that disclosure of these documents would violate the privacy interests of individuals who are not parties to this action." Specifically, the defendants argue that "[d]]isclosure of this material would violate the Federal Educational Rights and Privacy Act, because it would include a disclosure of all personally identifiable information in the educational records of all of the students involved in each of those cases."  The defendants request that "in the event that the court is considering requiring the production of any of these records, the defendants request that the [c]ourt conduct an in camera review in order to ensure that only those cases in which the respondents were actually similarly situated to the plaintiff are subject to disclosure."

The Federal Educational Rights and Privacy Act (hereinafter "FERPA") protects the confidentiality of educational records kept by government-funded schools. 20 U.S.C. § 1232g.  FERPA prohibits educational agencies from disclosing "educational records" or "personally identifiable information contained

6

therein" without parental consent or court order.  20 U.S.C. §
1232g(b)(1).

   While there may exist privacy issues with respect to the
documents concerning prior university disciplinary matters, the
defendants may redact such documents in order to protect the
privacy of the students involved.  The court concludes that the
information concerning relevant precedential university
disciplinary matters, specifically, the "dollar bills case" and
the cases listed in paragraph 179 of the amended complaint, is
relevant and that the defendants have failed to demonstrate that
disclosure of such documents in their redacted form would be
overly broad or unduly burdensome.  However, disclosure shall be
limited to UWC cases in which the respondent was similarly
situated to the plaintiff in that he or she was charged with
sexual penetration or intercourse without consent and he or she
had prior discipline imposed by either the UWC or the Executive
Committee.  The number of custodians whose electronically stored
information is to be searched and the number of search terms
applied shall be restricted so as to make the defendants' task
of producing relevant information reasonable.

### b. Information Concerning Students Accused of Sexual Misconduct Since July 1, 2011

   Montague next argues that the defendant, Yale, should be
ordered to produce information in its possession concerning

outcomes experienced by students expelled for sexual misconduct
since 2011.  Specifically, Montague "seeks limited discovery
into certain other UWC cases, the outcomes of which were
published in Yale's semi-annual Report of Complaints of Sexual
Misconduct, in which the respondent was found to have engaged in
non-consensual sex but was not expelled, and a few rare cases
like [the] [p]laintiff's where the respondent was expelled."

The defendants respond, "with the exception of information
regarding the prior disciplinary history of the accused
students, all of the information requested in this interrogatory
is. . . publicly available online," and that this information
"is protected from disclosure by FERPA."  The defendants request
that "[i]n the event that the [c]ourt is inclined to consider
requiring production of this information, the defendants request
that the [c]ourt conduct an in camera review in order to ensure
that the greatest protection possible is given to this highly
sensitive information, including the full redaction of any
information that might reasonably identify the students."

The court concludes that, to the extent the information is
already available to Montague, the motion to compel information
concerning students accused of sexual misconduct since July 1,
2011 is denied.  However, with respect to the information that
is not publicly available, namely, information regarding the
prior disciplinary history of the accused students, the motion

to compel is granted.  The court directs the defendants to redact any information that might reasonably identify any students.

### c. Communications Between Yale Administrators and the Yale Women's Center

Montague next argues that he is "entitled to communications between Yale administrators and leadership at the Women's Center surrounding these events because they are relevant to determining, among other things, whether the original or edited statements. . . are attributable to Yale."  Specifically, Montague argues that he "is entitled to learn through discovery whether Yale played a role in outing him."

The defendants respond that the court "need not rule on this issue, since the parties have now resolved it."

As the parties have agreed that compliance with this discovery request will be limited to an electronic search of the records of Dr. Melanie Boyd for the months of February and March, 2016, and the search terms to be applied for that electronic search will be "Montague OR Facebook," the court concludes that the motion to compel on this issue is moot.

### d. Communications Between Yale's Counsel and Counsel for Ms. Roe

Montague next argues that "Yale should be ordered to produce communications between its counsel and counsel for Ms. Roe."  Specifically, Montague avers that "Yale's conjuring of a

joint defense agreement with Ms. Roe, who has no legal stake in the outcome of this litigation, cannot shield communications undertaken for this or any purpose."

The defendants respond, "[c]ontrary to the plaintiff's assertion, the defendants do not seek to assert a common interest or joint defense privilege," and that, "the requested communications are protected from disclosure by the work product doctrine." Specifically, the defendants aver that "the communications between defense counsel and Attorney Sconzo contain information relating to Yale's defense strategy," and that, "the defendants and Ms. Roe have a common interest in seeing the plaintiff's expulsion upheld," and therefore the communications, "did not constitute a waiver of the protection afforded by the work product doctrine."

The work product doctrine shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). It also protects against "disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). "Disclosure of material protected by the work-product doctrine. . . results in

a waiver of the protection afforded by that doctrine only when
the disclosure is to an adversary or materially increases the
likelihood of disclosure to an adversary." <u>Coastline Terminals
of Connecticut, Inc. v. United States Steel Corp.</u>, 221 F.R.D.
14, 16-17 (D. Conn. 2003)(citing <u>In re Steinhardt Partners,
L.P.</u>, 9 F.3d 230, 234-35 (2d Cir. 1993)).

The communications between defense counsel and counsel for
Ms. Roe contain information relating to the defendants' defense
strategy.  Furthermore, because the defendants and Ms. Roe have
a common interest in seeing Montague's expulsion upheld, sharing
the defense strategy with counsel for Ms. Roe did not increase
the likelihood of disclosure of that strategy to Montague.
Therefore, the defendants' disclosure of this information to
counsel for Ms. Roe does not constitute waiver of the work
product doctrine.  The court concludes that the motion to compel
communications between the defendants' counsel and counsel for
Ms. Roe is denied.

### e. Documents Concerning the Fall 2015 Title IX/UWC Training

Montague next argues that "Yale should be ordered to
produce documents concerning the Fall 2015 Title IX/UWC
training," including, "documents sufficient to show the date(s)
of the annual Title IX/UWC training held in the Fall of 2015;
documents reflecting the agenda, syllabus, and/or curriculum for

11

the training; attendance records for the training; any materials
presented or distributed in connection with the training; and
any recording of the training."  Specifically, Montague avers
that "the training that Yale provided to these individuals is
relevant to questions concerning, among other things, how Yale
interpreted the various provisions of the UWC Procedures at
issue in this litigation, and the direction it provided to Title
IX officers, UWC panelists, fact-finders, and others regarding
compliance with those procedures."

The defendants respond that "[s]ince the [f]ourth [r]equest
for [p]roduction was propounded outside of the fact discovery
completion date, it is untimely and the defendants should not be
required to comply with those discovery requests."
Specifically, the defendants aver that, "plaintiff's counsel was
aware of the existence of the Title IX training materials well
prior to the close of discovery and decided not to request
them," and that, "[s]ince the plaintiff has not alleged any
claims regarding the adequacy of the training provided to Title
IX Coordinators and/or UWC members, the requested documents are
irrelevant and not likely to lead to the discovery of relevant
information."

On September 13, 2016, Montague served requests for
production on the defendants, including a request which sought
"[a]ll documents provided to any agents or employees of Yale or

12

anyone appointed to serve on a UWC Hearing Panel concerning the operation, interpretations, or application and/or training on UWC disciplinary proceedings from July 1, 2011, to the present." Montague served his specific request for documents concerning the "Fall 2015 Title IX/UWC Training" on September 8, 2017, after the June 30, 2017 deadline for fact discovery.  However, because the documents at issue are relevant and responsive to the earlier request served in 2016, the court grants the motion to compel these documents.

## II.  The Defendants' November 8, 2017 Motion to Compel

### a. Documents from Dr. Smith

#### i. Dr. Smith's Bills

The defendants first argue that Montague is "required to produce Dr. Smith's bills, including an itemization as to the tasks performed, the amount of time spent, and the hourly rate for each," and "communications between Dr. Smith and plaintiff's counsel which relate to compensation for Dr. Smith's study or testimony in this matter."

Montague responds that, "[a] testifying expert's notes of conversations with counsel are generally not discoverable." Specifically, Montague avers that "a testifying expert's notes. . . are protected from disclosure to the extent they reflect communications with counsel not falling into one of three exceptions set forth in Rule 26(b)(4)(C)."

Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure protects communications between a party's attorney and any expert witness, regardless of the form of the communications, "except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."

Communications between Dr. Smith and Montague's counsel relating to compensation for Dr. Smith's study or testimony are not protected from disclosure.  The court concludes that the defendants' motion to compel with respect to Dr. Smith's bills is granted.

### ii. Documents Demonstrating Calculation of the Value of the Plaintiff's Lost Wages and Benefits

The defendants next argue that Montague is "required to produce documents demonstrating Dr. Smith's calculation of the value of the plaintiff's lost wages and benefits." Specifically, the defendants aver that, "[t]he defendant cannot assess the reliability of Dr. Smith's opinion without reviewing the documents demonstrating his calculations."

Montague does not respond to this argument.

14

The court concludes that documents demonstrating calculation of Montague's lost wages and benefits are relevant to assessing the reliability of Dr. Smith's opinion.  Therefore, the defendants' motion to compel such documents is granted.

### iii. Documents Identifying the Assumptions and Facts Provided by Montague's Counsel

The defendants next argue that Montague is "required to produce communications between Dr. Smith and plaintiff's counsel which (1) identify facts of data that plaintiff's counsel provided and that the expert considered in forming the opinions; and (2) identify assumptions that plaintiff's counsel provided and that the expert relied on in forming the opinions."

Montague responds that this portion of the defendants' motion to compel is "moot," because Montague's counsel has "produced all documents not protected under Rule 26(b)(4), including communications between Plaintiff's counsel and Ms. Murphy in redacted form."

The court concludes that the defendants' motion to compel documents identifying the assumptions and facts provided by Montague's counsel to Dr. Smith is moot.

### b. Documents from Attorney Murphy

### i. Notes Taken and Reviewed by Attorney Murphy

The defendants next argue that "[a]ny facts, data, or assumptions provided by plaintiff's counsel to Attorney Murphy

are discoverable," and that "the plaintiff should be compelled to produce Exhibits T and U, with the exception of statements reflecting plaintiff's counsel's mental impressions, conclusions, opinions, or legal theories."  The defendants request an in camera inspection of Exhibits T and U "to determine if any part thereof is protected from disclosure."

Montague responds, "[the] [d]efendants are improperly seeking to invade the work product privilege which the Federal Rules expressly confer upon certain expert materials." Specifically, Montague avers that "an expert's notes reflecting conversations with counsel must be protected from disclosure to the same extend the underlying communications are protected," and that, "[t]he bulk of Ms. Murphy's notes are not discoverable because they reflect conversations with counsel not falling into one of the three exceptions in Rule 26(b)(4)(C)."

Ms. Murphy submitted an affidavit stating, in part, "[n]one of my notes marked as Exhibit T or Exhibit U relate to the compensation I was paid for my work in this case or identify any assumptions provided to me by [p]laintiff's counsel which I relied in forming my opinions in this case."  While Ms. Murphy determined that Exhibit U contained seven pages of notes reflecting conversations with counsel regarding various drafts of her report, Montague produced the remaining three pages to

the defendants, marked as "Exhibit X" during the second day of Ms. Murphy's deposition.

The court directs Montague to submit Exhibits T and U to the court for an in camera inspection to determine whether such documents are protected communications under Rule 26(b)(4)(C).

### ii. Run Sheet

The defendants next argue that "only those portions of the run sheet which reflect plaintiff's counsel's mental impressions, conclusions, opinions, or legal theories are protected from disclosure," and request an in camera inspection of Attorney Murphy's run sheet "to determine if any part thereof is protected from disclosure."

Montague responds that he has already produced the run sheet in a redacted form.

The court concludes that the defendants' motion to compel the run sheet is moot.

### iii. Bills Subsequent to September 11, 2017

The defendants next argue that "the plaintiff should be compelled to produce any subsequent bills" relating to Attorney Murphy's work on this matter.

Montague responds that he has already provided the invoices issued subsequent to Ms. Murphy's September 11, 2017 invoice.

The court concludes that the defendants' motion to compel Ms. Muprphy's bills subsequent to September 11, 2017 is moot.

17

### iv. Materials Published with Seminar

The defendants next argue that Montague "should be
compelled to provide any materials published in connection with
the ATIXA-Member of Title IX Investigators, Addressing Sexual
Assault Allegations K-12 Schools, Colleges and Universities
seminar attended by Attorney Murphy in October, 2014," because
they are "relevant to whether Attorney Murphy is qualified to
testify as an expert witness concerning the defendant's
investigation of the complaint of sexual misconduct made against
the plaintiff."

Montague responds that Ms. Murphy is unable to locate the
seminar materials requested.

With respect to this request, the court orders Montague to
confirm that Ms. Murphy has no such materials in her possession.

### III. The Defendants' November 10, 2017 Motion to Compel

#### a. Information Regarding the Public Relations Firm and Fundraising for Legal Fees

##### i. The Deposition of James Montague

The defendants first argue that "[s]ince plaintiff's
counsel instructed [James] Montague not to answer questions
regarding the public relations firm and the fundraising efforts
for the plaintiff's legal fees, the defendants request that the
plaintiff be compelled to produce [James] Montague for a second
deposition limited to those two topics, and that the plaintiff

be required to pay the expenses for said deposition." Specifically, the defendants aver that "[n]one of the questions posed to Mr. Montague regarding the public relations firm and the fundraising for legal fees sought information regarding a communication between the plaintiff and his counsel made for the purpose of obtaining or providing legal advice," and that, "the amount of money that has been paid to the public relations firm and the amount of money raised to fund this lawsuit is relevant to the issue of damages."

Montague responds, "[d]efendants should not be allowed to re-open the deposition of James Montague to engage in irrelevant and inappropriate inquiry concerning the funding of plaintiff's lawsuit."  Specifically, Montague argues that the court "should deny [the] [d]efendants' request because the information sought has no legitimate bearing on any of the claims or defenses in this litigation, and because, under the circumstances, [the] [p]laintiff should be entitled to maintain as attorney work product information concerning the funding of this litigation until such time as he prevails at trial and presses him claim for attorney's fees."

The defendants aver that the amount of money which has been raised for Montague's legal fees and the amount of money paid to the public relations firm is relevant to Montague's mitigation of damages because "those funds could have been used to pay the

outstanding bill at Yale University and obtain his transcript, thereby enabling him to apply to other colleges and universities in a timely manner." While the issues surrounding Montague's mitigation of damages may be relevant in this case, the amount of money raised for Montague's legal fees is not relevant to whether Montague mitigated his damages. The court concludes that information regarding fundraising for Montague's legal fees is not relevant at this time. The defendants' motion to compel information regarding fundraising for legal fees and to re-open the deposition of James Montague for this purpose is denied. If the court determines that such information is necessary at a later stage in the proceedings, the court may reopen discovery for this limited purpose.

### ii. Documents Exchanged with Public Relations Firm

The defendants next argue that "the plaintiff should be compelled to produce documents exchanged between the public relations firm and Mrs. Montague, Mr. Montague, the plaintiff, and/or plaintiff's counsel because such communications are not protected by the attorney-client privilege or the work product doctrine." Specifically, the defendants aver "the communications with the public relations firm were made for the purpose of publicizing the plaintiff's position that he was wrongfully expelled through the media, and not to obtain legal services, and that the attorney-client privilege does not extend

to the public relations firm."  The defendants request an "in camera review of the documents exchanged between the public relations firm and Mrs. Montague, Mr. Montague, the plaintiff, and/or plaintiff's counsel to determine whether any are protected from disclosure by the work product doctrine."

Montague responds, "[c]ommunications exchanged between and among [the] plaintiff, plaintiff's counsel, and Ms. Schwartzman are protected attorney work product."  Specifically, Montague avers that, "[t]he purpose and timing of Ms. Schwartzman's retention in anticipation of [the] [p]laintiff's filing a lawsuit against Yale render all such communications a byproduct of that litigation," and that, "[w]hile not all such communications necessarily pertain to litigation strategy or reveal counsel's mental impressions, they need not do so in order to constitute work product."

Generally, public relations advice falls outside of the ambit of protection of the "work-product" doctrine.  Fed. R. Civ. P. 26(b)(3).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  United States v. Nobles, 422 U.S. 225, 238 (1975).  However, because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," the doctrine also

protects "material prepared by agents for the attorney as well as those prepared by the attorney himself." Id. At 238-39.  The purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the public. See Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53 (S.D.N.Y. 2000). (citing United States v. Adlman, 68 F.3d 1495 (2d Cir. 1995)).

In this case, it is unclear whether the communications exchanged between Montague, Montague's counsel, and the public relations firm were made for the purpose of strategizing about the conduct of litigation itself or solely for the purpose of obtaining public relations advice.  The court concludes that an in camera inspection is appropriate to determine whether the communications exchanged between Montague, Montague's counsel, and the public relations firm are protected from disclosure by the work product doctrine.

### b. Medical Records

The defendants next argue that Montague "should be compelled to produce all medical records related to his difficulty with memory and/or auditory processing." Specifically, the defendants aver that "[m]edical records regarding his memory and/or auditory processing difficulties are certainly relevant to assessing the plaintiff's ability to

22

remember the encounters with the student whom the plaintiff was accused of sexually assaulting," and, "relevant to crediblity."

Montague respond that he "has always agreed to provide" such medical records, and that the records were produced to the defendants on December 7, 2017.

The court concludes that the defendants' motion to compel medical records is moot.

<u>**CONCLUSION**</u>

For the foregoing reasons, Montague's motion to compel (doc. no. 119) is GRANTED in part and DENIED in part.  The defendants' motion to compel (doc. no. 122) is GRANTED in part and DENIED in part.  The defendants' motion to compel (doc. no. 123) is GRANTED in part and DENIED in part.

It is so ordered this 1st day of August, 2018 at Hartford, Connecticut.


_____/s/_____
Alfred V. Covello
United States District Judge