17-3594-cv
Doe v. Colgate Univ.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of January, two thousand nineteen.

PRESENT:  JOHN M. WALKER, JR.,
          PIERRE N. LEVAL,
          CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.
_____

JOHN DOE,

            *Plaintiff-Appellant*,

    v.                                                     No. 17-3594-cv

COLGATE UNIVERSITY,

            *Defendant-Appellee,*

COLGATE UNIVERSITY BOARD OF TRUSTEES, JEFFREY HERBST, individually and as agent for Colgate University, SUZY M. NELSON, individually and as agent for Colgate University, KIMBERLY TAYLOR, individually and as agent for Colgate University, MARILYN RUGG, individually and as agent for Colgate University, VALERIE BROGAN, individually and as agent for Colgate University, TAMALA FLACK, individually and as agent for Colgate University,
            *Defendants.*
_____

1

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | PHILIP A. BYLER, (Andrew T. Miltenberg, Kara Gorycki, Tara Davis, *on the brief*), Nesenoff & Miltenberg, LLP, New York, NY |
| FOR DEFENDANT-APPELLEE: | LAURA H. HARSHBARGER, Bond, Schoeneck & King, PLLC, Syracuse, NY. |

Appeal from an October 31, 2017, judgment entered by the United States District Court for the Northern District of New York (Kahn, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-Appellant John Doe[1] appeals from the October 31, 2017, judgment of the United States District Court for the Northern District of New York (Kahn, *J.*) dismissing this action on summary judgment. John Doe brought claims against Colgate University ("Colgate," or "the University") and a number of its officers and administrators alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), as well as, among other claims, breach of contract and breach of the duty of good faith and fair dealing.[2] He contends that Colgate discriminated against him because of his gender and violated policies set forth in its own student handbook when it expelled him for sexual misconduct in his senior year. John Doe also challenges the district court's ruling that his proffered expert witness's testimony was inadmissible under Rule 702 of the Federal Rules of Evidence for consideration during the summary judgment proceedings.

**I.     Background**

A.  Factual Background

Colgate University is a private university in Hamilton, New York. John Doe was an undergraduate student there from Fall 2011 until he was expelled for sexual misconduct in April 2015. Colgate adjudicates sexual misconduct allegations according to its Equity Grievance Policy ("EGP"), through the Equity Grievance Panel (the "Panel"). The Panel

---

[1] The district court granted John Doe's motion to proceed under a pseudonym.
[2] John Doe withdrew his appeal as to the individual defendants. He also does not appeal the dismissal of his claims brought under the New York General Business Law, New York State Human Rights Law, or for "estoppel and reliance," negligence, or declaratory judgment; thus, he has abandoned these claims.

investigates misconduct allegations and holds a hearing if the alleged conduct may warrant suspension or expulsion.

On October 28 and 29, 2014, Jane Does 1, 2, and 3[3] filed anonymous reports with the University, each alleging that John Doe had returned to their dormitory rooms after social events and had touched them sexually without their consent. Jane Does 1 and 3 additionally claimed John Doe had digitally penetrated them without their consent. Jane Doe 1 alleged conduct occurring on October 28–29, 2011 (the "October 2011 incident"); Jane Doe 2 alleged conduct occurring on February 11–12, 2012 (the "February 2012 incident"); and Jane Doe 3 alleged conduct occurring on April 28–29, 2012 (the "April 2012 incident").

In November 2014, Jane Doe 2 met with Marilyn Rugg, the University's Title IX coordinator, to file a formal complaint. Rugg assigned Valerie Brogan, the Campus Safety Investigator, and Tamala Flack, the Director of Equal Employment Opportunity and Affirmative Action, to investigate the complaint.

Brogan interviewed Jane Doe 2 on November 7, 2014, and confirmed she was one of the anonymous complainants. Brogan and Flack spoke with six witnesses about the complaint, including Jane Does 1 and 3. Jane Does 1 and 3 eventually informed Brogan and Flack that they had authored the other two complaints. Brogan and Flack reported the complainants' identities to Rugg, and eventually interviewed Jane Does 1 and 3.

Dean Kimberly Taylor met with John Doe on December 4, 2014, and informed him that he was the subject of an EGP investigation based on allegations made against him.

Brogan and Flack interviewed John Doe on December 12, 2014. John Doe gave his account of the three incidents when Brogan and Flack asked him about his sexual history with the three complainants. He later memorialized his accounts in written statements. In general, John Doe maintained that he and Jane Does 1, 2, and 3 had been drinking alcohol before their encounters those evenings and he had only engaged in voluntary sexual activity with them. John Doe contends now that the complaints against him were prompted in part by a "Sexual Climate Forum" called "Breaking the Silence" held on campus on October 27, 2014, which sought to raise awareness about campus sexual assault.

---

[3] Like the district court, we will refer to the three complainants under their pseudonyms of Jane Doe 1, 2, and 3.

In addition to Jane Does 1, 2, and 3, and John Doe, Brogan and Flack spoke with sixteen witnesses, including all witnesses John Doe identified as potentially having relevant information about the three alleged incidents.

On March 24, 2015, Colgate informed John Doe that it was charging him with Sexual Misconduct I for the October 2011 and April 2012 incidents, Sexual Misconduct II for all three incidents, and Sexual Exploitation for the February 2012 and April 2012 incidents.[4]   Under University policy, a student found responsible for these offenses could be suspended or expelled.   Rugg and Taylor determined that a hearing should be held to adjudicate the charges.   Taylor was to serve as the nonvoting chair of the hearing.   Rugg appointed three Panel members to the case: Professors Jeff Bary and Mary Moran, and the Biology Department's head technician Nicole Doroshenko.

EGP procedure allows a panel to consider evidence of a "pattern of conduct" if it is relevant to the charges.   Taylor determined that the three incidents underlying the charges against John Doe suggested a pattern of conduct, and asked John Doe if he would consent to have all three complaints heard as a single case.   John Doe did not consent and thus, Taylor determined that the three complaints would be heard separately, but consecutively, on the same day by the same panel.   Taylor also denied John Doe's request for three separate panels.   His hearings were set for April 7, 2015.

Taylor allowed John Doe and his attorney to review the investigation file in her office between March 27 and April 7, 2015, which they did on April 3 and again on April 7.   Taylor denied John Doe's request to postpone the hearing, reasoning that two weeks' notice was twice what EGP procedure required and that John Doe had delayed in reviewing the file once it was available.

On April 7, 2015, the hearing panel heard the three cases in succession.   In each case, Taylor read the charges against John Doe and asked if he took responsibility for the alleged conduct, but he denied the allegations.   Brogan testified about her investigation, including her interviews of John Doe, the complainants, and other witnesses, and gave her opinions about witness credibility and demeanor.   Then the hearing panel, John Doe, and the complainants were given an opportunity to ask Brogan questions.   Next, the panel members asked questions of the complainants and of John Doe.   John Doe and the complainant were each given an opportunity to submit questions for Taylor to ask the other, and each part of the hearing concluded after the complainant and John Doe gave closing statements.   John Doe chose not to call any witnesses.

---

[4] The conduct of which John Doe was accused meets the 2011–12 Student Handbook's definitions of Sexual Misconduct I and II and Sexual Exploitation, and he does not appear to argue otherwise.

After the hearing, the hearing panel unanimously found John Doe responsible for all charges.  The hearing panel decided that he should be expelled for the Sexual Misconduct I charges by Jane Does 1 and 3 and suspended for the Sexual Misconduct II charges by Jane Doe 2.   On April 8, 2015, John Doe was expelled.

John Doe appealed the decisions to University Dean Suzy Nelson, who denied the appeal.  EGP procedure provides that the only grounds for appeal are: (1) "a procedural error or omission . . . during the EGP hearing which, based upon the entire record, is reasonably likely to have changed the outcome of the hearing (*e.g.*, substantiated bias, material deviation from established procedures, etc.);" (2) new information not available to the party at the time of the hearing; or (3) a sanction disproportionate to the nature or severity of the violation.   App'x at 332–33.

B.  Procedural History

John Doe filed suit in the United States District Court for the Northern District of New York on August 31, 2015.   On June 21, 2017, Colgate moved for summary judgment.

On September 11, 2017, Colgate moved pursuant to Federal Rule of Evidence 702 to exclude portions of an expert report from Professor Aya Gruber from consideration on summary judgment.   Professor Gruber is a law professor who has written several articles on sexual assault.

Gruber's report discusses two "modes of thinking" that she claims are prevalent in university Title IX policy and impacted Colgate's adjudication of the claims against John Doe: the "trauma trope" and the "serial rapist trope."   The trauma trope, according to Gruber, is "the presumption that anyone who makes a complaint of sexual assault, or even minor sexual contact, suffers from debilitating, or at least serious, trauma."   C. App'x at 451.  Gruber contends that this prevented the University from questioning why all three complainants came forward at almost exactly the same time.   The serial rapist trope, according to Gruber, is the mistaken idea that most college sexual assaults are perpetrated by a few serial rapists.   She contends that the three complainants may not have come forward had they not talked to each other and concluded that John Doe "was a 'serial' rapist, and therefore what happened to them was rape."   C. App'x at 454.   Gruber further concludes that the serial rapist trope may have influenced the University's determination that John Doe was responsible for sexual misconduct because there were multiple accusations against him.

Gruber also contends that the hearing panel may not have properly understood that, to hold an accused responsible for sexual misconduct, "[t]he evidence must show that the

5

accused knew, or had substantial reason to believe, that the complainant did not consent," and instead may have focused on whether the complainants internally did not want the sexual activity to occur.  C. App'x at 455.  Gruber's report then describes several alleged procedural deficiencies in Colgate's disciplinary proceedings against John Doe, including conflicts of interest; the inadequacy of the notice given to John Doe; Dean Taylor's decisions to consolidate the three complaints and not to grant John Doe an extension of time to prepare; Dean Nelson's appellate decision; and Brogan's investigation.

On October 31, 2017, the district court granted Colgate's motions for summary judgment and to exclude the expert report, dismissed the case, and entered judgment. This appeal followed.

## II.     Admissibility of Gruber's Report

"The admission of expert testimony is committed to the broad discretion of the District Court and will not be disturbed on review unless found to be manifestly erroneous." *United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008) (internal quotation marks omitted).  To be admissible, expert testimony must be, among other things, "help[ful] [to] the trier of fact to understand the evidence or to determine a fact in issue" and "based on sufficient facts or data."  Fed. R. Evid. 702(a), (b).  An expert must also be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  If the "factual basis, data, principles, [or] methods [of expert testimony], or their application are called sufficiently into question, the trial judge must determine whether the testimony has a reliable basis in the knowledge of the relevant discipline."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal quotation marks, citations, and alteration omitted).  Trial judges have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Id.* at 152.

The district court did not abuse its discretion when it ruled that Gruber's conclusions lacked a sufficient factual basis.  Gruber's general conclusions about university administrators are supported primarily by her own law review articles, which offer little empirical support.  Moreover, Gruber cites little to no evidence that the trauma and serial rapist tropes influenced the University's investigation or disciplinary hearing; that the serial rapist trope affected Jane Does 1, 2, and 3's decisions to file complaints; or that the hearing panel confused nonconsensual sex with "internally unwanted sex."

The district court also did not abuse its discretion by excluding Gruber's conclusions about procedural deficiencies in the University's handling of John Doe's case.  The court reasonably concluded that Gruber's lack of experience investigating sexual assault and lack of familiarity with Title IX training and investigations rendered her unqualified to opine on the propriety of Brogan's investigation.  Moreover, the district court properly excluded

6

Gruber's other procedural conclusions because they were unhelpful to the trier of fact. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) ("expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" is not helpful (internal quotation marks, citation, and alteration omitted)).   Gruber's opinion that the University breached its contract with John Doe by failing to follow its own procedures is unhelpful because it usurps the jury's role in applying the law to the facts.   Likewise, Gruber's opinion that procedural deficiencies demonstrate that John Doe was treated unfairly based on gender is unhelpful because it would not help a jury "understand the evidence or to determine a fact in issue."   Fed. R. Evid. 702(a).

Accordingly, we affirm the district court's decision to exclude Gruber's expert report from consideration at the summary judgment stage.

## III.     District Court's Ruling on Summary Judgment

We review the district court's grant of summary judgment *de novo*.   *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71 (2d Cir. 2016).   We "resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, and will affirm summary judgment only if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *Id.* at 71–72 (internal quotation marks, citations, and alteration omitted).   However, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment.   *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### A.  Title IX Claim

Under Title IX, with exceptions not relevant here, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   20 U.S.C. § 1681(a).   Thus, "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).   Title IX claims concerning disciplinary proceedings generally follow either an "erroneous outcome" theory or a "selective enforcement" theory.   *Id.*

John Doe's claim proceeds under an "erroneous outcome" theory of gender bias. To succeed on this theory, he must demonstrate (1) "articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding," and (2) that "gender bias was a motivating factor behind the erroneous finding."   *Id.*

7

Assuming that his insistence that the sexual encounters were consensual was sufficient to raise a disputed issue of material fact on the question of misconduct, to resist summary judgment John Doe must demonstrate a genuine dispute of material fact as to whether Colgate's actions were motivated by gender bias.  We agree with the district court that he has not done so.

On appeal, John Doe argues that there was evidence demonstrating gender bias in the following respects: (1) at the time of his expulsion, Colgate was under pressure to punish male students accused of sexual misconduct; (2) EGP training was biased against men; (3) Investigator Brogan was biased against him; (4) Dean Taylor consolidated the three complainants into one hearing without evidence of a pattern of behavior; (5) the University made accommodations at the hearing for the complainants that it did not make for him; (6) the hearing itself was unfair toward him; (7) the hearing panel's weighing of the evidence evinced gender-based evaluation and misapplied the burden of proof; and (8) Dean Nelson incorrectly ruled on his appeal.   We discuss each contention in turn.

### 1.  Pressure on Colgate to Punish Men

John Doe's evidence does not give rise to a genuine dispute of material fact that Colgate was under pressure to punish male students for sexual misconduct.   He points to the Sexual Climate Forum that took place shortly before Jane Does 1, 2, and 3 accused him of misconduct, a 2011 letter from the United States Department of Education's Office for Civil Rights, and a "Winter Message" from the University's president concerning sexual harassment.   We agree with the district court that John Doe does not explain how any of these events resulted in gender bias on the part of the University.   Indeed, the President's message noted that both men and women are victims of attempted or actual sexual assault and that all parties to a misconduct complaint deserve to be treated with respect.

### 2.  Whether EGP Training was Biased against Men

John Doe contends that Rugg, the Title IX Coordinator, introduced gender bias into the EGP process.   Rugg trained EGP staff, and in 2014, she attended a training session for investigating campus sexual misconduct.   Rugg's notes from the session indicate that investigators should refer to the complainant as a "complainant" when talking to a respondent, but as the "victim" or "survivor" when talking to a complainant.   Moreover, in her own training presentations, Rugg would sometimes refer to complainants using female pronouns and respondents with male pronouns because in her experience, most complainants were female and most respondents were male.

This is insufficient evidence to demonstrate that John Doe was expelled based on gender bias.   There is no indication that Rugg's use of such pronouns reflects anything

8

more than the statistical reality that most respondents are men and most complainants are women, nor that calling complainants of any gender "victims" or "survivors" when speaking to them reflects gender bias, rather than a desire to be sensitive. In addition, the allegation that EGP staff members were trained to be biased against men is not supported by the record of dispositions decided by EGP panels during the relevant time period: between 2012 and 2015, three male respondents were found not responsible for any charges against them and two other male respondents were found not responsible for the most serious charges against them, compared with only three male respondents who were found responsible for the most serious charges against them during the same time period (in addition to John Doe) and one male respondent who admitted responsibility.

### 3. Brogan's Bias

John Doe contends that Brogan biased the investigation against him. He focuses in part on Brogan's background as a female former police detective who investigated sexual offenses. John Doe contends that this experience predisposed Brogan to consider "males as perpetrators," although the cited evidence does not support this.[5] Appellant's Br. at 35. He relies on Brogan's testimony that, in her experience, most victims tell the truth, and that when a long time passes between an incident and a complaint, the memory issues that arise tend to be about specific details rather than whether an incident happened or not. John Doe highlights that Brogan commonly asks respondents questions to the effect of, "can you think of any reason these women would say this happened if it didn't," which she asked John Doe as well.[6] C. App'x at 418.

This is insufficient evidence that Brogan was biased against John Doe. Brogan's statements about complainants reflect personal experience, rather than an assumption that they tell the truth. Her question to respondents about why a complainant might have said

---

[5] John Doe's brief cites Brogan's deposition for two points in support of this contention: first, that Brogan "conducts investigations at Colgate in the same manner as when she was a police officer," and second that she "thinks of sexual misconduct offenses in the language she was 'trained in' meaning her 'law enforcement career.'" Appellant's Br. at 35 (citing C. App'x at 419–20, then at 401–02). The first statement is not supported by the cited testimony. The second statement comes from a brief discussion in which Brogan indicated she would call sexual offenses by the names she would use as a detective, i.e., "rape," rather than by the name the University used for charges, i.e., "Sexual Misconduct I." This does not indicate gender bias or a predisposition against male respondents.

[6] John Doe further contends that Brogan "investigated [his] case assuming that he was responsible in every instance for obtaining consent," because she did not ask Jane Doe 2 if she had obtained John Doe's consent. Appellant's Br. at 38. But Jane Doe 2 claimed not to have initiated any sexual or even physical activity with John Doe, so Brogan would not have asked her about obtaining John Doe's consent. John Doe also repeatedly suggests that Brogan persuaded Jane Doe 1 to add to her complaint that digital penetration actually occurred. There is no evidence that Brogan did so.

9

something "happened if it didn't" invites the respondent to inform the investigator of any reason the complainant might have to make a false accusation, such as animosity toward the respondent. Brogan's statements about the possibility that complainants may, after the passage of time, have faded memories concerning the details of an event, while still retaining a clear memory of whether it happened does not, on its face, evince bias.

### 4. Consolidation Decision

John Doe contends that Taylor's decision to have the same hearing panel decide all three complaints against him evinces bias because she erroneously determined that the three incidents formed a pattern of behavior. We agree with the district court that this does not raise a genuine issue that Taylor was motivated by gender bias, especially because Taylor provided legitimate, gender-neutral explanations to support her decision.

### 5. Treatment of Complainants Versus John Doe at the Hearing

John Doe next contends that Colgate's treatment of the complainants at the hearing was more favorable than its treatment of him. He notes that the complainants were given a waiting room for themselves and their friends before the hearing started, while he was given only two weeks' notice before the hearing and denied a postponement. John Doe further contends he was entitled to three weeks' notice of the charges before his hearing could take place because there were three complainants.

The district court properly concluded that this evidence also does not support an inference of bias. As the district court noted, John Doe does not claim that he requested and was denied his own waiting room before the hearing. As for John Doe receiving two weeks' notice before his hearing, EGP procedure requires notification of charges "[a]t least one week prior to the hearing," but says nothing about additional time being required if there are multiple hearings or complainants. App'x 328. Moreover, Taylor's denial of John Doe's postponement was based on John Doe's delay in reviewing the file, which John Doe did not dispute. Finally, John Doe and his counsel were provided sufficient time for their hearing preparation and make no specific assertions as to how the alleged time limitations impaired their ability to prepare for the hearings.

### 6. Whether the Hearing Panel was Unfair

John Doe further contends that the hearing and hearing panel were unfair to him in several ways. None creates a genuine issue of material fact as to gender bias.

10

First, John Doe points out that Taylor asked him at each hearing whether he took responsibility for the charges against him, though that was not mandated by EGP procedure. But John Doe does not explain how this evinces gender bias.

Next, John Doe contends two of the three panel members, Moran and Bary, had a conflict of interest based on their prior knowledge of Jane Doe 2. But John Doe admits that, although Moran had been on a lunchtime panel discussion with Jane Doe 2, she did not recognize her name when reviewing her file, and that Bary did not know Jane Doe 2 or her major and did not discuss the case with his wife, a University professor who may have known her because she taught courses in the same department in which Jane Doe 2 was majoring. Thus, no conflict of interest is apparent.

Finally, John Doe contends Brogan testified in a way that was biased against him and that Moran's questions were harsh in tone. John Doe's only evidence is his subjective perception and speculation as to their motives. Having reviewed the recording of all three hearings, we see no basis to conclude that Brogan or Moran's conduct at the hearing evinced bias against John Doe.

### 7. The Hearing Panel's Weighing of the Evidence

John Doe contends the hearing panel's decisions demonstrate gender bias both because the panel misapprehended the burden of proof and because they believed Jane Does 1, 2, and 3 despite their alleged credibility problems and the inconsistencies in their stories.

As for burden of proof, John Doe points out that the hearing panel said that it had found the complainants more credible than it had found him, rather than finding that the charges were proven by a preponderance of the evidence. This does not demonstrate bias: by believing each complainant rather than John Doe, the panel effectively decided that sexual misconduct was more likely to have occurred than not, because each complainant indicated misconduct had occurred that John Doe denied.

As for the hearing panel's decision to believe the complainants rather than John Doe, while it is plausible to infer that disciplinary evaluators were biased against the respondent if "the evidence substantially favor[ed]" the respondent's version of events but the evaluators "chose to accept [the complainant's] unsupported accusatory version" instead, *Columbia Univ.*, 831 F.3d at 57, the evidence in this proceeding did not substantially favor John Doe.

11

8. Denial of John Doe's Appeal

Finally, John Doe contends that Dean Nelson's denial of his appeal evinced gender bias because she ignored his arguments that the University's investigation and hearing were procedurally flawed.  He argues that Nelson ignored his arguments about "receipt of hearsay, bias of the panel, inability to cross-examine, inadequate notice, use of a common panel, the lapse of time in the complaints being brought, gender discrimination, Brogan's gender bias and failure to meet the proof burden."   Appellant's Br. at 47.   John Doe also claims Nelson was biased because she "regularly attended sexual assault awareness events around campus, Women's Studies Brown Bag Lunches, and was known as someone who 'worked tirelessly on the issue of . . . survivor support' and was 'good friends' with Taylor." Appellant's Br. at 20–21 (quoting C. App'x at 494, 496, 505).

We have rejected above many of the arguments that John Doe faults Nelson for rejecting.   As for the inclusion of hearsay and the delay in the complaints being brought, neither violated EGP procedure, and John Doe does not argue to the contrary.   Moreover, John Doe did cross-examine Brogan, and could have challenged the complainants' testimony (admittedly in limited fashion) by submitting questions to Taylor.   In any event, this aspect of the EGP procedure did not discriminate against him.   Just as John Doe was barred from directly cross-examining the complainants, they were barred from cross-examining him.   Therefore, John Doe does not demonstrate that Nelson erroneously denied his appeal.   Nor does Nelson's support for sexual assault victims and awareness demonstrate gender bias against men.

Accordingly, summary judgment on John Doe's Title IX claim in favor of Colgate was warranted.[7]

### B. Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing

Under New York law, "when a student is admitted to a school, an implied contract arises between the student and the school."   *Dasrath v. Ross Univ. Sch. of Med.*, 494 F. App'x 177, 178 (2d Cir. 2012) (summary order) (internal quotation marks omitted).   The contract's terms "are supplied by the bulletins, circulars and regulations made available to the student."   *Id.* (internal quotation marks omitted).   "Implicit in this contract is that the university must act in good faith in dealing with the student."   *Id.* (internal quotation marks omitted).

---

[7] As John Doe has not put forth sufficient evidence to show a disputed issue of material fact as to whether Colgate had a "complainant-favoring bias," the Court will not address his contention that University procedures are effectively biased against men because they are biased against respondents, who, he contends, are almost always men.   Appellant's Br. at 26.

12

It appears from his briefs that John Doe only challenges dismissal of his claim for breach of the duty of good faith and fair dealing and does so in a somewhat cursory manner. Thus, he has waived his challenge to the dismissal of his contract claim by failing to brief it sufficiently. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

The district court dismissed John Doe's claim for the breach of the duty of good faith and fair dealing because it was duplicative of his breach of contract claim, which the district court also dismissed. Although he asserts that several alleged breaches of the EGP procedure "add up" to a breach of the duty of good faith and fair dealing, John Doe makes no argument as to why the district court was incorrect to conclude that this claim was duplicative of his dismissed contract claim. Thus, he has waived this argument. *See Norton*, 145 F.3d at 117.

\* \* \*

We have considered Plaintiff-Appellant's remaining arguments and conclude that they lack merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

13